ACCEPTED
03-14-00771-CV
5422011
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/26/2015 4:15:15 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00771-CV

### In the Court of Appeals
### for the Third Judicial District
### Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/26/2015 4:15:15 PM
JEFFREY D. KYLE
Clerk

**SANADCO INC., MAHMOUD A. ISBA, BROADWAY GROCERY, INC., SHARIZ, INC. RUBY & SONS STORE, INC., AND RUBINA NOORANI,**
*Appellants,*

v.

**THE OFFICE OF THE COMPTROLLER OF PUBLIC ACCOUNTS; GLENN HEGAR, IN HIS OFFICIAL CAPACITY AS COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS; AND KEN PAXTON IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS, ET AL.,**
*Appellees.*

On Appeal from Cause No. D-1-GN-13-004352
The 200th Judicial District Court of Travis County, Texas
The Honorable Charles Ramsay, Judge Presiding

## APPELLEES' RESPONSIVE BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Defense
Litigation

ROBERT O'KEEFE
Chief, Financial and Tax Litigation Division

JACK HOHENGARTEN
State Bar No. 09812200
Assistant Attorney General
Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711 2548
TEL: (512) 475-3503
FAX: (512) 477 2348
jack.hohengarten@texasattorneygeneral.gov
*Attorneys for Appellees*

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellees, Office of the Comptroller, Glenn Hegar, in his Official Capacity as Comptroller of Public Accounts of the State of Texas ("Comptroller"), and Ken Paxton, in his Official Capacity as Attorney General of Texas, pursuant to Tex. R. App. P. 28 and 38, file this response:

This accelerated appeal is governed by *Sanadco, Inc. v. Office of the Comptroller*, 2015 WL 1478200 (Tex. App.—Austin March 25, 2015, no pet.) (mem. op.)—indeed, this accelerated appeal *is Sanadco v. Office of the Comptroller*. While *Sanadco I* was pending before this court, and after it had denied their appellate motion for emergency relief, the taxpayers Sanadco and Mahmoud Isba turned around and filed a second, identical lawsuit in district court, challenging the Comptroller's tax determination, and asserting claims under the APA and UDJA.

The Honorable Judge Charles Ramsey denied Mahmoud Isba's application for temporary injunction and Isba appeals that order. But, as shown below, Isba's second suit—and this accelerated appeal of Judge Ramsey's order—raises no new issues. As such, it is governed by this court's opinion in *Sanadco I*.

# TABLE OF CONTENTS

Table of Contents ..........................................................................................................3

Index of Authorities ......................................................................................................4

Statement of the Case....................................................................................................6

Issue Presented..............................................................................................................7

Statement of Facts.........................................................................................................8

Summary of the Argument.............................................................................................9

Argument......................................................................................................................10

    A.  Appellant Isba failed to pay or make arrangements to pay for the
    reporter's record, and the absence of that record is dispositive ...............10

    B.  Even assuming *arguendo* that Isba presented an issue not requiring
    review of the reporter's record, *Sanadco I* fully disposes of his
    appeal on jurisdictional grounds. ..........................................................15

    C.  The waiver of immunity in APA section 2001.171 does not apply,
    because the legislature has set out a specialized procedure for tax
    protest suits. ..........................................................................................17

    D.  Isba's filing suit for judicial review does not and cannot vacate the
    Comptroller's tax determination. ..........................................................20

Prayer ..........................................................................................................................19

Certificate of Compliance ...........................................................................................20

Certificate of Service ..................................................................................................20

Appendix .....................................................................................................................21

# INDEX OF AUTHORITES

**Cases**

*Bryant v. United Shortline Inc. Assur. Services, N.A.*,
  972 S.W.2d 26 (Tex.1998)..................................................................12, 13
*Central Power & Light Co. v. Sharp*,
  919 S.W.2d 485 (Tex. App.–Austin 1996, writ denied).....................................17
*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex.2009)...............................................................15
*Combs v. Chevron*,
  319 S.W.3d 836 (Tex. App.–Austin 2010, pet. denied) ....................................17
*CRC–Evans Pipeline Int'l, Inc. v. Myers*,
  927 S.W.2d 259 (Tex. App.—Houston [1st Dist.] 1996, no writ) .......................11
*Garth v. Staktek Corp.*,
  876 S.W.2d 545, 548 (Tex.App.—Austin 1994, writ dism'd w.o.j.) ...................11
*Miller Paper Co. v. Roberts Paper Co.*,
  901 S.W.2d 593 (Tex.App.—Amarillo 1995, no writ)..................................11, 12
*Millwrights Local Union No. 2484 v. Rust Engineering Co.*,
  433 S.W.2d 683 (Tex.1968)...............................................................12
*In re: Nestle USA, Inc.*,
  359 S.W.3d 211 (Tex. 2012)...........................................................15, 17
*Rodriguez v. State*,
  970 S.W.2d 133 (Tex.App.—Amarillo 1998, pet. ref'd) .................................13
*Rogers v. Howell*,
  592 S.W.2d 402 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).......................12
*Schafer v. Conner*,
  813 S.W.2d 154 (Tex.1991)..............................................................13
*Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*,
  145 S.W.3d 170 (Tex. 2004)............................................................16
*Texas Indus. Gas v. Phoenix Metallurgical Corp.*,
  828 S.W.2d 529 (Tex.App.—Houston [1st Dist.] 1992, no writ) .......................11
*Texas Logos, L.P. v. Texas Dept. of Transp.*,
  241 S.W.3d 105 (Tex.App.–Austin 2007, no pet.)......................................14
*Texas Natural Res. Conservation Comm'n v. IT–Davy*,
  74 S.W.3d 849 (Tex.2002)..............................................................14
*Walling v. Metcalfe*,
  863 S.W.2d 56 (Tex.1993)..............................................................10

**Statutes**

Tex. Gov't Code § 2001.171....................................................................14, 15, 16

Tex. Gov't Code § 2001.173..............................................................................18

Tex. Gov't Code § 2001.038..............................................................................15

Tex. Civ. Prac. & Rem. Code § 37.001 .............................................................15

Tex. Tax Code 111.0611(a) .................................................................................8

Tex. Tax Code 112.054.......................................................................................18

Tex. Tax Code 112.051-.156..............................................................................16

**Appellate Rules**

Tex. R. App. P 37.3(c) .....................................................................................9, 14

Tex. R. App. P. 35.3(b)(1)-(3) ...........................................................................13

Tex. R. App. P. 50(d)..........................................................................................13

# STATEMENT OF THE CASE

*Nature of the Case:*      This is a suit brought (again) by the Sanadco taxpayers under the Administrative Procedure Act and the UDJA, alleging two internal agency memos were APA "rules," which the Comptroller failed to adopt in accordance with APA requirements. *See* Tex. Gov't Code §§ 2001.021-.033 (West 2008). The taxpayers also sought declaratory relief, alleging the Comptroller had engaged in ultra vires acts, and challenged the constitutionality of several statutes in the Tax Code. Finally, they sought to enjoin the Comptroller's administrative enforcement and collection activities.

*Trial Court:*      200th Judicial District Court of Travis County, Texas, The Honorable Charles Ramsey, Judge Presiding

*Course of Proceedings:*      While *Sanadco, Inc. v. Office of the Comptroller,* No. 03-11-000462-CV ("*Sanadco I*")[1] was pending before this Court—and after it had denied their motion for emergency relief[2]—Sanadco and Isba brought a second, identical suit in district court. As before, they asserted claims under the Administrative Procedure Act and the UDJA, challenging the Comptroller's final determination of tax liability.[3]

---

[1] *See* Appendix, Tab A.
[2] *See* Appendix, Tab B.
[3] *See* Appendix, Tab C

*Trial Court Disposition:* Isba applied for temporary injunctive relief enjoining all administrative enforcement and collection activities relating to his tax liability. After an evidentiary hearing on October 14, 2014,[4] the district court denied Isba's application for temporary injunction.[5] Appendix, Tab D.

## ISSUES PRESENTED

1. Is Isba's failure to pay or make arrangements to pay for preparation of the reporter's record dispositive of this appeal of the order denying temporary injunction?

2. In view of this court's March 25, 2015, opinion in *Sanadco I*, did the district court have subject-matter jurisdiction over Isba's APA and UDJA claims?

3. Did the suit for judicial review filed by Sanadco and Isba automatically vacate the Comptroller's final determination, so as to preclude the agency from undertaking administrative enforcement activities?

---

[4] As shown by this court's file, Isba failed to pay or make arrangements to pay for the court reporter's record of the October 14, 2014 evidentiary hearing before the district court. *See* Tex. R. App. P. 37.3(c); Appendix, Tab D.

[5] *See* Appendix, Tab E.

## STATEMENT OF FACTS

The background and facts are correctly stated in this Court's March 25, 2015 opinion in *Sanadco I.* The only distinction in this appeal is that it involves the personal tax liability of Sanadco's principal Isba.[6] Although appellant's statement of facts includes assertions relating to Broadway Grocery, Inc., Shariz, Inc., and Rubi & Sons Store, Inc., none of those taxpayers are before this Court: The October 14, 2014 hearing and the district court's November 13, 2014 order denying temporary injunctive relief related only to *Isba.*[7]

## SUMMARY OF ARGUMENT

The district court's order denying Isba's application for temporary injunction should be affirmed, because:

*First*, given the standard of review for orders denying temporary injunctive relief, the absence of a reporter's record is dispositive. Whether Isba was entitled to a temporary injunction depended upon the evidence presented in support of his application for relief. *See* Tex. R. App. P 37.3(c). Without a reporter's record, this Court cannot know what legal arguments were made and what, if any, evidence was presented to the trial court in support of those arguments. Nor can it assess

---

[6] *See* Appendix, Tab F (F of F Nos. 19-27, C of L Nos. 11, 12, 15-17); Tex. Tax Code § 111.0611(a)(personal liability of corporate officers for fraudulent tax evasion).

[7] *See* Appendix, Tab E.

whether Isba satisfied the elements for establishing his right to temporary relief—particularly, the element of irreparable harm.

*Second*, even assuming there remained an issue that did *not* require the reporter's record, this Court's opinion in *Sanadco I* has already addressed and disposed of Isba's legal arguments—by concluding that the district court lacked subject-matter jurisdiction over the taxpayer's APA and UDJA claims.

*Third*, as this Court observed in *Sanadco I*, where a taxpayer who is challenging the Comptroller's assessment of taxes and penalties has not complied with Chapter 112, the APA does not and cannot provide an alternate jurisdictional basis for such claims. To hold otherwise would effectively read out of the Tax Code the statutory prerequisites for bringing a tax-protest or refund suits in district court. The APA procedure for judicial review would swallow and render meaningless those prerequisites—an outcome the legislature could not have intended.

# ARGUMENT

## A. Appellant Isba failed to pay or make arrangements to pay for the reporter's record, and the absence of that record is dispositive.

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *See id.*

The decision to grant or deny the injunction lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion. *See id.* This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *See id.; Texas Indus. Gas v. Phoenix Metallurgical Corp.,* 828 S.W.2d 529, 532 (Tex.App.—Houston [1st Dist.] 1992, no writ). Rather, it must view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *See CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). The Court cannot reverse a trial

court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision. *See id.*

Next, the purpose of a temporary injunction is to preserve the status quo until a final hearing on the merits. *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 597 (Tex.App.—Amarillo 1995, no writ). Furthermore, the applicant is not entitled to temporary relief until he demonstrates a probable injury and a probable right of recovery. *Garth v. Staktek Corp.,* 876 S.W.2d 545, 548 (Tex. App.—Austin 1994, writ dism'd w.o.j.).

A probable right of recovery is proven by alleging the existence of a right and presenting evidence tending to illustrate that the right is being denied. *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d at 597. Probable injury is proven through evidence of imminent harm, irreparable injury, and the lack of an adequate legal remedy. *Id.* Both prongs require the presentation of evidence and, unlike temporary restraining orders, cannot be based upon sworn pleadings or affidavits unless the parties so agree. *Millwrights Local Union No. 2484 v. Rust Engineering Co.,* 433 S.W.2d 683, 685–87 (Tex.1968); *Rogers v. Howell,* 592 S.W.2d 402, 403 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

Given the standard of review for orders denying temporary injunctive relief, the absence of a reporter's record is dispositive. Whether Isba was entitled to a

temporary injunction depended upon the evidence presented in support of his application for relief. Without a reporter's record, this Court cannot know what, if any, evidence was presented to the trial court. Nor can it assess whether Isba satisfied the elements considered by *Miller Paper* as prerequisites to obtaining such relief.

Indeed, the reporter's record is so pivotal to this Court's review that its absence necessitates the presumption that the missing evidence actually supported the trial court's ruling. *See Bryant v. United Shortline Inc. Assur. Services, N.A.,* 972 S.W.2d 26, 31 (Tex.1998) (Court stating that: "We indulge every presumption in favor of the trial court's findings in the absence of a statement of facts.") True, *Bryant* and its predecessors are based on the appellant's having the burden of providing the appeals court with a record sufficient to prove error under the appellate rules in existence before September 1, 1997. *See* Tex. R. App. P. 50(d) (repealed September 1, 1997); *Schafer v. Conner,* 813 S.W.2d 154, 155 (Tex.1991).

But while the current appellate rules state that the court reporter is responsible for preparing, certifying, and timely filing the reporter's record, that responsibility is *expressly conditioned* upon the appellant's filing the notice of appeal, requesting that the reporter's record be prepared, and paying for or making arrangements to

pay for the reporter's record. Tex. R. App. P. 35.3(b)(1)-(3); *Rodriguez v. State*, 970 S.W.2d 133, 135 (Tex.App.—Amarillo 1998, pet. ref'd) (involving the clerk's record). Accordingly, if the appellant's failure to complete the steps required under rule 35.3(b)(1), (2), and (3) denies the appellate court a sufficient record with which to review his appeal, *Bryant* controls.

Simply put, this Court cannot determine what evidence was before the trial court, cannot determine whether the trial court abused its discretion, cannot determine whether Isba proved the existence of a right, cannot determine whether the Comptroller's activities resulted in or threatened a denial of that right—and, in particular, cannot determine whether Isba was threatened with imminent harm and irreparable injury, and lacked an adequate legal remedy. Accordingly, this court should presume that the missing record supports the trial court's determination and forego further review of this dispute as authorized under appellate rule 37.3(c).

**B. Even assuming *arguendo* that Isba presented an issue not requiring review of the reporter's record, *Sanadco I* fully disposes of his appeal on jurisdictional grounds.**

Although Rule 37.3(c) affords this Court the discretion to decide issues that do not depend on the reporter's record, that authorization does not and cannot extend to review of the order denying Isba's application—as that determination is clearly dependent upon the presence of the reporter's record.

In addition, Isba's legal arguments have already been rejected by this Court in *Sanadco I.* Isba contends that APA section 2001.171, which authorizes judicial review of final administrative decisions, provides an alternative jurisdictional basis for challenging Comptroller tax determinations.

But the opinion in *Sanadco I* has already addressed and disposed of this argument:

> Sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits unless the legislature expressly gives its consent to the suit. *Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). Absent the State's consent to suit, a trial court lacks subject-matter jurisdiction. *Id.* at 855. Sovereign immunity not only bars suits for money damages but also protects the State against suits to "control state action." *Texas Logos, L.P. v. Texas Dept. of Transp.,* 241 S.W.3d 105, 118 (Tex.App.–Austin 2007, no pet.). Therefore, absent an express waiver of sovereign immunity, Sanadco's counterclaims are barred.

*Sanadco I*, 2015 WL 1478200 at * 4.

After citing the well-established case law governing sovereign immunity, the court addressed Sanadco's jurisdictional arguments:

> Sanadco cites two statutes providing limited waivers of immunity—the Administrative Procedure Act, *see* Tex. Gov't Code § 2001.038, and the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem.Code § 37.001 *et seq.*—as well as an exception to waiver, the doctrine of ultra vires, *see City of El Paso v. Heinrich,* 284 S.W.3d 366, 372–73, 380 (Tex.2009), as conferring jurisdiction on the district court over its counterclaims. However, as discussed below, we conclude that all of these grounds for jurisdiction are preempted by

Chapter 112 of the Tax Code, which the supreme court has held provides exclusive remedies for relief from assessed taxes on *any* basis. *See Nestle,* 359 S.W.3d at 211. Because Sanadco did not comply with the mandatory Chapter 112 requirements, the district court has no jurisdiction over any of its counterclaims.

*Id.*

Although the language quoted above specifically addresses APA section 2001.038, which authorizes challenges to agency rules, the court's holding and rationale necessarily extend to APA section 2001.171, as well. Both statutes are preempted by Tax Code Chapter 112, which specifically waives immunity for certain taxpayer actions, conditioning the waiver on prerequisites to the taxpayer's bringing suit under that chapter. *Sanadco I* at * 5. Moreover, this precise issue—the availability of APA section 2001.171 to a taxpayer challenging state taxes—was addressed in post-submission briefing in *Sanadco I*.[8]

### C. The waiver of immunity in APA section 2001.171 does not apply, because the legislature has set out a specialized procedure for tax protest suits.

As the Comptroller pointed out in its post-submission briefing in *Sanadco I*, APA section 2001.171 does not apply to the Tax Code. The APA provides an independent right to judicial review only where the agency's enabling statute *neither specifically authorizes* nor prohibits judicial review of the decision. *Tex.*

---

[8] See Appendix, Tab G, at p. 3; and Tab H, at p. 4-7.

*Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170 (Tex. 2004).

Here, in clear contrast to *Mega Child Care*, the Chapter 112 of the Tax Code specifically sets out the statutory prerequisites for challenging the Comptroller's determination of tax liability in district court.

The legislature has created a limited waiver of sovereign immunity for tax refund and protest suits, and for tax injunction suits, but mandated specific prerequisites which must be satisfied prior to filing suit against these specifically enumerated claims. *See* Tex. Tax Code Ann. §§112.051-.156 (West 2015).

The undisputed jurisdictional facts, as shown by Isba's pleading, are that neither he nor Sanadco has met the statutory prerequisites in Chapter 112.[9] Compliance with the procedural requirements of the tax-protest law is a jurisdictional prerequisite to suit. *Sanadco I* at * 5; *In re: Nestle USA, Inc.* 359 S.W.3d at 211; *see also Central Power & Light Co. v. Sharp*, 919 S.W.2d 485, 491 (Tex. App.–Austin 1996, writ denied); *Combs v. Chevron*, 319 S.W.3d 836, 844-45 (Tex. App.–Austin 2010, pet. denied).

Most importantly, Isba's argument, if accepted by this court, would effectively read out of the Tax Code the statutory prerequisites for bringing a tax-

---

[9] *See* Appendix Tab C, at pp. 3-4.

protest suit in district court. The APA procedure for judicial review would swallow and render meaningless those prerequisites—an outcome the legislature could not have intended. *See Nestle,* 359 S.W.3d at 211-12 (Tex. 2012) (holding that statutory prerequisites for taxpayer suits are conditions on the legislative waiver of immunity and dismissing original proceeding for want of jurisdiction).

## D. Isba's filing suit for judicial review does not and cannot vacate the Comptroller's tax determination.

In addition, Isba argues that his filing suit under the APA automatically vacated the Comptroller's final tax determination. Therefore, he reasons, *Sanadco I* does not control, because this court emphasized that its holding applied only to cases in which the taxpayer seeks relief from a tax assessment that has become a final liability. See *Sanadco I* at *6, n.9.

In so arguing, Isba is attempting to selectively read and blend provisions in the Tax Code with the APA to achieve a procedural result that the legislature did not intend. First, he points to the Tax Code section 112.054, which provides that trial of the issues in "suits under this subchapter are de novo." He then attempts to blend that section with APA section 2001.173, which provides that if the manner of review of the agency decision is trial de novo "the reviewing court shall try each

issue of fact and law . . . as though there has not been an intervening agency action."

But this argument requires Isba to skip over the fact that he has not complied with the pre-payment and notice requirements of Subchapter B of Chapter 112, but rather, is attempting to evade those very prerequisites. Accordingly, his suit cannot be a "suit[] brought under this subchapter" and perforce cannot be a suit entitled to de novo review. In short, Isba cannot have it both ways. He cannot argue that he does not have to comply with the statutory prerequisites of Chapter 112, but that its de novo standard of review nonetheless governs his challenge to the Comptroller's tax assessment.

## **PRAYER**

In view of the foregoing, the state officials request that this court affirm the trial court's order, tax all costs to appellant Isba, and grant such other and further relief to which the state officials may show themselves entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Defense
Litigation

ROBERT O'KEEFE
Chief, Financial and Tax Litigation
Division

*/s / Jack Hohengarten*
JACK HOHENGARTEN
State Bar No. 09812200
Assistant Attorney General
Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711 2548
TEL: (512) 475-3503
FAX: (512) 477 2348
jack.hohengarten@texasattorneygeneral.gov

*Attorneys for Appellees, Glen Hegar, Comptroller of Public Accounts of the State of Texas and Ken Paxton, Attorney General of the State of Texas*

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 2,271 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of May, 2015, a true and correct copy of the foregoing document, *Appellees' Responsive Brief,* has been sent to the attorney for appellants via e-service and/ or electronic mail, as follows:

Samuel T. Jackson
Law Office of Samuel T. Jackson
P.O. Box 170633
Arlington, TX 76003-0633
jacksonlaw@hotmail.com

*/s / Jack Hohengarten*
Jack Hohengarten

# APPENDIX

Tab A

Memorandum Opinion on Motion for Rehearing in *Sanadco I*,
No. 03-11-00462-CV, in the Third Court of Appeals.

Tab B

Order and Motion for Emergency Relief to Lift the Automatic Stay for a
Limited Purpose in *Sanadco I*, No. 03-11-00462-CV, in the Third Court of Appeals.

Tab C

Plaintiff's Original Petition for Judicial Review, Declaratory Judgment,
Temporary Injunction and Request for Disclosure, No. D-1-GN-13-004352,
*Sanadco Inc. v. Hegar*, in the 200th Judicial District Court, Travis County
("*Sanadco II*).

Tab D

Letter regarding payment for Reporter's Record in *Sanadco II*,
No. 03-14-00771-CV, in the Third Court of Appeals.

Tab E

Order Denying Plaintiff's Declaratory Judgment and Application for Temporary
Injunction
Plaintiffs' Third Amended Petition for Judicial Review, Declaratory
Judgment, Temporary Injunction and Request for Disclosure, in *Sanadco II*,
No. D-1-GN-13-004352, in the 200th Judicial District Court of

Tab F

Certification of Public Records for Order Denying Motion for Rehearing on
Comptroller's Decision on Hearing Nos. 106,815 and 107,006
Certification of Public Records for Comptroller's Decision on Hearing Nos.
106815 and 107006 with Attachments A – Texas Notification of Hearing
Results

Tab G

Appellants' Post-Submission Letter Brief in *Sanadco I*, No. 03-11-00462-
CV, in the Third Court of Appeals.

Tab H

State Officials' Response to Appellants' Post-Submission Brief in *Sanadco
I*, No. 03-11-00462-CV, in the Third Court of Appeals.

**Tab A**

Memorandum Opinion
On Motion for Rehearing
Sanadco I, No. 03-11-00462-CV
Third Court of Appeals.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00462-CV

Sanadco Inc., a Texas Corporation; Mahmoud A. Isba, a/k/a Mahmoud Ahmed Abuisba, a/k/a Mike Isba; Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc. Individually, Appellants

v.

The Office of the Comptroller of Public Accounts of the State of Texas; Glenn Hegar, Individually and in his Official Capacity as Comptroller of Public Accounts of the State of Texas; and Ken Paxton in his Official Capacity as Attorney General for the State of Texas, Appellees

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GV-10-000902, HONORABLE TIM SULAK, JUDGE PRESIDING

## MEMORANDUM OPINION

We grant the Comptroller's motion for rehearing, withdraw our prior opinion and judgment issued on September 26, 2013, and substitute in their place this opinion and judgment affirming the district court's dismissal of Sanadco, Inc.'s counterclaims.

After the Comptroller of Public Accounts performed an audit on a convenience store owned by Sanadco, the Comptroller and the Attorney General (cumulatively the "Comptroller") filed suit against Sanadco to recover delinquent taxes. In response, Sanadco filed various counterclaims against the Comptroller arguing that the manner in which he calculated the amount

of taxes due was under the terms of an unauthorized rule, that many of the actions that he engaged in while conducting his audits were ultra vires, and that the provision of the Tax Code authorizing audits by sampling and projecting was unconstitutional. After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction contending that the district court did not have jurisdiction over the counterclaims. Subsequent to reviewing the plea and convening a hearing, the district court granted the Comptroller's plea and dismissed Sanadco's counterclaims for lack of jurisdiction. On appeal, Sanadco challenges the dismissal of its counterclaims. We affirm the district court's order granting the Comptroller's plea to the jurisdiction.

## RELEVANT STATUTORY SCHEME AND AUDITING MEMOS

Before delving into the background and issues in this case, a brief overview of the governing framework for this case as well as a brief synopsis of the actions by the Comptroller that form the subject of this case is helpful. Under the Tax Code, convenience stores are required to maintain their sales records for tax purposes, Tex. Tax Code § 151.025, and the Comptroller is authorized to examine and audit the records of convenience-store owners, *id.* §§ 111.004, 151.025. In addition, the Comptroller may use sampling and projection methods for estimating the amount of taxes owed if "the taxpayer's records are inadequate or insufficient." *Id.* § 111.0042(b). Moreover, if the Comptroller "is not satisfied" with the calculated tax owed based on the taxpayer's records, the Comptroller may determine the amount of tax owed from "other information available to the comptroller." *Id.* § 111.008(a).

In addition to requiring convenience stores to maintain sales records, the Tax Code also requires brewers, manufacturers, wholesalers, and distributors of alcoholic beverages to file

2

reports chronicling their sales to stores and listing the stores by name. *Id.* §§ 151.461-.462. Similarly, the Tax Code authorizes the Comptroller to request wholesalers and distributors of tobacco products to file the same type of reports. *Id.* §§ 154.021 (addressing cigarette sales), 155.105 (covering non-cigarette tobacco products). The type of information required in these reports is commonly referred to as H.B. 11 information because the reporting requirements were enacted by House Bill 11 (H.B.11) of the 80th legislature. *See* Act of May 3, 2007, 80th Leg., R.S., ch. 129, §§ 1-3, 2007 Tex. Gen. Laws 159, 159-62.

Once an audit has been performed, the store owner may request a redetermination from the Comptroller within 30 days of receiving notice of the Comptroller's assessment. Tex. Tax Code § 111.009(a), (b). In addition, the owner may also request a hearing on the redetermination, *id.* § 111.009(c), before the State Office of Administrative Hearings, *id.* § 111.00455. If no request for a redetermination is filed within 30 days, "the determination is final on the expiration of the period." *Id.* § 111.009(b).

As an alternative to requesting a redetermination, an individual may pay the assessed taxes and penalties and file a claim for a refund with the Comptroller or pay the taxes and penalties under protest and file suit seeking their recovery.[1] *See id.* §§ 111.104(b), (c), 112.051, .052; *see also In re Nestle USA, Inc.*, 359 S.W.3d 207, 211 (Tex. 2012) (protest, refund, and injunction suits

---

[1] There is one more additional, limited remedy in the form of an action for a restraining order or injunction to prohibit the assessment or collection of a state tax, which action also requires prepayment of the taxes due or the posting of a bond as well as a pre-suit "statement of the grounds on which the order or injunction is sought" filed with the attorney general. Tex. Tax Code § 112.101. This remedy additionally requires a showing that (1) irreparable injury will result to the applicant if the injunction is not granted, (2) no other adequate remedy is available to the applicant, and (3) the applicant has a reasonable possibility of prevailing on the merits of the claim. *Id.* § 112.1011.

provide only means to seek relief from taxes assessed under Chapter 112). A tax-refund claim proceeds to an administrative hearing, after which the Comptroller will issue a decision that becomes final twenty days after service on the taxpayer. *Id.* § 111.105. A tax-refund claimant who is dissatisfied with the decision may file a motion for rehearing, *id.* (c), and then if still dissatisfied may file a suit in district court seeking to recover the amount paid within 30 days after the motion for rehearing is denied, *id.* § 112.151(a), (b), (c).

If pursuing a protest-payment suit, a taxpayer must file a written protest detailing each reason for recovering the payment and submit such protest with payment of the assessed taxes and penalties within six months (or other applicable limitations period) after the deficiency determination becomes final. *Id.* §§ 111.104(c)(3), 112.051(b), (c).

Prior to the passage of H.B. 11, the Comptroller issued a memo entitled AP 92, which provided guidance to auditors performing audits of convenience stores. In the memo, the Comptroller explained that there had been a "lack of uniformity in estimated convenience store audits" and that "mark-up percentages and product mix percentages" were developed to be used in audits "when necessitated by lack of reliable records" or if a store's "records are unavailable, inadequate or unreliable." After H.B. 11 passed, the Comptroller issued another memo to audit personnel entitled AP 122. The new memo updated AP 92 and required auditors to use H.B. 11 information "to produce the most accurate audit results." Sanadco's counterclaims arise from the issuance of these two memos along with various actions taken by the Comptroller when performing his audit of Sanadco.

4

## BACKGROUND

Turning to the facts of this case, Sanadco owns a convenience store, and Mahmoud Isba operates the store and is designated as a responsible person for Sanadco. The Comptroller audited Sanadco and determined that Sanadco had underreported its taxable sales for alcohol and tobacco products. The amount of the deficit was determined using H.B. 11 data. After making his determination, the Comptroller sent a bill for the estimated amount owed and for interest on that amount as well as a penalty.

After receiving notice of the amount due, Sanadco did not seek redetermination of the assessment, *see* Tex. Tax Code § 111.009, or pay any portion of the assessed taxes and penalties and seek statutory relief via a taxpayer refund or protest suit, *see id.* §§ 111.104, 112.151. Accordingly, the Attorney General filed suit to collect the delinquent taxes. In response, Sanadco filed an answer and raised several counterclaims seeking declaratory and injunctive relief against the Comptroller's collection of the taxes, compensatory damages, and attorney's fees. Those counterclaims were made against the Office of the Comptroller, Susan Combs[2] in her official capacity as Comptroller, and Greg Abbott[3] in his official capacity as the Attorney General. Sanadco later amended its answer and counterclaims, adding as counter-plaintiffs several other individuals and companies who had been assessed similar taxes.[4] Unlike Sanadco, the other named counter-

---

[2] Since the events giving rise to this appeal, Glenn Hegar was elected Comptroller. Accordingly, our references to the Comptroller are to him.

[3] Since the events giving rise to this appeal, Ken Paxton was elected Attorney General. Accordingly, our references to the Attorney General are to him.

[4] For ease of reading, we will generally refer to all of the counter-plaintiffs as Sanadco.

5

plaintiffs all sought redeterminations of their assessed taxes through administrative review, but none of the administrative proceedings had been completed by the time that the individuals were added to the lawsuit.[5]

Regarding its counterclaims, Sanadco alleged eight complaints relevant to this appeal. In its first counterclaim, Sanadco asserted that AP 92 and AP 122 are administrative rules that were not promulgated in compliance with the requirements of the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.038. Accordingly, Sanadco sought a declaration that those memos are invalid administrative rules. In its second counterclaim, Sanadco alleged that the Comptroller engaged in ultra vires actions when he issued AP 92 and AP 122 and thereby authorized auditors to estimate taxes owed by convenience-store owners without "first ascertaining whether adequate records are available" from the taxpayer to perform an audit. For those reasons, Sanadco sought declarations asserting that "the Comptroller is not authorized to estimate convenience store audits using the methods described in AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority." In its third counterclaim, Sanadco contended that the Comptroller acted without legal authority when he improperly instructed auditors to use H.B. 11 information for convenience store audits "without

---

[5] Despite their participation in the administrative redetermination process, the additional counter-plaintiffs later added as parties to the suit do not impact our consideration of whether the trial court had subject-matter jurisdiction over Sanadco's counterclaims, because subject-matter jurisdiction is determined at the time a suit is filed. *See TJFA, L.P. v. Texas Comm'n on Envtl. Quality*, 368 S.W.3d 727, 733 (Tex. App.—Austin 2012, pet. denied); *Bell v. Moores*, 832 S.W.2d 749, 753-54 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (at time suit is filed, court either has jurisdiction or it does not, and jurisdiction cannot subsequently be acquired while suit is pending); *see also Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774, 776 (5th Cir. 1986) (federal rule of civil procedure 15, pertaining to amendment of pleadings, does not permit plaintiff to amend complaint to substitute new plaintiff in order to cure lack of subject-matter jurisdiction).

6

first ascertaining whether the determination can be made from the taxpayer's records." Accordingly, Sanadco insisted that the Comptroller's decision to require the use of H.B. 11 data is an ultra vires act and, therefore, sought declarations that the use of H.B. 11 information was improper and that the governing statutes do not allow "the Comptroller to give conclusive effect to the HB11 data."

In its fourth counterclaim, Sanadco alleged that the Comptroller improperly authorized auditors to "use an abbreviated procedure which bypassed examination of the taxpayer's records and authorized an estimation of his tax liability based solely on the invalid H.B. 11 data, without first determining the adequacy of the taxpayer's records." For that reason, Sanadco insisted that the Comptroller was acting ultra vires and sought a declaration that the governing Tax Code provisions do not authorize the abbreviated procedure. In its fifth counterclaim, Sanadco alleged that the Comptroller acted ultra vires by authorizing the imposition of a 50% penalty without proof of fraud or of an intent to avoid the tax as required by the Tax Code. *See* Tex. Tax Code § 111.061(b). In its sixth counterclaim, Sanadco sought a declaration that the provision of the Tax Code authorizing sample and projection audits for estimating taxes owed is unconstitutionally vague and is, "by its nature, a denial of substantive and procedural due process." *See id.* § 111.0042. In its seventh counterclaim, Sanadco alleged that the Comptroller engaged in an unconstitutional taking when he improperly collected sales and use taxes. Lastly, Sanadco challenged the constitutionality of the Tax Code provision authorizing the Comptroller to impose a ten-percent penalty if he believes that the "amount due for a tax period is jeopardized by delay." *See id.* § 111.022.

After Sanadco filed its counterclaims, the Comptroller filed a motion for summary judgment and a plea to the jurisdiction. After reviewing the pleadings, the plea, and Sanadco's response to the plea, the district court signed an order granting the Comptroller's plea dismissing

7

all of Sanadco's counterclaims. The trial court also granted the Comptroller summary judgment on two of Sanadco's eight counterclaims. On appeal, Sanadco contests both the district court's order granting the Comptroller's plea and its order granting the Comptroller summary judgment.

## STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A party to a lawsuit may challenge a trial court's subject-matter jurisdiction over a case by filing a plea. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). Determinations regarding whether a trial court has jurisdiction over a case are questions of law, which we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).

## DISCUSSION

Sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits unless the legislature expressly gives its consent to the suit. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Absent the State's consent to suit, a trial court lacks subject-matter jurisdiction. *Id.* at 855. Sovereign immunity not only bars suits for money damages but also protects the State against suits to "control state action." *Texas Logos, L.P. v. Texas Dept. of Transp.*, 241 S.W.3d 105, 118 (Tex. App.—Austin 2007, no pet.). Therefore, absent an express waiver of sovereign immunity, Sanadco's counterclaims are barred.[6]

---

[6] The fact that Sanadco is a counter-plaintiff rather than a plaintiff does not affect our analysis when reviewing the trial court's ruling on a plea to the jurisdiction, as such determination

8

Sanadco cites two statutes providing limited waivers of immunity—the Administrative Procedure Act, *see* Tex. Gov't Code § 2001.038, and the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.*—as well as an exception to waiver, the doctrine of ultra vires, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73, 380 (Tex. 2009), as conferring jurisdiction on the district court over its counterclaims. However, as discussed below, we conclude that all of these grounds for jurisdiction are preempted by Chapter 112 of the Tax Code, which the supreme court has held provides exclusive remedies for relief from assessed taxes on *any* basis. *See Nestle*, 359 S.W.3d at 211. Because Sanadco did not comply with the mandatory Chapter 112 requirements, the district court has no jurisdiction over any of its counterclaims.

**Statutory prerequisites to taxpayer suits**

The Tax Code waives the State's immunity from suit, but only for specifically enumerated taxpayer actions, each conditioning waiver on certain administrative or other prerequisites to a taxpayer's bringing a suit or claim thereunder. *See* Tex. Tax Code §§ 112.052 (protest suit), .101 (injunction suit), .151 (refund suit); *Nestle*, 359 S.W.3d at 211 (dismissing mandamus cause for want of jurisdiction, where taxpayer sought declaration of constitutionality of franchise tax, injunction prohibiting its collection, and mandamus relief compelling refund of taxes already paid, because taxpayer had not complied with statutory prerequisites of Chapter 112 for

---

considers whether the *non-movant's pleadings* affirmatively demonstrate the trial court's jurisdiction over the challenged causes. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Counter-plaintiffs are the functional equivalents of plaintiffs with respect to whether their claims confer subject-matter jurisdiction on the trial court. *See, e.g., Smith v. Clary Corp.*, 917 S.W.2d 796, 798 n.1 (Tex. 1996) (court must not only have jurisdiction over amount in controversy but also must have subject-matter jurisdiction over counterclaim).

refund, protest, or injunction suit). Regardless of the taxpayer's claims, the *only* permitted taxpayer actions challenging state taxes are "a suit after payment under protest, suit for injunction after payment or posting of a bond, and a suit for a refund." *Nestle*, 359 S.W.3d at 211.

In *Nestle*, the supreme court held that these three statutorily provided taxpayer suits (along with their respective prerequisites to suit) are the *only* means by which a taxpayer may challenge "the applicability, assessment, collection, or constitutionality" of a state tax. *Id.* at 209. "The only exception is that prepayment of the tax as a prerequisite to suit is excused when it 'would constitute an unreasonable restraint on the party's right of access to the courts.'" *Id.* (quoting Tex. Tax Code § 112.108); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 479 (Tex. 2011) ("[S]ection 112.108 explicitly prohibits any court from granting injunctive or declaratory relief or issuing any writ of mandamus or any other legal or equitable relief not already allowed elsewhere in Chapter 112."). Besides these three avenues for relief, Chapter 112 "allows no other actions to challenge or seek refunds of the taxes to which it applies," including declaratory-judgment actions. *Nestle*, 359 S.W.3d at 209-10; *see also Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied) (when statute provides avenue for attacking agency order, declaratory-judgment action will not lie to provide redundant remedies).

It is undisputed that Sanadco did not engage in an administrative redetermination proceeding or meet any of the statutory requirements for a refund claim or protest suit. Sanadco may not attempt to avoid those administrative and procedural requirements by merely filing counterclaims to a collection suit brought by the Comptroller. If Sanadco were able to pursue its counterclaims "free of Chapter 112's restrictions," the State's "entire tax collection scheme" would be disrupted.

10

*Nestle*, 359 S.W.3d at 211 ("If a taxpayer were not required to lodge its complaints first by protest or refund claim, the Comptroller would lack notice of the assertion of illegality, perhaps—as this case illustrates—for years.").

Sanadco had two adequate, available remedies upon the Comptroller's deficiency determination: (1) a redetermination proceeding or (2) payment of the taxes and pursuit of the Chapter 112 refund or protest procedures. However, Sanadco elected not to pursue either remedy.[7] It may not now attempt to circumvent the statutory prerequisites to taxpayer suits by casting its various challenges to the assessed taxes and penalties as counterclaims seeking declaratory and injunctive relief to the Comptroller's collection actions when Sanadco could and should have availed itself of the exclusive statutory taxpayer-suit procedures. While Sanadco frames its declaratory requests in terms of the validity or constitutionality of "rules," statutes, and alleged ultra vires actions, it is not merely seeking to obtain such declarations but to be relieved, thereby, of its tax assessment and penalty. Chapter 112 of the Tax Code provides an exclusive remedy therefor, and *Nestle* explicitly prohibits any attempt at relief from assessed state taxes on *any* basis except as provided in the chapter.[8]

---

[7] The third Chapter 112 remedy, an action for injunction, is not available to Sanadco under the circumstances alleged in its pleadings because Sanadco had two other adequate remedies at law in the form of a protest suit and a refund suit. *See Berry v. McDonald*, 123 S.W.2d 388, 389 (Tex. Civ. App.—San Antonio 1938, no writ) (holding taxpayer had adequate and complete legal remedy under former version of statute providing for protest suit and, therefore, claim seeking relief in form of enjoining Commissioner of Agriculture from collecting citrus sales tax was improper). However, even if the injunction remedy under section 112.101 were available to Sanadco, it is undisputed that Sanadco did not fulfil any of the statutory prerequisites to suit thereunder, including prepayment of the tax or posting of a bond and filing a pre-suit statement with the Attorney General.

[8] Further, the Comptroller's claim to collect from Sanadco the delinquent taxes did not waive immunity for all purposes but only narrowly waived it for counterclaims that both (1) were "germane

11

Because Sanadco did not comply with the jurisdictional prerequisites of Chapter 112, we hold that the trial court did not have jurisdiction over any of Sanadco's eight counterclaims, and the trial court did not err in granting the Comptroller's plea to the jurisdiction.[9] We need not reach Sanadco's issues about the trial court's summary judgment because the Comptroller's plea to the jurisdiction was directed to all eight of Sanadco's counterclaims, and our jurisdictional determination is dispositive of all issues on appeal. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled each of Sanadco's issues, we affirm the district court's order dismissing all of Sanadco's counterclaims on jurisdictional grounds.

---

to, connected to, and properly defensive to claims asserted by" the Comptroller and (2) operated as damage offsets against the monetary relief sought by the Comptroller. *See Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 533 (Tex. 2012). It is without question that the later-joined counter-plaintiffs' counterclaims did not meet either of these requirements. Also, because the Comptroller's action sought collection of a particular, final amount of taxes, penalties, and interest—and Sanadco did not challenge that final amount via any of the available administrative and statutory procedures already discussed—Sanadco's counterclaims cannot be considered "properly defensive" or offsets thereto.

[9] We limit our holding to cases in which a taxpayer seeks relief from a tax assessment that has become a final liability and is no longer subject to review through administrative procedures; we do not hold that Chapter 112 preempts every suit challenging a Comptroller rule or tax statute's constitutionality. *C.f., Texas Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 795 (Tex. App.—Austin 2014, pet. denied) (citing *Combs v. Texas Entm't Ass'n, Inc.*, 287 S.W.3d 852, 864-65 (Tex. App.—Austin, 2009), *rev'd on other grounds*, 347 S.W.3d 277 (Tex. 2011)) (on remand, citing with approval its previous opinion holding that declaratory-judgment action challenging constitutionality and implementation of new tax statute was not preempted by Chapter 112 of Tax Code); *Combs v. Entertainment Publ'ns Inc.*, 292 S.W.3d 712, 723 (Tex. App.—Austin 2009, no pet.) (affirming trial court's denial of plea to jurisdiction in suit in which taxpayer sought declaratory and injunctive relief to prevent Comptroller from implementing allegedly invalid rule). Because Sanadco sought injunctive relief from liability for the tax long after completion of the administrative process and the deficiency assessment had become final, the facts here are distinguishable from those cases in which the taxpayers sought declarations of the validity or constitutionality of rules and statutes and their threatened enforcement prior to finality of an agency determination.

12

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
  Justice Henson not participating

Affirmed on Motion for Rehearing

Filed:   March 25, 2015

13

# Tab B

Order and Motion for Emergency Relief to Lift the Automatic
Stay for a Limited Purpose
Sanadco I, No. 03-11-00462-CV
Third Court of Appeals.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00462-CV

Sanadco Inc., a Texas Corporation, and Mahmoud A. Isba,
a/k/a Mahmoud Ahmed Abuisba, a/k/a Mike Isba, Individually, Appellants

v.

Susan Combs, Individually, and in her Official Capacity as
Comptroller of Public Accounts of the State of Texas, and
Greg Abbott in his Official Capacity as Attorney General of the State of Texas,
et al., Appellees

---

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-GV-10-000902, HONORABLE TIM SULAK, JUDGE PRESIDING

---

## O R D E R

**PER CURIAM**

On April 16, 2012, the appellants filed a motion for emergency relief related to their appeal in cause number 03-11-00462-CV, and the appellees filed a response on April 18, 2012. Having reviewed the motion and the response, we deny the motion for emergency relief.

It is ordered May 3, 2012.

Before Justices Puryear, Henson and Goodwin

# NO. 03-11-00462

## In The
## Third Court of Appeals

### AT AUSTIN, TEXAS

Sanadco Inc., Mahmoud A. Isba, Walid Abderrahman, Majic Investments Inc., Faisal Khan, Isra Enterprises, Inc., Hattab Al-Shudifat, Haifa Enterprises, Inc., EID Corp., Mohammed S. Al Hajeid, Majdi Rafe Okla Nsairat, Omar Unlimited, Inc., and All Others Similarly Situated,

**APPELLANTS**

### VS.

The Office of the Comptroller of Public Accounts; Susan Combs, in her individual and official capacities as Comptroller of Public Accounts for the State of Texas; and Greg Abbott in his official capacity as Attorney General of the State of Texas

**APPELLEES**

---

Appeal From Cause No D-1-GV-10-000902
The 98th District Court Of Travis County, Texas
The Honorable Tim Sulak, Presiding

---

## MOTION FOR EMERGENCY RELIEF
## TO LIFT THE AUTOMATIC STAY FOR A LIMITED PURPOSE

---

**SAMUEL T. JACKSON**
SBN 10495700
P.O. BOX 670133
ARLINGTON, TX  76003-0133
TEL: (817) 751-7155
FAX: (866) 374-0164
COUNSEL FOR APPELLANTS

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANTS:**

SANADCO INC., MAHMAUD A. ISBA, WALID ABDERRAHMAN, MAJIC INVESTMENTS INC., FAISAL KHAN, ISRA ENTERPRISES, INC., HATTAB AL-SHUDIFAT, HAIFA ENTERPRISES, INC., EID CORP., MOHAMMED S. AL HAJEID, MAJDI RAFE OKLA NSAIRAT, OMAR UNLIMITED, INC., AND ALL OTHERS SIMILARLY SITUATED

**COUNSEL FOR APPELLANTS:**

> **LAW OFFICE OF**
> **SAMUEL T. JACKSON**
> P.O. Box 170633
> Arlington, Texas 76003-0633
> TEL: (817) 751-7155
> FAX: (866) 374-0164
> Email: jacksonlaw@hotmail.com

**REAL PARTIES IN INTEREST:**

THE OFFICE OF THE COMPTROLLER OF PUBLIC ACCOUNTS; SUSAN COMBS, INDIVIDUALLY, AND IN HER OFFICIAL CAPACITY AS COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS; AND GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS

**COUNSEL FOR REAL PARTIES IN INTEREST:**

> **JACK HOHENGARTEN**
> Assistant Attorney General
> FINANCIAL LITIGATION DIVISION
> P.O. Box 12548
> Austin, TX 78711-2548
> TEL: (512) 475-3503
> FAX: (512) 477-2348/480-8327

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................................2

TABLE OF CONTENTS ...........................................................................................3

TABLE OF AUTHORITIES .......................................................................................5

STATEMENT OF JURISDICTION ...........................................................................8

STATEMENT OF THE CASE ..................................................................................9

ISSUES PRESENTED ..........................................................................................10

    I.    Did the Comptroller engage in ultra vires conduct when she persisted in pursuing the cancellation of Appellants' sales tax permit after her decision to cancel the permit had been timely appeal to the district court? .............................................10

    II.    Was the Comptroller's attempt to collect alleged sales tax liabilities while the underlying claims were subject to an interlocutory appeal in violation of the automatic stay provisions? ........................................................................................10

    III.    Did the Comptroller engage in ultra vires conduct in excess of her statutory authority when she engaged in enforcement procedures to collect sales tax assessments while they were pending judicial review? ..........................................10

    IV.    When Appellants' administrative procedures were exhausted, did the Comptroller's decision become a nullity when Appellants requested de novo judicial review? ...................................................................................................................10

STATEMENT OF FACTS .......................................................................................11

ARGUMENT AND AUTHORITIES ..........................................................................14

I. The Comptroller's Suspension of Appellants' Sales Tax Permit Violated Appellants' Right to Appeal from the Order Suspending the Permit ............... 15

II. The Comptroller's Enforcement Actions Violated the Automatic Stay Provisions of an Interlocutory Appeal ........................................................... 17

III. The Comptroller's Enforcement Actions are *Ultra Vires* .......................... 18

and Exceed Her Statutory Authority ............................................................ 18

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

CONCLUSION ............................................................................................. 22

PRAYER ...................................................................................................... 22

CERTIFICATE OF SERVICE.................**Error! Bookmark not defined.**

INDEX TO APPENDIX ...........................**Error! Bookmark not defined.**

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

# TABLE OF AUTHORITIES

## CASES

*Amrhein v. La Madeleine, Inc.,*
  206 S.W.3d 173, (Tex.App.-Dallas 2006, no pet.)........................................................15

*Burrhus v. M & S Mach. & Supply Co., Inc.,*
  897 S.W.2d 871 (Tex.App.-San Antonio 1995, no pet.).............................................15

*City of San Antonio v. City of Boerne,*
  111 S.W.3d 22 (Tex. 2003)........................................................................................18

*Greene v. State,*
  324 S.W.3d 276 (Tex.App.-Austin 2010, no pet.).......................................................18

*Herrera v. State,*
  No. 03-01-00101-CV, 2002 WL 185476              ............................................17

In Re TASO,
  03-11-00269-CV (Tex.App.-Austin 5-6-2011). .........................................................12

*Key Western Life Ins. Co. v. State Bd. of Ins.,*
  350 S.W.2d 839 (Tex. 1961)......................................................................................19

*Logal v. United States,*
  195 F.3d 229, (5th Cir. 1999)................................................................................17, 18

*Southern Canal Co. v. State Bd. of Water Engineers,*
  318 S.W.2d 619; 159 Tex. 227 (Tex. 1958) ..............................................................19

*State Bd. of Ins. v. Republic Nat'l Ins. Co.,*
  384 S.W.2d 369 (Tex.Civ.App. — Austin 1964, writ ref'd n.r.e.)................................19

*State v. Crawford,*
  262 S.W.3d 532 (Tex.App.-Austin 2008, no pet.)..................................................17, 18

*Subaru of America v. David McDavid Nissan,*
  84 S.W.3d 212 (Tex. 2002). .......................................................................................17

*Texas Dept. of Public Safety v. Banks Transp. Co.,*
  427 S.W.2d 593, (Tex.Sup. 1968)...............................................................................19

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

## STATUTES

Tex. Civ. Prac. & Rem. Code § 51.014(b), ...........................................................................12

Tex. Civ. Prac. & Rem. Code Ann § 51.014(b) .............................................................12, 14

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) .............................................................14

Tex. Gov't Code § 2001.174 ...............................................................................................17

Tex. Gov't Code § 2001.176 (b)(3) .....................................................................................18

Tex. Gov't Code § 2001.73 .................................................................................................17

Tex. Gov't Code Ann. § 2001.173(a) ..................................................................................18

Tex. Gov't Code Ann. § 22.221(a)....................................................................................6, 11

Tex. Rev. Civ. Stat. art. 4413(36), § 7.01(a)-(b) ...............................................................16

Tex. Tax Code Ann. § 111.0047..........................................................................................16

Tex. Tax Code Ann. § 111.0081 .............................................................................12, 15, 16

Tex. Tax Code Ann. § 111.012 (a) (1).................................................................................15

Tex. Tax Code Ann. §111.010.............................................................................................17

## REGULATIONS

34 Tex Admin. Code § 3.327 (d) .........................................................................................15

34 Tex. Admin. Code § 1.29 .................................................................................................8

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

# NO. 03-11-00462

## In The
## Third Court of Appeals

### AT AUSTIN, TEXAS

Sanadco Inc., Mahmoud A. Isba, Walid Abderrahman, Majic Investments Inc., Faisal Khan, Isra Enterprises, Inc., Hattab Al-Shudifat, Haifa Enterprises, Inc., EID Corp., Mohammed S. Al Hajeid, Majdi Rafe Okla Nsairat, Omar Unlimited, Inc., and All Others Similarly Situated,

**APPELLANTS**

### VS.

The Office of the Comptroller of Public Accounts; Susan Combs, in her individual and official capacities as Comptroller of Public Accounts for the State of Texas; and Greg Abbott in his official capacity as Attorney General of the State of Texas

**APPELLEES**

---

Appeal From Cause No D-1-GV-10-000902
The 98th District Court Of Travis County, Texas
The Honorable Tim Sulak, Presiding

---

## MOTION FOR EMERGENCY RELIEF
## TO LIFT THE AUTOMATIC STAY FOR A LIMITED PURPOSE

---

### TO THE HONORABLE THIRD COURT OF APPEALS:

SANADCO INC, ET AL, Appellants, file this *Petition for Emergency Relief to Lift the Automatic Stay for a Limited Purpose*, and respectfully requests this court to grant this application for emergency temporary relief and lift the automatic stay imposed herein, and upon notice and hearing to grant a declaratory judgment that the Comptroller exceeded her authority by enforcing her order suspending Appellants' sales tax permit effective March 5,

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

2012 (Exhibit A), despite Appellants' appeal of said order on March 26, 2012 pursuant to Tex. Tax Code Ann. § 111.0102, Tex. Tax Code Ann. § 111.0049, and Tex. Tax Code Ann. § 151.205 authorizing a taxpayer to appeal the revocation or suspension of a tax permit "in the same manner that appeals are made from a final deficiency determination".

These causes are now pending before the 98th Judicial District Court in Travis County, Texas under Cause No. D-1-GV-10-000902 and on interlocutory appeal before this Court in No. 03-11-00462.

Appellants complain of SUSAN COMBS, in her official capacity as Comptroller of Public Accounts' ultra vires acts exceeding her authority in the unauthorized requirement for payment of alleged delinquent sales taxes and provision of a bond before a final order is entered in the judicial review of the cause which is the subject of this appeal.

Appellants request this court to lift the automatic stay imposed in this cause for the limited purpose of reviewing the Comptroller's interlocutory order suspending Appellants' sales tax permit and entering judgment declaring that the Comptroller is not authorized to take any enforcement actions against Appellants prior to entry of a final order in the trial court, or in the appellate court pending resolution of all pending appeals

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this motion pursuant to Tex. R. App. P. 29.3 to make any temporary orders necessary to preserve the parties' rights until disposition of the appeal; to review any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal; and pursuant to Tex. Gov't Code Ann. § 22.221(a) to issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court, including the issuance of writs necessary to preserve the subject matter of an appeal. The Court also has jurisdiction pursuant to Tex. Gov't Code Ann. § 2001.176 (c) to accept transfer of the case for judicial review if the court finds that the public interest requires a prompt, authoritative determination of the legal issues in the case and the case would ordinarily be appealed.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

# STATEMENT OF THE CASE

**(1)** *Nature of Underlying Proceeding:*

This matter arises from an appeal from a show-cause proceeding to suspend the sales tax permit of Majic Investments, Inc. and Faisal Khan filed by the Comptroller of Public Accounts, Counter-Plaintiffs in a class-action suit filed in response the Comptroller's attempt to collect alleged delinquent sales tax.

**(2)** *Trial Court:*

The show-cause Hearing to Cancel Appellants' sales tax permit was maintained by the Office of the Comptroller of Public Accounts for the State of Texas without the intervention of a trial court.

**(3)** *Course of Proceedings:*

The Comptroller held a telephonic hearing on February 24, 2012 to determine whether Appellants had paid the $73,600.67 assessed pursuant to SOAH Docket No. 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.26 in which Appellant's request for rehearing was denied by operation of law on January 2, 2012.. Plaintiff therefore exhausted its administrative remedies and requested joinder with his prior claims seeking judicial review.

**(4)** *Trial Court's Disposition:*

The Comptroller issued its Decision to Cancel Appellants' sales tax permit on March 5, 2012, and Appellant timely filed its appeal on March 25, 2012.

**(5)** *Subsequent Proceedings*

Despite Appellants' timely appeal from the Order Cancelling Appellants' sales tax permit, the Comptroller has cancelled said permit and seeks to physically recover the permit, thus causing Appellants to cease conducting business. This emergency petition ensued.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

## ISSUES PRESENTED

I.      Did the Comptroller engage in ultra vires conduct when she persisted in pursuing the cancellation of Appellants' sales tax permit after her decision to cancel the permit had been timely appeal to the district court?


II.      Was the Comptroller's attempt to collect alleged sales tax liabilities while the underlying claims were subject to an interlocutory appeal in violation of the automatic stay provisions?


III.      Did the Comptroller engage in ultra vires conduct in excess of her statutory authority when she engaged in enforcement procedures to collect sales tax assessments while they were pending judicial review?


IV.      When Appellants' administrative procedures were exhausted, did the Comptroller's decision become a nullity when Appellants requested de novo judicial review?

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

## STATEMENT OF FACTS

Appellants are convenience store owners and operators who filed petitions for judicial review on February 5, 2011, in Sanadco, Et Al v. Combs, Et Al, in Cause No. 1-D-GN-10-000902 in the 98th Judicial Court in Travis County, Texas. These petitions were filed prior to exhaustion of administrative remedies by their inclusion in this putative class action suit challenging the constitutionality of certain audit statutes, the validity of the audits, the Comptroller's ultra vires acts in the conduct of the audits and a takings claim to recover the illegal taxes.

Prior to the exhaustion of administrative remedies, the Comptroller filed a plea to the jurisdiction and motion for summary judgment seeking dismissal of the district court suit. The trial court granted both motions in favor of the Comptroller on July 8, 2011, while the Appellants continued to pursue their various claims through the administrative process. Appellants filed notice of interlocutory appeal to this court on July 25, 2011 in Cause No. 03-11-00462 from the judgment granting the Comptroller's Plea to the Jurisdiction in which Appellants have challenged the grant of the plea to the jurisdiction and the motion for summary judgment.

In the instant case, the Comptroller conducted a full audit of Majic Investments, Inc. for the period September 1, 2005 to April 30, 2009, resulting in additional tax liability derived from an estimation based in part on HB11 data, and AP122 requirements. On December 7, 2009, Majic was assessed a tax liability and an additional 50% penalty for fraud, and a 10% jeopardy determination penalty totaling $79,835.04. Faisal Khan, the owner, was held personally liable for the corporation's debt in the amount of $36,332.67. Appellants timely requested a redetermination hearing before SOAH on December 21, 2009, pursuant to 34 Tex. Admin. Code § 1.29.

On February 5, 2011, Majic Investments Inc. and Faisal Khan were joined as class action claimants in Sanadco, et al v. Combs, et al, in Cause No. 1-D-GN-10-000902 in the 98th Judicial Court in Travis County, Texas. (Exhibit B).The District Court heard the Comptroller's Plea to the Jurisdiction and Motion for Summary Judgment on June 28, 2011 and entered judgment on July 8, 2011 dismissing each of Sanadco's claims and granting the Comptroller's summary judgment. Sanadco filed its notice of interlocutory appeal to the Third Court of Appeals in No. 03-11-00462 on July 25, 2011. (Exhibit C).

The redetermination hearing was held on June 24, 2011. The ALJ submitted his Proposal for Decision on July 6, 2011 and his response to Appellants' Exceptions was filed on

11 | P a g e

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

August 3, 2011. The Comptroller's Decision was issued on October 19, 2011, and Appellants' Motion for Rehearing was filed on November 14, 2011, (Exhibit D) to which the Staff objected by motion filed on November 17, 2011. The Motion for Rehearing was denied by operation of law on January 2, 2012.

On January 13, 2012, Appellants received notice to show cause why the Comptroller should not take action: (1) revoking or suspending any license, permit or certificate issued by the Comptroller; (2) freezing Appellants' assets; or (3) seizing and selling of Appellants' property, due to his failure to pay the amount due for sales tax deficiencies of $73,600.67. Appellants were advised that such payment must be made by February 3, 2012 or the Comptroller would "take all appropriate steps to assure compliance", including: revocation or suspension of any license, permit or certificate issued by the Comptroller; withholding state warrants; freezing Appellants' assets; or the seizure and sale of Appellants' property. (Exhibit E).

On January 24, 2012, Appellants received a "Notice of Bond or Security Required", due to the failure to post bond in the amount of $8,500.00 because "insufficient bond or security is currently posted, based on your sales volume". Appellants were advised that such bond must be posted by February 3, 2012 or, without further notice or hearing, the Comptroller would "take all appropriate steps to assure compliance", including: revocation or suspension of any license, permit or certificate issued by the Comptroller; withholding state warrants; freezing Appellants' assets; or the seizure and sale of Appellants' property. (Exhibit E).

After a telephonic hearing on February 24, 2012, the Comptroller entered its order suspending Appellants' sales tax permit effective March 5, 2012 for failure to pay the alleged tax and post the bond. (Exhibit A).

Appellants then sought judicial review by seeking joinder of this suit along with the remaining suits which had either exhausted their administrative remedies or were in the process of doing so, with their cases already seeking judicial review in Cause No. 1-D-GN-10-000902 in the 98th Judicial Court on March 13, 2012. (Exhibit F).

Plaintiffs received a second Notice of Hearing to Cancel dated March 16, 2012 to show cause why Majic's limited sales, excise and use tax permit should not be cancelled for failure to furnish bond or security in the amount of $8,500.00. A hearing was scheduled on April 6, 2012 and Plaintiffs were advised that their failure to respond to the notice on or before that date would result in the cancellation of their permit. (Exhibit E).

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

Appellants perfected their appeal from the suspension of their sales tax license by filing a Motion for Declaratory Judgment and Temporary Injunction in Cause No. 1-D-GN-10-000902 in the 98th Judicial Court on March 26, 2012 (Exhibit G), pursuant to Tex. Tax Code Ann. § 111.0102[1], Tex. Tax Code Ann. § 111.0049[2], and Tex. Tax Code Ann. § 151.205[3] authorizing a taxpayer to appeal the revocation or suspension of a tax permit "in the same manner that appeals are made from a final deficiency determination". Despite the timely filed appeal, the Comptroller has persisted in cancelling Appellants' sales tax license and harassing Appellants for the physical license.

It being clear that due to the automatic stay imposed in this interlocutory appeal, the trial court does not have the authority to issue the injunctive relief requested, Appellants have filed this petition.

## Pending Cases Affected by this Motion

There are seven additional class action claimants who are in various stages of the administrative process and subject to the interlocutory appeal including the following:

1. Omar Industries in which the Comptroller denied its motion for rehearing on February 16, 2012.

2. Haifa Enterprises, Inc. in which the Proposal for Decision was entered on January 11, 2012 and they are awaiting the Comptroller's decision;

3. EID Corp. in which the redetermination hearing was held on January 30, 2012 and the parties are awaiting the Proposal for Decision;

4. MHAK, Inc. in which the redetermination hearing is scheduled for March 12, 2012;

5. Majdi Nsairat in which the redetermination hearing is scheduled on April 16, 2012;

---

[1] § 111 0102 TAX. Suit Challenging Collection Action
Venue for and jurisdiction of a suit that challenges or is for the purpose of avoiding a comptroller collection action or state tax lien in any manner is exclusively conferred on the district courts of Travis County.

[2] § 111.0049 TAX. Appeals
A taxpayer may appeal the revocation or suspension of a permit or license under Section 111 0046 and 111.0047 of this code in the same manner that appeals are made from a final deficiency determination.

[3] § 151.205 TAX. Appeals
A taxpayer may appeal the revocation or suspension of a tax permit in the same manner that appeals are made from a final deficiency determination.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

6. Monir Kutob in which discovery was completed on December 18, 2012. No hearing date is set.

7. Walid Abderrahman, in which the Comptroller's Position Letter was filed on January 31, 2012. No hearing date has been set.

Each of these cases may be subjected to the same unauthorized enforcement procedures as the preceding cases before a final judgment is entered unless the Comptroller is enjoined from engaging in such activity pending entry of a final judgment in Cause No. 1-GV-10-000902 now awaiting a decision in Case No.03-11-00462 on file in the Third Court of Appeals.

## ARGUMENT AND AUTHORITIES

This Court has authority to issue writs of injunction if necessary to enforce its own jurisdiction. *See* Tex. Gov't Code Ann. § 22.221(a) ("Each court of appeals . . . may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court."). This authority extends to the issuance of writs necessary to preserve the subject matter of an appeal. *See Beall v. Strake*, 602 S.W.2d 394, 395 (Tex. Civ. App.-Austin 1980, orig. proceeding) (holding that court of appeals may issue writ of injunction if lack of injunction would "destroy the subject matter of the appeal, and thereby prevent the effective operation of any judgment this Court might render"). In Re TASO, 03-11-00269-CV (Tex.App.-Austin 5-6-2011).

This Court is authorized, pursuant to Tex. R. App. P. 29.6 to review any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal. The Court is also authorized to accept transfer of the case for judicial review if the court finds that the public interest requires a prompt, authoritative determination of the legal issues in the case and the case would ordinarily be appealed. Tex. Gov't Code Ann. § 2001.176 (c). This case impacts statewide jurisdiction because it involves the parameters of the enforcement authority of the Office of the Comptroller of Public Affairs which presents an unavoidable destruction of the subject matter of this interlocutory appeal. It would also be determinate of the Comptroller's enforcement authority pending appeal from its interlocutory orders, an issue of first impression.

Here, the subject matter of the appeal is the continued existence of Majic Investments, Inc.'s convenience store and the viability of similar enterprises because the loss of its sales tax

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

permit will immediately foreclose their right to operate the convenience stores, the freezing of their checking accounts and other assets would prevent the payment of existing debts and jeopardize their credit, and the sale of their assets would completely put them out of business, before entry of a final judgment determining the existence or extent of their tax liabilities. The order entered to cancel or suspend Appellants' permit is on appeal to the district court and is therefore an interlocutory order reviewable by this court pursuant to TRAP 29.6.

This Court also has the authority to lift the automatic stay imposed by the interlocutory appeal for limited purposes. See Tex. R. App. P. 10.1(a), 29.; Zumwalt v. City of San Antonio, 03-11-00301-CV (Tex.App.-Austin 11-29-2011); In re Helena Chem. Co., 286 S.W.3d 492, 495 (Tex.App.-Corpus Christi, 2009, orig. proceeding) (noting that Texas Supreme Court lifted stay when it granted mandamus relief); Oryx Capital Int'l v. Sage Apartments, 167 S.W.3d 432, 438 (Tex. App.-San Antonio 2005, no pet.) (noting that party should have requested that appellate court lift its stay to allow party's filing of nonsuit in trial court).

It is axiomatic that litigants must comply with the orders of this court. See In re Martinez, 77 S.W.3d 462, 464 (Tex.App.-Corpus Christi 2002, orig. proceeding) (acknowledging that both litigants and the lower court must respect appellate court's stay order). If the Comptroller desired to issue enforcement orders against Appellants, they should have asked this court to lift its stay so that it could pursue its enforcement orders. Instead, the Comptroller chose to circumvent this court's authority. Because the court's assumption of the interlocutory appeal included an automatic stay provision, it prohibited the continuation of proceedings in the trial court or by the governmental entity until further notice from this court, and the Comptroller therefore had no authority to pursue the enforcement actions. The Comptroller's order cancelling Appellants' permit was entered in direct violation of this court's automatic stay provisions and is therefore void.

The Comptroller should be enjoined from engaging in the complained of activities because these proceedings, whether with or without notice and hearing, are in violation of the automatic stay imposed by section Tex. Civ. Prac. & Rem. Code § 51.014(b), and Tex. Tax Code Ann. § 111.0081.

## I. The Comptroller's Suspension of Appellants' Sales Tax Permit Violated Appellants' Right to Appeal from the Order Suspending the Permit

The Comptroller entered an order suspending Majic Investment's Texas Sales, Excise and Use Tax permit effective on March 5, 2012. Appellants appealed this order by filing a

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

timely Motion for Declaratory Judgment and Temporary Injunction in Cause No. 1-D-GN-10-000902 in the 98th Judicial Court on March 26, 2012 pursuant to Tex. Tax Code Ann. § 111.0102[4], Tex. Tax Code Ann. § 111.0049[5], and Tex. Tax Code Ann. § 151.205,[6] authorizing a taxpayer to appeal the revocation or suspension of a tax permit "in the same manner that appeals are made from a final deficiency determination".

In suits filed pursuant to Tex. Tax Code Ann. §111.010, officers and directors are entitled to a full and complete hearing on their tax liability in district court. *See* Tex. Tax Code Ann. § 111.010 (West 2008) (authorizing attorney general to file suit to recover taxes). The case is tried de novo. *Greene v. State*, 324 S.W.3d 276, 288 (Tex.App.-Austin 2010, no pet.) (111.010 allows for a de novo review of the party's tax liability), *Herrera v. State*, No. 03-01-00101-CV, 2002 WL 185476, at *1 n. 4, 2002 Tex.App..-Austin Feb. 7, 2002, no pet.) (not designated for publication) (identifying suit under section 111.010 as "de novo action by the State to collect delinquent tax").

The Administrative Procedure Act (APA) provides that when "the manner of review authorized by law for the decision in a contested case ... is by trial de novo, the reviewing court shall try each issue of fact and law ... as though there had not been an intervening agency action or decision." Tex. Gov't Code Ann. § 2001.173(a)   (West 2000). A de novo hearing has been defined as "a new and independent action in which the whole case is gone into as if no trial whatever had been had in the court below." Trial de novo is not an "appeal", but is a new and independent action. *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961).

Tex. Tax Code Ann. § 111.0049, and Tex. Tax Code Ann. § 151.205 authorize a taxpayer to appeal the revocation or suspension of a tax permit "in the same manner that appeals are made from a final deficiency determination". They are therefore accorded a trial de novo and there is no final order upon which the State can proceed to enforce the order until

---

[4] § 111 0102 TAX. Suit Challenging Collection Action
Venue for and jurisdiction of a suit that challenges or is for the purpose of avoiding a comptroller collection action or state tax lien in any manner is exclusively conferred on the district courts of Travis County.

[5] § 111.0049 TAX. Appeals
A taxpayer may appeal the revocation or suspension of a permit or license under Section 111.0046 and 111.0047 of this code in the same manner that appeals are made from a final deficiency determination

[6] § 151.205 TAX. Appeals
A taxpayer may appeal the revocation or suspension of a tax permit in the same manner that appeals are made from a final deficiency determination.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

a final decision is reached in the appeal. Accordingly, they should be precluded from pursuing the suspension of the sales tax permit until this cause is concluded. Appellants therefore request this court to lift the automatic stay for the limited purpose of staying the execution of the suspension order pending a final hearing on the appeal from such judgment.

## II. The Comptroller's Enforcement Actions Violated the Automatic Stay Provisions of an Interlocutory Appeal

The Texas Civil Practice and Remedies Code expressly provides for an interlocutory appeal from an order granting or denying a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). When a notice of interlocutory appeal under this section is filed, all proceedings in the trial court are automatically stayed pending resolution of the appeal. *Id.* § 51.014 (b). In RE TASO, 03-11-00269-CV (Tex.App.-Austin 5-6-2011).That appeal is currently pending in this Court as Case No. 03-11-00462-CV.

Appellants filed its notice of interlocutory appeal on July 25, 2011. Each of the enforcement actions taken by the Comptroller commenced after the filing of the notice. The Notice of Bond and subsequent enforcement activity against ISBA Enterprises, Inc. was commenced on September 20, 2011. The Notice of Hearing to Cancel was commenced by letter to Majic Investments, Inc. dated January 13, 2012. The hearing was held telephonically on February 24, 2012 and the Comptroller ordered the permit suspended effective March 5, 2012.

When Appellants commenced this interlocutory appeal by filing its notice of appeal, "all other proceedings in the trial court" were stayed pending resolution of the appeal. Tex. Civ. Prac. & Rem. Code Ann § 51.014(b). An order signed during a stay is a "legal nullity." *Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173, 174-75 (Tex.App.-Dallas 2006, no pet.); *Burrhus v. M & S Mach. & Supply Co., Inc.*, 897 S.W.2d 871, 873 (Tex.App.-San Antonio 1995, no pet.) (holding that appellate deadlines are stayed during pendency of automatic stay imposed by insurance code).

Accordingly, the enforcement actions sought by the Comptroller are void, and any further enforcement activity would be in violation of the automatic stay order and must be enjoined pending resolution of the interlocutory appeal.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

### III. The Comptroller's Enforcement Actions are *Ultra Vires*
### and Exceed Her Statutory Authority

*The Request for Bond is Premature*

The Comptroller is not authorized to collect delinquent sales taxes until they become final. The tax code provides "[t]he amount of a determination made under this code is due and payable 20 days after a comptroller's decision in a redetermination hearing becomes final". Tex. Tax Code Ann. § 111.0081 (c).[7]

The request for bond is pursuant to Tex. Tax Code Ann. § 111.012 (a) (1)[8] which permits the comptroller to require a taxpayer to provide security for the payment of taxes only if the comptroller finds that *a tax imposed* by this title is insecure. 34 Tex Admin. Code § 3.327 (d), the regulation interpreting this provision provides:

> If the comptroller determines at any time that the amount of the bond *on file* is inadequate *or if a permitted retailer is delinquent in the payment of any state or local sales or use taxes*, the comptroller may require a new or additional bond to be posted.

Relator maintains that the request for bond prior to the establishment of any delinquency is unlawful pursuant to the provisions of Tex. Tax Code Ann. § 111.0081(c) which provides:

> The amount of a determination made under this code is due and payable 20 days after a comptroller's decision in a redetermination hearing becomes final. If the amount of the determination is not paid within 20 days after the day the decision became final, a penalty of 10 percent of the amount of the determination, exclusive of penalties and interest, shall be added.

The Comptroller's decision becomes "final" (and thus a party has exhausted administrative remedies) for purposes of a party's pursuing damages in a trial court for Code-

---

[7] § 111.0081 TAX. When Payment is Required

(a) Except as provided in Subsections (b) and (c) of this section, the amount of a determination made under this code is due and payable 10 days after it becomes final. If the amount of the determination is not paid within 10 days after the day it became final, a penalty of 10 percent of the amount of the determination, exclusive of penalties and interest, shall be added.

(b) This section does not apply to a determination under Section 111.022.

(c) The amount of a determination made under this code is due and payable 20 days after a comptroller's decision in a redetermination hearing becomes final. If the amount of the determination is not paid within 20 days after the day the decision became final, a penalty of 10 percent of the amount of the determination, exclusive of penalties and interest, shall be added.

[8] § 111.012. Security for the Payment of Taxes

(a) If the comptroller finds that a tax imposed by this title is insecure, the comptroller may require a taxpayer to:
(1) provide security for the payment of taxes;

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

based claims: (1) after the time to seek substantial-evidence review of the agency decision expires, if no affected person seeks such review, *see* Tex. Rev. Civ. Stat. art. 4413(36), § 7.01(a)-(b); or (2) after an affected person who seeks judicial review exhausts the substantial-evidence review avenues. *Subaru of America v. David McDavid Nissan*, 84 S.W.3d 212 (Tex. 2002).

In the absence of the Comptroller's final decision in the redetermination hearing, no tax has yet been imposed and no tax is "due and payable" upon which a delinquency may be predicated. Accordingly, the request for provision of security prior to a final decision and subsequent delinquency is void as ultra vires and in excess of the Comptroller's statutory authority. *State v. Crawford*, 262 S.W.3d 532, 546 (Tex.App.-Austin 2008, no pet.) (evidence was insufficient to conclusively establish that [Taxpayers] "willfully fail[ed] to pay or cause to be paid the tax," because the tax amount had not yet become due); *see also Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999).

Accordingly the requirement for the payment of bond is void and ISBA should be reimbursed for the full cost of the bond, and the settlement agreement reached during the pendency of the interlocutory appeal should be nullified.

*The Notice to Cancel is Premature*

The Notice of Hearing to Cancel Permit is issued pursuant to Tex. Tax Code Ann. § 111.0047[9] which authorizes the Comptroller, after notice and hearing, to revoke or suspend any permit or license issued to the person only if the comptroller finds that a person fails to comply with any provision of this title or with a rule of the comptroller adopted under this title.

The Comptroller alleges that the notice is being issued due to Relator's "for failure to pay the amount due of $73,600.67 for the (audit) periods September 1, 2005 to April 30, 2009. Relator maintains that the request for payment prior to the establishment of its debt is unlawful pursuant to the provisions of Tex. Tax Code Ann. § 111.0081(c) (See fn. 1).

---

[9] § 111.0047 Suspension and Revocation of Permit or License
(a) If a person fails to comply with any provision of this title or with a rule of the comptroller adopted under this title, the comptroller, after a hearing, may revoke or suspend any permit or license issued to the person.
(b) A person whose permit or license the comptroller proposes to revoke or suspend under this section is entitled to 20 days' written notice of the time and place of the hearing on the revocation or suspension. At the hearing the person must show cause why each permit or license should not be suspended or revoked.
(c) The comptroller shall give written notice of the revocation or suspension of a permit or license to the holder of the permit or license. (d) Notices under this section may be served on the holder of the permit or license personally or may be mailed to the holder's address as shown in the records of the comptroller.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

In the absence of a final decision in the redetermination hearing, no tax has yet been imposed and no tax is "due and payable" upon which a delinquency may be predicated. Accordingly, the request for payment prior to a final decision and subsequent delinquency is ultra vires and in excess of the Comptroller's statutory authority. *State v. Crawford*, 262 S.W.3d 532, 546 (Tex.App.-Austin 2008, no pet.) (evidence was insufficient to conclusively establish that [Taxpayers] "willfully fail[ed] to pay or cause to be paid the tax," because the tax amount had not yet become due); *see also Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999).

### The Comptroller's Decision Has Been Vacated

Appellants have filed a petition for judicial review pursuant to Tex. Gov't Code §§ 2001.73[10] and Tex. Gov't Code § 2001.174[11] in Cause No. D-1-GV-10-000902 in the 98th District Court of Travis County, Texas for a de novo hearing to determine the validity of the deficiency assessments sought to be collected by the Comptroller in the contested proceeding. More importantly, because the only question before the District Court concerns a matter of statutory construction, the review of the court's construction of the relevant statutes is *de novo. See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).

Further, in suits filed pursuant to Tex. Tax Code Ann. §111.010, officers and directors are entitled to a full and complete hearing on their tax liability in district court. *See* Tex. Tax Code Ann. § 111.010 (West 2008) (authorizing attorney general to file suit to recover taxes). The case is tried de novo. *Greene v. State*, 324 S.W.3d 276, 288 (Tex.App.-Austin 2010, no pet.) (111.010 allows for a de novo review of the party's tax liability), *Herrera v. State*, No. 03-01-00101-CV, 2002 WL 185476, at *1 n. 4, 2002 Tex.App..-Austin Feb. 7, 2002, no pet.) (not

---

[10] § 2001.173 GOV'T. Trial De Novo Review
(a) If the manner of review authorized by law for the decision in a contested case that is the subject of complaint is by trial de novo, the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision but may not admit in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.

[11] § 2001.174 GOV'T. Review Under Substantial Evidence Rule or Undefined Scope of Review
If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but: (1) may affirm the agency decision in whole or in part; and (2) shall reverse or remand the case for further proceedings if substantial rights of the Relator have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

20 | P a g e

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

designated for publication) (identifying suit under section 111.010 as "de novo action by the State to collect delinquent tax").

The Administrative Procedure Act (APA) provides that when "the manner of review authorized by law for the decision in a contested case ... is by trial de novo, the reviewing court shall try each issue of fact and law ... as though there had not been an intervening agency action or decision." Tex. Gov't Code Ann. § 2001.173(a)    (West 2000). A de novo hearing has been defined as "a new and independent action in which the whole case is gone into as if no trial whatever had been had in the court below." Trial de novo is not an "appeal", but is a new and independent action. *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961).

The sine qua non of a de novo trial is the nullification of the judgment or order of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment or order of the first tribunal is not merely suspended, but is nullified. *Texas Dept. of Public Safety v. Banks Transp. Co.*, 427 S.W.2d 593, (Tex.Sup. 1968); *Southern Canal Co. v. State Bd. of Water Engineers*, 318 S.W.2d 619; 159 Tex. 227 (Tex. 1958). Accordingly, "res judicata" and "final judgment" are inapplicable in de novo proceedings because the original administrative order that is the subject of appeal is nullified in a de novo proceeding. *State Bd. of Ins. v. Republic Nat'l Ins. Co.*, 384 S.W.2d 369, 372 (Tex.Civ.App. — Austin 1964, writ ref'd n.r.e.).

The filing of this Petition operates to vacate the Comptroller's Decision pursuant to Tex. Gov't Code § 2001.176 (b)(3)[12], because trial de novo is the manner of review authorized by law for suspension of limited sales, excise and use tax permits.[13]    Accordingly, the

---

[12] § 2001.176 GOV'T. Petition Initiating Judicial Review

(a) A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date on which the decision that is the subject of complaint is final and appealable.

(b) Unless otherwise provided by statute:

(1) the petition must be filed in a Travis County district court;

(2) a copy of the petition must be served on the state agency and each party of record in the proceedings before the agency; and

(3) the filing of the petition vacates a state agency decision for which trial de novo is the manner of review authorized by law but does not affect the enforcement of an agency decision for which another manner of review is authorized.

[13] § 162.007 TAX  Enforcement of License Cancellation, Suspension, or Refusal
***

(c) An appeal from an order of the comptroller canceling or suspending or refusing the issuance or reissuance of a license may be taken to a district court of Travis County by the aggrieved license holder or applicant. The trial shall be de novo under the same rules as ordinary civil suits, except that: (1) an appeal must be perfected and filed within 30 days after the effective date of the order, decision, or ruling of the comptroller; (2) the trial of the case

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

Comptroller's Decision has not become final and can therefore not form the basis for the collection of the tax deficiencies sought to be recovered by the show cause order.

## CONCLUSION

The Notice of Hearing to Cancel Relator's sales tax permit or to require the posting of bond are in violation of automatic stay imposed by the interlocutory appeal pending before this Court in Case No. 03-11-00462. Further, there is no final order upon which to request payment of the alleged tax assessment, because the Comptroller's decision has been vacated by virtue of the putative class action suit pending before the 98th Judicial District Court in Travis County Texas, seeking de novo review of the Comptroller's decision. Finally, the Notice of Hearing to Cancel, prior to entry of a final judgment, is ultra vires and in excess of the Comptroller's statutory authority, because she cannot collect on delinquent taxes until 20 days after her decision becomes final. Her decision cannot become final until the issues relating to the judicial review or finally determined.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Appellants request this Court of Appeals to lift the automatic stay imposed in this case for the limited purpose of reviewing the issues raised by this motion under its authority pursuant to Tex. R. App. P. 29.6, and declare the Appellants rights pending the appeal of the Comptroller's order suspending Appellants' sales tax permit and to enjoin Susan Combs, in her official capacity as Comptroller of Public Accounts, from engaging in further enforcement activities pending resolution of the underlying Motion for Declaratory Judgment and Temporary Injunction and the pending interlocutory appeal.

Alternatively, to lift the automatic appeal for the limited purpose of authorizing the trial court to declare the Appellants rights pending the appeal of the Comptroller's order suspending Appellants' sales tax permit and to enjoin Susan Combs, in her official capacity as Comptroller of Public Accounts, from engaging in further enforcement activities pending

---

shall begin within 10 days after its filing; and (3) the order, decision, or ruling of the comptroller may be suspended or modified by the court pending a trial on the merits.

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

resolution of the underlying Motion for Declaratory Judgment and Temporary Injunction and the pending interlocutory appeal.

Respectfully submitted,

*Law Office of*
*Samuel T. Jackson*

PO Box 170633
Arlington, TX 76003-0633
Tel: (817) 751-7155
Fax. 866-374-0164
ATTORNEY FOR APPELLANTS

By _____
Samuel T. Jackson
Texas Bar No. 10495700

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rules of Appellate Procedure 51.10, Appellants certify by the signature above, that they have notified or made a diligent effort to notify the parties or their representatives, by expedited means, to advise them that a motion for temporary relief has been or will be filed with Relators' Petition for Writ of Mandamus.

/s/__ *Samuel T. Jackson*
SAMUEL T. JACKSON

## CERTIFICATE OF CONFERENCE

In compliance with Tex. R. App. P. 10.1 (a) (5), counsel for the Appellants certifies by his signature above, that he has conferred with counsel for the real parties in interest, and was advised that the real parties in interest oppose the relief requested in this motion.

/s/__ *Samuel T. Jackson*
SAMUEL T. JACKSON

23 | P a g e

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

# CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys via facsimile, certified mail, return receipt requested, and/or hand delivery on April 15, 2012, in accordance with the Texas Rules of Appellate Procedure, to the following:

**JACK HOHENGARTEN**

Assistant Attorney General
FINANCIAL LITIGATION DIVISION
P.O. Box 12548
Austin, TX 78711-2548
TEL: (512) 475-3503
FAX: (512) 477-2348/480-8327
Email: jack.hohengarten@oag.state.tx.us
ATTORNEY FOR RESPONDENTS

Motion for Emergency Relief to Lift Automatic Stay for Limited Purpose

**Tab C**

Plaintiff's Original Petition for Judicial Review, Declaratory Judgment, Temporary Injunction and Request for Disclosure, No. D-1-GN-13-004352, Sanadco Inc. v. Hegar, in the 200th Judicial District Court, Travis County ("Sanadco II").

CAUSE NO. D-1-GN-13-004352

| | | |
|---|---|---|
| SANADCO INC, A TEXAS CORPORATION, | § | IN THE DISTRICT COURT |
| AND MAHMOUD AHMED ISBA | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| VS | § | |
| | § | |
| SUSAN COMBS, IN HER INDIVIDUAL | § | TRAVIS COUNTY, TEXAS |
| AND OFFICIAL CAPACITY | § | |
| AS COMPTROLLER OF PUBLIC ACCOUNTS, | § | |
| | § | |
| OFFICE OF COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS FOR THE STATE OF TEXAS, | § | |
| | § | |
| AND GREGG ABBOTT IN HIS OFFICIAL | § | |
| CAPACITY AS ATTORNEY GENERAL OF | § | |
| THE STATE OF TEXAS | § | |
| *Defendants* | § | 200TH _____ JUDICIAL DISTRICT |

---

### PLAINTIFFS' ORIGINAL PETITION FOR JUDICIAL REVIEW, DECLARATORY JUDGMENT, TEMPORARY INJUNCTION AND REQUEST FOR DISCLOSURE

---

COME NOW **SANADCO INC.** and **MAHMOUD AHMED ISBA**, Plaintiffs, who file this Original Petition for Judicial Review, Declaratory Judgment and Temporary Injunction from a pending Comptroller's Decision in a contested case proceeding before the State Office of Administrative Hearings, complaining of SUSAN COMBS, in her individual and official capacity as Texas Comptroller of Public Accounts, and GREG ABBOTT, in his official capacity as Texas Attorney General ("Defendants"), and for cause would respectfully show the following:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiffs designate this case as a Level 3 case requiring a discovery control plan tailored to the circumstances of this particular suit pursuant to Texas Rule of

Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2. Pursuant to Texas Rules of Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of service of this request, all of the information or material described in Rule 194.2.

## III.
## PARTIES

3. Sanadco Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 3801 East Rosedale St., Fort Worth, Texas 76105-1732, and whose Taxpayer No. is ▇▇▇▇▇▇▇

4. Mahmoud A. Isba, Plaintiff, is an individual who resides in Arlington, Tarrant County TX and operates the convenience store owned by Sanadco Inc., located at 3801 East Rosedale St., Fort Worth, Texas 76105-1732, and whose Taxpayer No. is ▇▇▇▇▇▇

5. Defendant, Susan Combs (hereinafter referred to as ("Comptroller"), joined herein as a necessary party in her and official capacity as Texas Comptroller of Public Accounts, and in her individual capacity for purposes of certain of Plaintiffs' claims that certain described actions as set forth below are ultra vires and she was acting beyond the scope of her lawful authority. Susan Combs is a public official who is charged with the collection of Limited Sales, Excise and Use Taxes pursuant to the Texas Tax Code and may be served by personal service at 111 East 17th Street, Austin, Texas 78774.

6. Defendant, Gregg Abbott in his official capacity as the Attorney General of Texas, joined herein as a necessary party in his official capacity, is a state agency as defined by TEX. GOV'T. CODE ANN. § 2001.003 (7), having statewide jurisdiction which makes rules and determines contested cases and may be served by personal service at 209 West 14th Street, 8th Floor, Austin, Texas 78701.

# IV.
## JURISDICTION AND VENUE

7. This is an action seeking declaratory and injunctive relief from a contested case proceeding pending issuance of the Comptroller's Decision before the State Office of Administrative Hearings (SOAH) against Sanadco, Inc., and Mahmoud Ahmed Isba in SOAH DOCKET NO. 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.26, TCPA HRG No. 104,445, and SOAH DOCKET NO. 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.26, TCPA HRG No. 107,006, respectively, and joined for the sake of efficiency. (Exhibit A)

8. This court has subject matter jurisdiction to determine the validity of AP 92 and AP 122, and enter declaratory relief pursuant to TEX. GOV'T. CODE ANN. § 2001.038, wherein sovereign immunity has been waived when it is alleged that a rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

9. This Court has subject matter jurisdiction pursuant to the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et seq., by which sovereign immunity has been waived and authorizes Plaintiffs to obtain a declaration of rights, status, or other legal relations affected by a statute; and against a state official who engages in ultra vires acts without legal or statutory authority, or refuses to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009).

10. This Court has subject matter jurisdiction pursuant to TEX. GOV'T CODE ANN. §§ 2001.171, 2001.173 and 2001.174, seeking judicial review from a pending final decision in a contested case before the State Office of Administrative Hearings. *See, Lindig v. Johnson City*, 03-08-00574-CV (Tex. App.-Austin 10-21-2009). (a premature petition for judicial review may be cured if there is a claim over which the court obtained jurisdiction under its general jurisdictional authority.)

11. This Court has subject matter jurisdiction pursuant to TEX. CONST. ART. I, § 19.

# V.
## SUMMARY OF FACTS

12. On August 17, 2004, after the Comptroller became aware of lack of uniformity in convenience store audits, she issued a policy memorandum implementing new procedures for convenience store audits entitled Audit Policy 92 (AP92 )(Exhibit B),

directing all auditors, *inter alia*, to conduct a shelf test during convenience store audits if the taxpayer is still in business, and use the percentages designated in AP92 as the mark-up for beer and tobacco products if the records of a convenience store are "unavailable, inadequate, or unreliable" and if the actual mark-up percentage could not be ascertained by other means.

13. Effective September 1, 2007, the Texas Legislature enacted legislation directing each wholesaler or distributor of beer, wine, malt liquor or tobacco products to file a report with the Comptroller detailing the monthly net sales made to the retailer by the wholesaler or distributor, including the quantity and units of beer, wine, malt liquor and tobacco products sold to the retailer. (Tex. Tax Code § 151.433 (b) (4)[1] and Tex. Tax Code § 155.105.[2] The data provided as a result of the legislation is commonly referred to as HB 11 data, but no directives regarding its use accompanied the legislation. The first reports became available on January 1, 2008.

14. After HB 11 became effective, the Comptroller revised AP92 with AP122 (Exhibit C), effective July 22, 2009, by revising the audit procedures and determination of mark-up percentages and incorporating HB11, instructing that this data must be the starting point for all convenience store audits whether used as internal control verification or as data used to estimate the audit.

---

[1] § 151.433. Reports by Wholesalers and Distributors of Beer, Wine, and Malt Liquor
(b) The comptroller may, when considered necessary by the comptroller for the administration of a tax under this chapter, require each wholesaler or distributor of beer, wine, or malt liquor to file with the comptroller a report each month of sales to retailers in this state.
(c) The wholesaler or distributor shall file the report on or before the 25th day of each month. The report must contain the following information for the preceding calendar month's sales in relation to each retailer:
* * *
(4) the monthly net sales made to the retailer by outlet by the wholesaler or distributor, including the quantity and units of beer, wine, and malt liquor sold to the retailer.

[2] § 155.105 Reports by Wholesalers and Distributors of Cigars and Tobacco Products
(a) The comptroller may, when considered necessary by the comptroller for the administration of a tax under this chapter, require each wholesaler or distributor of cigars and tobacco products to file with the comptroller a report each month of sales to retailers in this state.
(b) The wholesaler or distributor shall file the report on or before the 25th day of each month. The report must contain the following information for the preceding calendar month's sales in relation to each retailer
* * *
(4) the monthly net sales made to the retailer by the wholesaler or distributor, including:
(A) the quantity and units of cigars and tobacco products sold to the retailer; and
(B) for each unit of tobacco products other than cigars, the net weight as listed by the manufacturer.

15. The Comptroller is statutorily authorized to conduct a detailed audit of selected convenience stores throughout the state, and upon a determination that the store records are inadequate or insufficient, to conduct a sample and projection audit and, in the absence of any records, may utilize the best information available.[3]

16. The Comptroller subsequently notifies Plaintiffs that they have been assessed a deficiency determination, including interest, and, if proven by clear and convincing evidence, an additional 50% fraud penalty and/or an additional 10% jeopardy determination penalty which becomes due if the deficiency is not paid on or before the assessment becomes final, but tax liens may be immediately attached to the subject property.

17. Plaintiffs must file a Request for Redetermination with the Comptroller within 20 days of the date of the notice or the assessment becomes final and immediately due.

18. If the Comptroller denies the redetermination, Plaintiffs may request a hearing before the State Office of Administrative Hearings, and, if aggrieved by that determination, may request a rehearing followed by suit in District Court in Travis County, Texas. If no rehearing is requested, the tax assessment becomes a final judgment.

19. Plaintiffs timely filed a request for redetermination and a hearing was held before the SOAH on September 9, 2013, (Exhibit D), but the ALJ requested post-hearing briefs from both parties. Plaintiffs filed their brief on October 6, 2013 (Exhibit E), the Comptroller filed her response on November 4, 2013 (Exhibit F), and the

---

[3] § 111.0042. Sampling in Auditing; Projecting Assessments

(b) Sampling auditing methods are appropriate if:

(1) the taxpayer's records are so detailed, complex, or voluminous that an audit of all detailed records would be unreasonable or impractical;

(2) the taxpayer's records are inadequate or insufficient, so that a competent audit for the period in question is not otherwise possible; or

(3) the cost of an audit of all detailed records to the taxpayer or to the state will be unreasonable in relation to the benefits derived, and sampling procedures will produce a reasonable result.

(c) Before using a sample technique to establish a tax liability, the comptroller or his designee must notify the taxpayer in writing of the sampling procedure to be used.

(d) The sample must reflect as nearly as possible the normal conditions under which the business was operated during the period to which the audit applies. If a taxpayer can demonstrate that a transaction in a sample period is not representative of the taxpayer's business operations, the transaction shall be eliminated from the sample and be separately assessed in the audit. If records are inadequate to reflect accurately the business operations of the taxpayer, the comptroller or his designee shall determine the best information available and base his audit report on that information.

* * *

Proposal for Decision was issued on December 12, 2003 (Exhibit G), but no Comptroller's Decision has yet been issued.

## V.
## RELIEF SOUGHT

20. Plaintiffs, Sanadco, Inc. and Mahmoud Ahmed Isba are engaged in a contested case proceeding in the State Office of Administrative Hearings regarding an alleged sales and use tax deficiency in Docket Numbers 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.26, and 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.26 respectively.

21. Plaintiffs seek to void the underlying audit, alleging that the auditor acted fraudulently by his unauthorized use of AP 92 and AP 122 as well as HB 11 despite the recent Third Court of Appeals opinion that these documents were "invalid rules" and therefore void and unenforceable because they were not formally adopted pursuant to the mandatory provisions of the Administrative Procedures Act. *See*, *Sanadco, Inc. v. Comptroller of Public Accounts*, 03-11-00462 (Tex. App. –Austin 2013); LEXIS 12013 at *13 (Tex. App.—Austin Sept 26, 2013). (Exhibit H).

22. Plaintiffs also seek to void the underlying audit, alleging that the Comptroller engaged in ultra vires conduct by failing to perform the purely ministerial act of promulgating AP 92 and AP 122 as administrative rules, and subsequently acting without legal authority by implementing the illegal and unauthorized memos as agency policy and procedure.

23. Plaintiffs further seek to void all instances in which the Comptroller imposed the additional 50% fraud penalty upon the mere finding of "underreporting" instead of the statutorily required finding of fraud or willful intent to evade the tax. In doing so, the Comptroller has engaged in conduct in excess of her statutory authority by substantially reducing her burden of proof and shifting that burden to the taxpayer by requiring him to prove that his conduct was not willful or intentional. Plaintiffs allege that this is ultra vires conduct and is outside the Comptroller's statutory authority.

24. SOAH has acknowledged that the foregoing issues are beyond the jurisdictional authority of the Administrative Law Judge and have therefore refused to address them within the parameters of a contested case proceeding. *See*, Comptroller's Decision No. 106,516 (2013) (The ALJ does not have jurisdiction to consider

whether Audit Policy Memorandums 92 and 122 constitute rules as defined by the Administrative Procedure Act.); Comptroller's Decision No. 106,516 (2013) (Petitioner also contends the 50% additional penalty should be deleted because the statute authorizing the additional penalties is unconstitutional and because there was no intent to evade the tax. However, it is well settled that neither the Comptroller nor the ALJ has jurisdiction to consider the validity of a statute.); See also, Comptroller's Decision Nos. 103,683, 103,961(2011), 104,445, 105,726 (2012).

25. In the absence of jurisdiction for SOAH to address these issues, which may be determinative of the validity of the audit, Petitioners seek to have these issues addressed by this Court under the authority of Tex. Gov't Code § 2001.038 together with the authorities previously recited wherein this Court is granted jurisdiction to determine the validity or applicability of a rule *before* it is applied to the detriment of this taxpayer, and *before* he has exhausted his administrative remedies.

## COMPLAINT I

**The Comptroller engaged in ultra vires conduct because she failed or refused to perform the purely ministerial act of adopting the memoranda designated as AP 92 and AP 122 as agency rules pursuant to procedures required by the APA, thereby rendering the audits utilizing these procedures invalid and unenforceable.**

26. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

27. The Comptroller's memos implementing Audit Policy Memoranda 92 and 122 (AP 92 and AP 122) effective August 17, 2004, and July 22, 2009 respectively, are agency rules as defined by Tex. Gov't Code § 2001.003 (6) [4]. The use of these rules or their threatened application interfere with or impair, or threaten to interfere with or

---

[4] § 2001.003 Definitions
In this chapter
* * *
(6) "Rule":
(A) means a state agency statement of general applicability that:
  (i) implements, interprets, or prescribes law or policy; or
  (ii) describes the procedure or practice requirements of a state agency;
(B) includes the amendment or repeal of a prior rule; and
(C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

impair, a legal right or privilege of the Plaintiff in that they subject Plaintiff to potential loss of his business, his license, illegal tax assessments and subjecting his property to liens and potentially to forcible sale.

28. The Audit Policy Memoranda regarding AP 92, AP 122 and HB 11 constitute agency rules as defined by the Administrative Procedures Act (APA) because they are statements of general applicability relating to all convenience store audits; that implemented agency policy to add uniformity to the audits; and described the procedure or practice requirements of the agency by implementing the use of HB 11 and the percentages for mark-ups and product mixes incorporated in AP 92 and AP 122.

29. The Comptroller is charged with establishing methods for administering and adopting necessary rules for the collection of taxes and other revenues. Tex. Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." *Id.*

30. A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999). These procedures include providing notice, publication, and public comment on the proposed rule. *Id.* (citing Tex. Gov't Code Ann. §§ 2001.023-.030). The process assures notice to the public and affected persons and an opportunity to be heard on matters that affect them. *Id.*

31. Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ 2001.035,[5] 2001.004[6] and 2001.005[7]. Neither AP 92 nor AP 122 as it relates to HB 11, were

---

[5] § 2001.035. Substantial Compliance Requirement; Time Limit on Procedural Challenge
(a) A rule is voidable unless a state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034.

[6] § 2001.004 Requirement to Adopt Rules of Practice and Index Rules, Orders, and Decisions
In addition to other requirements under law, a state agency shall:
(1) adopt rules of practice stating the nature and requirements of all available formal and informal procedures;
(2) index, cross-index to statute, and make available for public inspection all rules and other written statements of policy or interpretations that are prepared, adopted, or used by the agency in discharging its functions; and
(3) index, cross-index to statute, and make available for public inspection all final orders, decisions, and opinions.

[7] § 2001.005 Rule, Order, or Decision Not Effective Until Indexed

ever adopted as mandated by the APA and are therefore invalid and unenforceable when applied to convenience store audits.

32.    Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, which waive sovereign immunity, declaring that the Comptroller's memoranda, designated as AP 92, AP 122 (incorporating HB 11), are invalid administrative rules because they were not adopted in accordance with the requirements of the APA found at Tex. Gov't Code Ann. §§ 2001.035 and 2001.004. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT II

**The comptroller acted ultra vires because she acted without legal authority by implementing and enforcing AP 92, AP 122 and HB 11 before performing the purely ministerial act of adopting them as Rules in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

33.    The Comptroller is charged with establishing methods for administering and adopting necessary rules for the collection of taxes and other revenues. Tex. Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." Id.

34.    Suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. *Heinrich*, 284 S.W.3d at 372. To fall within the *ultra vires* exception to sovereign immunity, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (citations omitted). "Thus, *ultra vires* suits do not attempt to exert control over the state — they attempt to reassert the control of the state. Stated another way, these suits do not seek to alter government policy but

---

(a) A state agency rule, order, or decision made or issued on or after January 1, 1976, is not valid or effective against a person or party, and may not be invoked by an agency, until the agency has indexed the rule, order, or decision and made it available for public inspection as required by this chapter.
(b) This section does not apply in favor of a person or party that has actual knowledge of the rule, order, or decision.

rather to enforce existing policy." *Id.*

35.     Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. The Comptroller has no legal authority to enforce agency rules before they are adopted in accordance with the APA. Such adoption is mandatory and nondiscretionary. The Comptroller's failure to comply with this ministerial, nondiscretionary act was therefore an ultra vires act. This Court is respectfully requested to enjoin the use of AP 92 and AP 122 until they are properly adopted as rules pursuant to the requirements of the APA.

36.     Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, declaring that the Comptroller is not authorized to estimate convenience store audits using the methods prescribed by AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT III

**The Comptroller acted ultra vires and exceeded her statutory authority by implementing HB11 without adopting it as a rule pursuant to the APA.**

37.     Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

38.     By memorandum dated July 22, 2009, the Comptroller authorized the use of HB 11 data as the starting point for convenience store audits because estimation based on vendor records obtained from the taxpayer's suppliers and the assumption of the product mix and industry percentages set forth in AP 92 and AP 122 would satisfy the best information requirement. The Comptroller envisioned that: "The availability of HB 11 data enables us to detail two major taxable product categories (beer/wine, tobacco products) from January 2008 forward. It allows us to use more than one taxable product category to estimate/sample an audit."

39. There is no statutory provision or administrative regulation authorizing the Comptroller to determine alcohol and tobacco sales by giving conclusive effect to the HB11 data without first ascertaining whether that determination can be made from the taxpayer's records. The Comptroller's memos of July 22, 2009 (Exhibit B) and September 2, 2010 (Exhibit C) implementing HB11 are rules as defined by Tex. Gov't Code § 2001.003 (6). The use of this rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Defendant by threatening loss of revenue or loss of property.

40. The memos implementing the use of HB 11 data constitute rules as defined by the APA because they are of general application to convenience store audits, and they implement and prescribe policy and describe the procedure or practice requirements for conducting estimated audits based on the information contained solely in the HB 11 data.

41. The authorization of such procedure is a non-discretionary ultra vires act, and exceeds the Comptroller's statutory authority because she failed to perform the purely ministerial act of promulgating the rule in accordance with the requirements of the APA, and she was therefore acting outside her legal authority in authorizing the use of the invalid procedure.

42. Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas pursuant to Tex. Gov't. Code Ann. § 2001.038, declaring that the Comptroller's memos implementing HB11 effective July 22, 2009, and September 2, 2010, are invalid administrative rules because the Comptroller failed to satisfy the adoption requirements of the Administrative Procedures Act (APA) found at Tex. Gov't Code Ann §§ 2001.004, 2001.005 and 2001.035; and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, construing (Tex. Tax Code § 151.433 (b) (4) and Tex. Tax Code § 155.105, declaring that these statutes do not authorize the Comptroller to give conclusive effect to the HB11 data, and that the authorization of its use for such purposes is a non-discretionary ultra vires act in excess of her statutory authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT IV

**The Comptroller acted ultra vires and in excess of her statutory authority when she unilaterally established "gross underreporting" as an irrebuttable presumption of proof to impose the additional 50% penalty instead of proof of fraud or intent to avoid the tax as required by Tex. Tax Code Ann. § 111.061(b).**

43.     Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

44.     Tex. Tax Code § 111.061(b)[8] authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40(1) (B)

45.     Fraud implies "bad faith, intentional wrong, and a sinister motive, and the intent required to be showed is that there was specific intent to evade tax believed to be owing." Comptroller's Decision No. 34,499 (1997). The Comptroller, however, has held on many occasions that "gross underreporting of taxable sales, along with other factors or no plausible explanation, is sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty. Comptroller's Decision No. 101,911; See Rule 1.40(1) (B).  See also *Webb v. Commissioner of Internal Revenue,* 394 F. 2d 366 (1968):

> "Fraud is never imputed or presumed and the court should not sustain findings of fraud upon circumstances which at most create only suspicion." "Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute.  The fraud meant is actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed owing.  Mere negligence does not establish either," *Webb,* citing cases.

---

[8]§ 111.061 Penalty on Delinquent Tax or Tax Reports
(b)Except where another penalty for fraud or intent to evade the tax is specifically provided, an additional penalty of 50 percent of the tax due shall be imposed if it is determined that:
(1) the failure to pay the tax or file a report when due was a result of fraud or an intent to evade the tax; or
(2) the taxpayer alters, destroys, or conceals any record, document, or thing, or presents to the comptroller any altered or fraudulent record, document, or thing, or otherwise engages in fraudulent conduct, for the apparent purpose of affecting the course or outcome of an audit, investigation, redetermination, or other proceeding before the comptroller.

46.     The burden proof is on the Comptroller to prove by clear and convincing evidence that the failure to pay the tax was willful or fraudulent. 34 Tex. Admin. Code Section 1.40(1) (B). Although she claims to bear this burden, the Comptroller has authorized a finding of fraud upon the irrebuttable presumption that a 25% underreporting constitutes fraud, thereby unlawfully shifting the burden to the taxpayer to provide some plausible reason for the underreporting.

47.     An agency's interpretation of a statute it is charged with enforcing is entitled to serious consideration, so long as the construction is reasonable and does not conflict with the statute's language. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). An agency's opinion, however, cannot change plain language, nor contradict statutory text. *Combs v. Health Care Services Corp.*, 401 S.W.3d 623 (Tex. 2013); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex.2006).

48. The Comptroller has exceeded her statutory authority by reducing the burden of proof required to establish fraud by eliminating the requirement of intent or willfulness, and establishing an entirely new irrebuttable presumption standard of "gross underreporting", thereby clearly shifting the burden of proof in direct conflict with legislative and statutory authority.

49.     Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, construing Tex. Tax Code § 111.061(b) and declaring that the Comptroller has acted ultra vires, and in excess of her statutory authority by unlawfully creating a new irrebuttable standard of proof and shifting the burden of proof and authorizing the imposition of the 50% fraud penalty upon an irrebuttable finding of gross underreporting without a finding of fraud or intent to avoid the tax as required by the statute, and/or that such procedure conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations.

## COMPLAINT V

**The comptroller acted ultra vires because she acted without legal authority by implementing a completely new irrebuttable presumption of "gross underreporting" as proof of fraud or intent to avoid the tax as required by Tex. Tax Code § 111.061(b), before performing the purely ministerial act of adopting it as a**

**rule in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

50. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

51. Tex. Tax Code § 111.061(b) authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40(1) (B).

52. The Comptroller has, without statutory authority, created an entirely new irrebuttable presumption that the tax payer's underreporting of 25% or more is "sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty."

53. There is no statutory provision or administrative regulation authorizing the Comptroller to determine fraud or the intent to invade the tax by giving conclusive effect to underreporting of taxable sales, without first ascertaining whether that determination includes willful, fraudulent intent.

54. The Comptroller's creation of this new standard of proof is a rule as defined by Tex. Gov't Code § 2001.003 (6). The use of this rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Defendant by threatening loss of revenue or loss of property.

55. The cases implementing the use of this irrebuttable presumption constitute rules as defined by the APA because they are of general application to convenience store audits, and they implement and prescribe policy and describe the procedure or practice requirements for imposing the additional 50% penalty.

56. Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, declaring that the Comptroller is not authorized to impose the additional 50% penalty by implementing the irrebuttable presumption of underpayment as a substitute for a finding of fraud or intent to evade the tax until its proper adoption, and/or that the

authorization of its use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n,* 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.,* 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.,* 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT VI

**Tex. Tax Code Ann. § 111.0042 authorizing sample and projection audits is unconstitutionally vague as written and as applied to plaintiffs.**

57.     Defendant, Cross-Plaintiff ("Plaintiffs") incorporates the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

58.     The Comptroller has the authority to examine the type of records she deems necessary for conducting a thorough audit of a taxpayer's records. See Tex. Tax Code Ann. §§ 111.004, 111.008, and 151.023.

59.     Section 151.025 requires sellers to maintain (a) records of gross receipts, including documentation in the form of receipts, shipping manifests, invoices, and "other pertinent papers", (b) similar documentation relating to their purchases, and (c) records in the form of receipts, shipping manifests, invoices, "and other pertinent papers" that substantiate each claimed deduction or exclusion authorized by law. See also, Rule 3.281(a) (2).

60.     The Comptroller is only authorized to conduct a sample and projection audit "when the taxpayer's records are inadequate or insufficient, so that a competent audit for the period in question is not otherwise possible." Tex. Tax Code Ann. § 111.0042 (b) (2).

61.     When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code § 111.0042(d). The Comptroller has held that the use of vendor records and the procedures set out in AP 92 satisfies the best information available requirement when no records or unreliable records are made available. *See* Comptroller's Decision No. 44,893 (2006).

62.     The types of records the taxpayer is required to maintain is extremely nebulous because of the inclusion of the statement "and other pertinent papers" accompanying each category of records required to be maintained. This leaves open the requirement to maintain records not included or described in the statute, providing little notice to the taxpayer of what is essential to meet the ill-defined requirements of the statute. (See Exhibit E, p. 3).

63.     The determination of whether the records are "inadequate" or "insufficient" is therefore discretionary with the auditor and thus whether a detailed audit based on a thorough review of the taxpayer's records or an estimated "desk audit", based on HB 11 data and AP 92 or AP 122 estimates will be required.

64.     There is no statutory guidance by which an auditor or the taxpayer may determine whether records are adequate or insufficient, and the records the auditor may require are boundless as a result of the vast array of records not specifically identified, but ostensibly permitted by the statute, such as sales summary records, general ledgers, purchase invoices, federal income tax returns, purchase journals, cash register tapes, fixed asset/depreciation schedules, daily sales journals or Z-tapes. See SOAH Docket No. 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.26; Hearing No. 104,037.

65.     "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. Id. at 108-09; Long v. State, 931 S.W.2d 285, 287 (Tex.Crim.App. 1996).

66.     A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const.Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct,

lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

67.     Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code ANN. § 37.004 *et seq.*, construing Tex. Tax Code § 111.0042, declaring that this statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and is constitutionally vague because it permits the audit to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

## COMPLAINT VII

**Tex. Tax Code §111.022, authorizing a Jeopardy Determination without guidelines, is Unconstitutional on its face and as applied.**

68.     Defendant, Cross-Plaintiffs ("Plaintiffs") incorporates the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

69.     Tex. Tax Code § 111.022[9] authorizes the Comptroller to impose an additional 10% jeopardy determination penalty against a deficiency determination, which comes due immediately, if she "believes" that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay.

70.     The statute is purely discretionary because it establishes no parameters by which the Comptroller is to make this determination except for her undefined

---

[9] § 111.022 TAX. Jeopardy Determination
(a) If the comptroller believes that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay, the comptroller shall issue a determination stating the amount and that the tax collection is in jeopardy. The amount required to be paid to the state or due for the tax period is due and payable immediately.
(b) A determination made under this section becomes final on the expiration of 20 days after the day on which the notice of the determination was served by personal service or by mail unless a petition for a redetermination is filed before the determination becomes final.
(c) If a determination made under this section becomes final without payment of the amount of the determination being made, the comptroller shall add to the amount a penalty of 10 percent of the amount of the tax and interest.

"belief", and there is no statutory definition for the terms "jeopardized by delay".

71. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. Id. at 108-09; Long v. State, 931 S.W.2d 285, 287 (Tex.Crim.App. 1996).

72. A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const.Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct, lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

73. Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code ANn. § 37.004 *et seq.*, construing Tex. Tax Code § 111.022 and declaring that the statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and unconstitutionally vague because it permits the Jeopardy Determination to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

**COMPLAINT VIII**

**The Comptroller has taken Plaintiffs' property for public use without just compensation by collecting the foregoing illegal, unenforceable or invalid taxes pursuant to her official duties under Tex. Tax Code Ann. § 111.001.**

74.     Plaintiff incorporates the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

75.     Pursuant to her authority under Tex. Tax Code Ann. § 111.001,[10] the Comptroller collected illegal, invalid and unenforceable sales and use taxes from Plaintiffs without their consent, and deposited such collections into the State's general revenue fund pursuant to Tex. Tax Code Ann. § 101.009(a),[11] thereby intentionally engaging in authorized conduct constituting a taking of Plaintiffs' property for public use without adequate compensation.

76.     The Texas Constitution waives sovereign immunity from suit for an unconstitutional takings claim. Tex. Const. art. I, § 17.[12] ; *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980). To establish a takings claim, the complainant must prove 1) that the State intentionally performed certain acts, 2) that the acts resulted in a "taking" of property, and 3) that the property was taken for public use. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). Plaintiffs maintain they have satisfied that burden by the foregoing pleadings.

77.     Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to Tex. Const. art. I, § 17 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, declaring that the Comptroller's collection of these taxes was an intentional act

---

[10] § 111.001 Comptroller to Collect Taxes
The comptroller shall collect the taxes imposed by this title except as otherwise provided by this title.

[11] § 101.009(a) Allocation and Transfer of Net Revenues
(a) Except as provided by Subsection (b) of this section, all revenues collected from the taxes imposed by the chapters of this title and by Chapter 8, Title 132, Revised Civil Statutes of Texas, 1925, as amended, after deduction of the portion allocated for collection, enforcement, and administration purposes, shall first be deposited in the general revenue fund. After the initial deposit, transfers from the general revenue fund to other funds shall be made at the time, in the manner, and in the amounts provided by law.

[12] Sec.17 Taking, damaging or destroying property for public use; special privileges and immunities; control of privileges and franchises.
No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

resulting in the taking of Plaintiffs' property for public use without adequate compensation, and that Plaintiffs are entitled to injunctive relief and the recovery of damages to compensate for their loss, including pre and post-judgment interest.

## VI. Sovereign Immunity Is Not Implicated

78.     A suit asserting that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra vires suit that is not protected by sovereign immunity. *City of El Paso v. Heinrich, 284 S.W.3d* 366, 372 (Tex. 2009). They are not barred by sovereign immunity because they "do not attempt to exert control over the state." *Id.* Instead, the suits "attempt to reassert the control of the state." *Id.; Saenz,* 319 S.W.3d at 920. The supreme court recently expounded upon sovereign immunity in ultra vires cases in *City of El Paso v. Heinrich* and *Texas Department of Insurance v. Reconveyance Services, Inc.* 284 S.W.3d 366 (Tex. 2009); 306 S.W.3d 256 (Tex. 2010) (respectively).

The Supreme Court determined that "while governmental immunity generally bars suits for retrospective money relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Heinrich,* 284 S.W.3d at 368-69. In *Heinrich,* the supreme court confirmed that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *Heinrich,* 284 S.W.3d at 372. *Reconveyance,* 306 S.W.3d at 434.

Further, if valid challenges to the Department's rules under the APA are raised, then it is not necessary to determine whether the Appellees have properly alleged ultra vires claims because the trial court's subject-matter jurisdiction is established by section 2001.038 of the APA. *See* Tex. Gov't Code Ann. § 2001.038. Section 2001.038 allows a party to bring a declaratory-judgment action challenging the validity or applicability of an agency rule if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the plaintiff. *See id.* Section 2001.038 is considered a legislative grant of subject-matter jurisdiction, so that valid claims raised pursuant to that provision are not barred by sovereign immunity. *See Combs v. Entertainment Publ'ns, Inc.,* 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.) (collecting cases). *Tex. Dept. of Pub. Safety v. Salazar,* 304 S.W.3d 896 (Tex.App. [3rd] 2010).

## VII. Exhaustion Of Administrative Remedies Not Required

79.     The general rule in Texas is that courts do not interfere with the statutorily conferred duties and functions of an administrative agency. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). However, *courts may intervene in administrative proceedings when an agency exercises authority beyond its statutorily conferred powers. Id.* This exception to the exhaustion of administrative remedies doctrine is a variation of the rule that where the administrative agency lacks jurisdiction, a trial court may intercede before administrative remedies are exhausted. *See City of Houston v. Williams*, 99 S.W.3d 709, 717 (Tex.App.-Houston [14th Dist.] 2003, no pet.). "In such a case, the purposes underlying the exhaustion of remedies rule are not applicable, judicial and administrative efficacies are not served, and agency polices and expertise is irrelevant if the agency's final action will be a nullity." *MAG-T, L.P.*, 161 S.W.3d at 625.

80.     "In order to maintain an action against the Comptroller for a refund of taxes, a party must meet the procedural requirements of the tax protest law. Compliance with these procedures is a jurisdictional prerequisite for the trial court to hear and decide the merits of a tax refund suit." *Central Power & Light Co. v. Sharp*, 919 S.W.2d 485, 491 (Tex.App.-Austin 1996, writ denied) (citations omitted). *Combs v. Chevron, Inc.*, 319 S.W.3d 836 (Tex.App. [3rd] 2010).

81.     However, when an agency promulgates a rule without complying with the statutory rule-making procedures, the rule is invalid. *See* APA § 2001.035(a); *El Paso Hosp. Dist.*, 247 S.W.3d at 715. The APA allows a person to challenge the validity or applicability of an agency rule pursuant to a declaratory judgment action if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the plaintiff. APA § 2001.038(a). Thus Counter-Plaintiffs do not seek declaratory relief regarding the tax refund itself, but regarding the *validity of the rule* promulgated by the Comptroller in violation of the APA, for which the legislature has expressly permitted suit by a declaratory-judgment action. *See* APA § 2001.038. *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720. Since this is not a suit for a refund pursuant to Tex. Tax Code Ann. § 111.104 its requirements are not relevant to Plaintiffs' right to seek injunctive relief.

## VIII. Attorney's Fees

Pursuant to Tex Gov't Code Ann § 2006.013[13] and Tex. Civ. Prac. & Rem. Code Ann. § 37.009, request is made for all costs and reasonable and necessary attorney's fees

---

[13] § 2006.013 GOV'T. Requirements for Recovery

incurred by Plaintiffs herein, including all attorney's fees and costs necessary in the event of an appeal or original proceeding to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Defendants, Cross-Plaintiffs (Plaintiffs) pray that this Court, after notice and hearing:

1. Deny Plaintiff, Cross-Defendant's (Defendants) claims and enter a take nothing judgment.

2. Allow Plaintiffs to proceed with their claims in protest of the taxes, penalties and interest assessed in the decisions complained of without regard to the requirements of Tex. Tax Code §§ 112.108, 112.051, or 112.101 for the reason that Plaintiffs are unable to meet these financial requirements, and that such prohibition is in violation of the Open Courts provision of Article I, Sec. 13 of the Texas Constitution.

3. Enter judgments pursuant to the foregoing allegations making the following declarations as to Plaintiffs' rights:

    a.      that the Comptroller's memos AP 92 and AP 122 on August 17, 2004, and July 22, 2009 respectively, establishing and implementing procedures for the conduct of convenience store audits, are invalid administrative rules, and that the Comptroller's authorization of their use without complying with the APA requirements was ultra vires and exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

    b.      that the Comptroller's memo of July 22, 2009, implementing and establishing procedures for the use of HB11 data, is an invalid administrative rule, and that the Comptroller's authorization of its use without complying with the APA requirements was a non-discretionary, ultra vires act which

---

(a) In an administrative adjudicatory proceeding or a civil action resulting from a complaint issued by a state agency against a small business under the agency's administrative or regulatory functions, the small business may be awarded reasonable attorney fees and court costs if:

(1) it is a small business at the time it becomes a party to the proceeding or action;
(2) it prevails in the proceeding or action; and
(3) the proceeding or action was groundless and brought:
  (A) in bad faith; or
  (B) for purposes of harassment.

exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

c.      that Tex. Tax Code §§ 151.433 and 155.105 do not authorize the Comptroller to conduct desk audits giving conclusive effect to the HB11 data in determining Plaintiffs' tax deficiency without examination of Plaintiffs' business records, and that doing so is ultra vires and in excess of the Comptroller's statutory authority, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest ;

d.      that the Comptroller is not authorized to estimate the markup of alcohol and tobacco products or to conduct audits of convenience stores under the requirements of AP 92 or AP 122 without first adopting them as Rules pursuant to the requirements of the APA, and that doing so is a non-discretionary and ultra vires act in excess of her statutory authority, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

e.      that Tex. Tax Code § 111.0042 is unconstitutional on its face and as applied to Plaintiffs because it permits the auditor to determine whether records are adequate based solely on undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

f.      that Tex. Tax Code § 111.022 is unconstitutional on its face and as applied to Plaintiffs because it permits the Jeopardy Determination to be made merely on the Comptroller's undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

g.      that the Comptroller is not authorized to unilaterally reduce the burden of proof, or to shift the burden of proof in establishing fraud as required by Tex. Tax Code Ann. § 111.061, and that such conduct is non-discretionary and ultra vires and in excess of her statutory authority, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

h.      that the Comptroller has engaged in intentional conduct resulting in the taking of Plaintiffs' property for public use without adequate compensation in violation of Const. art. I, sec. 17 of the Texas Constitution and that Plaintiffs are entitled to declaratory, injunctive and compensatory relief;

4.      Enter judgment permanently restraining and enjoining Susan Combs, in her individual and official capacities, and the Office of the Comptroller of Public Accounts, its employees and agents, and all other persons in active concert or participation with these Counter-Defendants from engaging in the following acts or practices in derogation of Plaintiffs' and the Class' rights:

a.      the use of AP 92, AP 122 and HB 11 for any purpose during the conduct of audits of convenience stores, and to refrain from the collection of taxes, penalties and interest resulting from their use unless and until the Comptroller adopts these procedures in compliance with the Administrative Procedures Act;

b.      conducting abbreviated audits or desk audits resulting in the estimation of tax deficiencies without an initial review of the taxpayer's records and from giving conclusive effect to HB11 data reported to the Comptroller by alcohol and tobacco distributers unless and until the Comptroller adopts these procedures in compliance with the Administrative Procedures Act;

c.      imposing an additional 50% penalty authorized by Tex. Tax Code § 111.061(b) as a result of audits conducted on convenience stores, and to refrain from the collection of all penalties and corresponding interest resulting from its imposition.

d.      estimating the markup of alcohol and tobacco products under the requirements of AP 92 or AP 122 without first determining the nature and scope of Plaintiffs' records;

e.      authorizing auditors to determine whether records are adequate based solely on undefined subjective criteria, and without providing any guidelines for its administration;

f.      making a Jeopardy Determination based merely on the Comptroller's undefined subjective criteria, and without providing any guidelines for its administration, and to refrain from the collection of all penalties and corresponding interest resulting from its imposition;

g.      authorizing an additional 50% penalty based on a finding of fraud without a showing of willful intent and unilaterally reducing the burden of proof, or shifting the burden of proof to Plaintiffs in establishing fraud, and to refrain from the collection of all penalties and corresponding interest

resulting from its imposition;

h. engaging in the collection of taxes, penalties or interest from Plaintiffs whose audits have been conducted by any or all of the foregoing procedures, including Plaintiffs who currently have a balance due pursuant to an agreement to pay the balance due in full, or pursuant to a periodic payment agreement and Plaintiffs who currently have a balance due and have entered into no agreement with the Comptroller for periodic payments and are subject to suit by the Attorney General pursuant to Tex. Tax Code Ann. § 111.010.

5. Enter judgment, jointly and severally, against the Comptroller of Public Accounts, Susan Combs individually and in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as Attorney General of the State of Texas for compensatory damages, including pre and post-judgment interest, to all Plaintiffs from whom the Comptroller has collected these illegal, invalid and unenforceable taxes, penalties and interest, in whatever manner, in violation of Tex. Const. art I, sec. 17 resulting from her adherence to the invalid procedures and unconstitutional statutes alleged herein.

6. Enter judgment directing Defendants to account to Plaintiffs and the Class for all damages caused to them as a result of their unlawful actions, and appointing a Special Master to oversee implementation of this Court's orders with periodic reports submitted to the Court on progress with the fees and all reasonable costs charged and incurred by the Special Master to be paid by Defendants as such charges may be apportioned by the Court.

7. Enter judgment awarding to Plaintiffs the costs and disbursements of this action including reasonable attorneys' fees and costs for experts pursuant to the provisions of the Texas Government Code, Texas Civil Practices and Remedies Code and the Administrative Procedures Act.

8. Plaintiffs pray for all other relief, equitable and legal to which they may prove themselves justly entitled.

Respectfully submitted,

By: _Samuel T Jackson_

Samuel T. Jackson
Texas Bar No. 10495700
P.O. Box 170633
Arlington, TX 76003-0633
(800) 969-5023 (Toll Free):

(512) 692-6260 (Austin)
(832) 895-6676 (Houston)
(866) 374-0164 (Fax)
Email: jacksonlaw@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys **via facsimile**, certified mail, return receipt requested, and/or hand delivery on December 27, 2013, in accordance with Rule 21a, Texas Rules of Civil Procedure, to the following:

**JACK HOHENGARTEN**
Assistant Attorney General
State Bar No. 09812200
Office of the Attorney General
Financial Litigation, Tax, and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-3503
Fax: (512) 477-2348
jack.hohengarten@texasattorneygeneral.gov
**Attorneys for Counter-Defendants**
Greg Abbott, Attorney General of Texas and
Susan Combs, Comptroller of Public Accounts of the State of Texas


**SEAN M. O'NEILL**
Assistant Attorney General
State Bar Number 24070354
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-4255
Fax: (512) 482-8341
sean.o'neill@texasattorneygeneral.gov
**Attorney for Plaintiffs/Counter-Defendants,**
State of Texas, The City of Tyler, Texas,
and The County of Smith, Texas

| | | |
|---|---|---|
| RE:  SANADCO, INC. | § | BEFORE THE STATE OFFICE |
| | § | |
| TAXPAYER NO:  ███████ | § | |
| AUDIT OFFICE:    Audit – Fort Worth 2140 | § | OF |
| AUDIT PERIOD:    February 1, 2007 | § | |
| through June 30, 2009 | § | |
| Limited Sales, Excise, and Use Tax/RDT | § | ADMINISTRATIVE HEARINGS |

| | | |
|---|---|---|
| RE:  MAHMOUD AHMED ISBA | § | BEFORE THE STATE OFFICE |
| | § | |
| TAXPAYER NO:  ███████ | § | |
| AUDIT OFFICE:    Advanced Collections | § | OF |
| Processing 2S52 | § | |
| AUDIT PERIOD:    May 1, 2007 | § | |
| through June 30, 2009 | § | ADMINISTRATIVE HEARINGS |
| Limited Sales, Excise, and Use Tax/RDT | | |

## MOTION FOR JOINDER

The above styled hearings have been set with the State Office of Administrative Hearings (SOAH) to be heard by oral hearing.

The Tax Division respectfully requests that SOAH Docket Nos. **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.26** and **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.26** be joined together into a single proceeding.  Joinder is authorized by the Texas Administrative Code. *See* 1 TEX. ADMIN. CODE §155.155(c) *and* 34 TEX. ADMIN. CODE §1.37. Since these hearings involve the same issues of fact and law, they should be combined for the sake of efficiency.

Respectfully submitted,

*[signature]*

Isreal Miller
Assistant General Counsel
Administrative Hearings
Texas State Bar No. 24041485
Comptroller of Public Accounts
P.O. Box 13528
Austin, TX  78711-3528
*Telephone*:    (512) 463-4612
*Facsimile*:    (512) 463-4617

EXHIBIT A

# *INTEROFFICE MEMO*     *Carole Keeton Strayhorn*

*Texas Comptroller of Public Accounts*

**Date:** August 17, 2004

**AP 92**

**To:** All Audit Personnel

**From:** David Rock

**Subject:** **Alternative Audit Methods, Mark-Up Percentages & Product Mix Percentages for Convenience Stores**

---

Our Administrative Hearings Section and Administrative Law Judges have voiced concern about the lack of uniformity in estimated convenience store audits. Percentages were developed utilizing data from the Texas Petroleum Marketers and Convenience Store Association (TPCA), Robert Morris & Associates Annual Financial Statements (RMA), and National Association of Convenience Stores (NACS). These mark-up percentages and product mix percentages should only be used when necessitated by lack of reliable records. A shelf test **must** be conducted if the taxpayer is still in business. **Auditors should not employ estimates or percentages from other sources in completing audits.**

Effective immediately the following methods should be used to perform an audit in cases when records are unavailable, inadequate or unreliable:

1. Mark-up method: Purchase information is obtained from the taxpayer and/or vendors (such as beer distributors and/or cigarette distributors). A mark-up is established by performing a shelf test. The resulting mark-up is applied to the purchase information received from the taxpayer and/or third party vendors.
2. Average taxable sales method: This method should only be used when purchase invoices for all categories of purchases cannot be obtained from the vendor. For example, beer invoices are obtainable; no other purchase invoices are available; taxable sales should be estimated using the appropriate percentage(s) from the attachment. (Note: The auditor should always request and utilize actual taxpayer purchase invoices to determine specific product categories if the taxpayer records are reliable).

**When audits are estimated using the attached percentages, the auditor should include language in their notice of estimation that these percentages were obtained from this AP memo.**

**If the auditor does not use the mark-up method, it must be documented why this method was not used.**

**Example 1 - Purchases Available/No Shelf Test**

- The taxpayer's convenience store is out of business when the audit is generated.
- The taxpayer's purchase invoices on hand are incomplete.
- Taxpayer vendors are known.

The auditor identifies the taxpayer's vendors and obtains purchase information for the audit period. No shelf test can be conducted since the store is closed. The auditor should use the attached mark-up percentages for the appropriate category of purchases.

**Example 2 - Purchases Available for Only One Product Category/No Shelf Test**

- The taxpayer's convenience store is out of business when the audit is generated.
- Only known vendor(s) and purchase invoices are from beer distributor(s).
- Records on hand are the FIT returns for the audit period.

No shelf test can be conducted since the taxpayer is out of business. The auditor should use the attached percentage(s) for the appropriate product category.

The auditor obtains purchase information from the beer distributor(s) and applies the mark-up percentage for beer (Column B: 125.00%) to arrive at the dollar value of estimated beer sales for the audit. The auditor will divide the estimated dollar value of beer sales for the audit by the percentage of beer sales to average total sales (Column C: 27%) to calculate estimated total sales for the audit. Estimated total sales for the audit will be multiplied by 85% to calculate estimated taxable sales for the audit.

For example:

Beer purchases from beer distributors X 125.00% = $ value of estimated beer sales (EBS) for the audit

EBS for the audit / 27% = Estimated total sales (ETS) for the audit

ETS for the audit X 85% = Estimated Taxable Sales for the audit

                        (85% considered taxable sales; 15% allowance for non-taxable sales)

Convenience Store Mark-Ups and Percentages of Average Sales by Product

---

|  | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 |  |  |  |  |  |  |  |
| 2 | **Product Category** | **Markup** | **Percentage of Avg** | | **Percentage of Avg** | | |
| 3 |  | **Percentage** | **Sales to Total Sales For** | | **Sales to Total Sales** | | |
| 4 |  |  | **Stores that Sell Beer** | | **For Stores That Do Not** | | |
| 5 |  |  |  |  | **Sell Beer** | | |
| 6 |  |  |  |  |  |  |  |
| 7 | Beer/Wine | 125.00% | 27% |  | 0% |  |  |
| 8 |  |  |  |  |  |  |  |
| 9 | Candy | 183.93% | 9% |  | 13% |  |  |
| 10 |  |  |  |  |  |  |  |
| 11 | Cigarettes/Tobacco | 117.65% | 27% |  | 39% |  |  |
| 12 |  |  |  |  |  |  |  |
| 13 | Chips/Snacks | 149.25% | 7% |  | 4% |  |  |
| 14 |  |  |  |  |  |  |  |
| 15 | Other Taxable Food/Drinks | 204.08% | 6% |  | 7% |  |  |
| 16 |  |  |  |  |  |  |  |
| 17 | General Merch/HBC | 147.06% | 8% |  | 17% |  |  |
| 18 |  |  |  |  |  |  |  |
| 19 | Soft Drinks | 144.93% | 16% |  | 20% |  |  |
| 20 |  |  |  |  |  |  |  |
| 21 | Comments: |  |  |  |  |  |  |
| 22 | 1) Total sales consist of taxable and non-taxable items. Of these sales, 85% are considered | | | | | | |
| 23 | taxable and 15% are considered non-taxable. | | | | | | |
| 24 |  |  |  |  |  |  |  |
| 25 | 2) The mark-up percentage is the same for convenience stores that sell beer and for | | | | | | |
| 26 | convenience stores that do not sell beer. | | | | | | |
| 27 |  |  |  |  |  |  |  |
| 28 |  |  |  |  |  |  |  |
| 29 |  |  |  |  |  |  |  |

5/10/2007

# INTEROFFICE MEMO

## *Susan Combs*

*Texas Comptroller of Public Accounts*

**Date:** July 22, 2009

**AP 122**

**To:** All Audit Personnel

**From:** Emma Fuentes

**Subject: Guidelines for Convenience Store Audits**

---

The following guidelines must be used for all convenience stores audits completed on or after the issue date of this memo. This does not replace AP 92, it only updates our procedures to fully utilize data available to us:

·    HB 11 data, available taxpayer records, and third party records must be used to produce the most accurate audit results.

·    The product mix of each convenience store must be considered. Industry averages should only be used in the absence of these records.

·    For periods prior to HB 11 data where no records are available, average taxable sales amounts must be used to estimate the periods with missing records.

·    Rebates for tobacco products and allowances for purchases made with the Lone Star Card must be addressed.

**Records:**

·    HB11 data **must** be the starting point for convenience store audits, whether used as internal control verification or as data used to estimate the audit.

·    The auditor must request records from the taxpayer and/or their representative.

·    Vendors must be contacted to obtain records for the entire audit period, if available.

·    All of these records must be compared to each other for accuracy and consistency in

EXHIBIT C                                                    **CPA 4**

purchasing patterns. If material differences are noted between HB 11 data and purchase records received from vendors, contact the Computer Audit Information & Support (CAIS) section in Audit Headquarters.

## Use of Data

The availability of HB 11 data enables us to efficiently <u>detail</u> two major taxable product categories (beer/wine and tobacco products) from January 2008 forward. It allows us to use more than one taxable product category to estimate/sample an audit. **A sample should only be considered when a convenience store has <u>good internal controls, complete records</u> and inventory purchases are voluminous.**

## Individual Store's Product Mix & Shelf Test

Auditor judgment is crucial to determining the product mix of each individual convenience store. The product mix of each convenience store must be analyzed. This mix should be taken into consideration when reviewing available records. A shelf test **must** be conducted on each active outlet. It should have a minimum of 10 different high/medium volume items for each category. These 10 items can be a mix of the different variety of sizes and brands available for sale (for example, 12 pack, 6 pack, 18 pack, 20 oz, one liter bottles, quart bottles, smokeless tobacco, cigar products, domestic beer, imported beer, Coors, Budweiser, etc.) as these are often sold with different markups. If the taxpayer does not offer a variety of sizes and brands, this must be documented to explain why 10 items were not used.

## <u>Beer Barn / Discount Tobacco Outlets, etc.</u>

In instances where only beer, wine and tobacco are considered to be the primary taxable products, the best audit method to use is the mark-up method. An example is a beer barn or a convenience store that attributes the majority of its taxable sales to these items. On these audits, purchase information from HB 11 data, the taxpayer, and/or vendors (such as beer distributors and/or cigarette distributors) should be used as mentioned above. A mark-up is established by performing a shelf test. The resulting mark-up is applied to the purchase information and compared to reported taxable sales. Differences would be additional taxable sales. There is no need to gross-up additional immaterial taxable items.

## <u>Convenience Store with Significant Taxable Items Other than Beer and Tobacco</u>

There may be instances where the taxpayer sells a *significant* amount of other taxable items. These items should be included in the shelf test. As an example, the auditor observes that the following items are being sold at the store:

1) Ice
2) Motor oil
3) Detergent
4) Phone cards

| 5) | Soft drinks | 6) Energy drinks |
|---|---|---|
| 7) | Toilet paper | 8) Charcoal |
| 9) | Magazines | |

If a *majority* of these items can be traced to purchase invoices, there is reasonable assurance that the records are *substantially complete* and should be used to perform a purchase mark-up test. There is no need to estimate for any of the unaccounted invoices.

If the auditor has sufficient records for a short time period (a few months worth of records), then it may be possible to compute the product mix for the store. These percentages should be used to "gross-up" the additional average taxable sales to arrive at audited taxable sales.

Example: HB 11 data x corresponding mark-up = $360,000

Compute the percentage of each product to total sales:

| | | | |
|---|---|---|---|
| 1. | Product mix for beer/wine at estimated sales = | $35,600.04 | (1) / (5) = 50.84%* |
| 2. | Product mix for cigarettes/tobacco at estimated sales = | 18,655.33 | (2) / (5) = 26.64%* |
| 3. | Product mix for soft drinks at estimated sales = | 6,812.30 | (3) / (5) = 9.73% |
| 4. | Other taxable product mix at estimated sales = | 8,952.94 | (4) / (5) = 12.79% |
| 5. | Total | $70,020.61 | 100% |

Audited taxable sales:     $360,000 / 77.48%* = $464,636.04

The above example is based on audits where a shelf test is conducted. If no shelf test is conducted, use the cost of the items sold to calculate the product mix percentage.

**Industry Averages**

If the auditor cannot get sufficient records to compute a store's individual product mix, the attached product mix percentages may be used when estimating additional taxable sales. These percentages were developed utilizing data from the Texas Petroleum Marketers and Convenience Store Association (TPCA), Robert Morris & Associates Annual Financial Statements (RMA), and National Association of Convenience Stores (NACS). These mark-up percentages and product mix percentages should be used *only* when necessitated by lack of reliable records or if the store is closed. The industry averages should not be used when the product mix is available because the product mix of the store may not be consistent with the national product mix percentages.

**Periods prior to HB 11 (January 1, 2008):**

If there are no records prior to January 2008, estimated taxable sales should be based on the average taxable sales for the periods when records were available. We should no longer be using the error factor to estimate additional taxable sales for the prior periods. This new method is a result of taxpayers who may have increased reported taxable sales after the passage of HB 11 after being contacted as a result of our desk compliance project.

Example:
Total Audited Taxable Sales using 12 months of HB11 data and other reliable data: $360,000
Average Monthly Audited Taxable Sales for periods without records: $360,000/12 months = $30,000
The $30,000 would be used for each reporting period without records. The reported taxable sales amounts should be subtracted from the Average Monthly Audited Taxable Sales.

**Tobacco Products Rebates and Lone Star Card Allowances:**

A taxpayer may receive a rebate from the cigarette manufacturer(s) which reduces the purchase price of tobacco products. The auditor should request the rebate information from the taxpayer. If provided, these amounts must be deducted from the purchase price of the tobacco products by month. Also, the rebate amounts should be considered when calculating the mark-up, when applicable. If the taxpayer or their representative is unable or unwilling to provide rebate information, the computed mark-up for tobacco will be small or possibly a negative number. If this occurs, the attached industry averages should be used.

Allowances for Lone Star Card should be made only when adjustments are made for products that can be purchased using the Lone Star Card (soft drinks, chips, candy). If adjustments are only for tobacco products and beer, no Lone Star Card allowance should be given. Refer to the Grocery Store Manual, Chapter V for additional information.

**Notification of Estimation**

Auditors must issue the appropriate Notification of Estimation.

If you have any questions about this, please contact Les Arche 512-463-1749, Gilbert Garcia, 512-257-4636, or Emma Fuentes at 512-305-9893.

Attachments:

1. Revised AP 122 Attachment.

# STATE OFFICE OF ADMINISTRATIVE HEARINGS

## AUSTIN OFFICE
### 300 West 15th Street Suite 502
### Austin, Texas 78701
### Phone: (512) 475-4993
### Fax: (512) 322-2061

DATE: **06/28/2013**

NUMBER OF PAGES INCLUDING THIS COVER SHEET: **3**

REGARDING: **ORDER NO. 3 - RESCHEDULING HEARING**

DOCKET NUMBER: **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.26**

**JUDGE PETER BROOKS**

| **FAX TO:** | **FAX TO:** |
|---|---|
| ISREAL MILLER (COMPTROLLER OF PUBLIC ACCOUNTS) | VIA EMAIL |
| SAMUEL T. JACKSON | (866) 374-0164 |

**NOTE: IF ALL PAGES ARE NOT RECEIVED, PLEASE CONTACT Amanda Deichert(ade) (512) 475-4993**

The information contained in this facsimile message is privileged and confidential information intended only for the use of the above-named recipient(s) or the individual or agent responsible to deliver it to the intended recipient. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the address via the U.S. Postal Service. Thank you.

EXHIBIT D

SOAH DOCKET NO. 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.26
TCPA HEARING NO. 106,815

| | | |
|---|---|---|
| SANADCO, INC., | § | BEFORE THE STATE OFFICE |
|     Petitioner | § | |
| | § | |
| v. | § | OF |
| | § | |
| TEXAS COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS, | § | |
|     Respondent | § | ADMINISTRATIVE HEARINGS |

SOAH DOCKET NO. 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.26
TCPA HEARING NO. 107,006

| | | |
|---|---|---|
| MAHMOUD AHMED ISBA, | § | BEFORE THE STATE OFFICE |
|     Petitioner | § | |
| | § | |
| v. | § | OF |
| | § | |
| TEXAS COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS, | § | |
|     Respondent | § | ADMINISTRATIVE HEARINGS |

## ORDER NO. 3
## RESCHEDULING HEARING

The parties have provided three alternate dates for rescheduling the hearings due to a scheduling conflict. The hearings currently scheduled to convene on August 19, 2013, are cancelled and continued to **September 9, 2013 at 1:00 p.m.** at the State Office of Administrative Hearings, William P. Clements Building, 300 West 15th Street, 4th Floor, Austin, Texas.

**SIGNED June 28, 2013.**

PETER BROOKS
ADMINISTRATIVE LAW JUDGE
STATE OFFICE OF ADMINISTRATIVE HEARINGS

# STATE OFFICE OF ADMINISTRATIVE HEARINGS

**AUSTIN OFFICE**
300 West 15th Street Suite 502
Austin, Texas 78701
Phone: (512) 475-4993
Fax: (512) 322-2061

## SERVICE LIST

**AGENCY:**               **Comptroller Of Public Accounts (CPA)**

**STYLE/CASE:**           106,815

**SOAH DOCKET NUMBER:**   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.26

**REFERRING AGENCY CASE:**

| STATE OFFICE OF ADMINISTRATIVE HEARINGS | ADMINISTRATIVE LAW JUDGE ALJ PETER BROOKS |
|---|---|
| **REPRESENTATIVE / ADDRESS** | **PARTIES** |
| SAMUEL T. JACKSON THE LAW OFFICE OF SAMUEL T. JACKSON P.O. BOX 170633 ARLINGTON, TX 76033-0633 (817) 751-7155 (PH) (214) 628-0977 (WK) (866) 374-0164 (FAX) jacksonlaw@hotmail.com | |
| | MAHMOUD ISBA AHMED SANADCO, INC. |
| ISREAL MILLER COMPTROLLER OF PUBLIC ACCOUNTS ADMINISTRATIVE LAW DIVISION P.O. BOX 13528 AUSTIN, TX 78711-3528 (512) 463-4612 (PH) (512) 463-4617 (FAX) AHSservice@cpa.state.tx.us | |
| | COMPTROLLER OF PUBLIC ACCOUNTS |

| | | |
|---|---|---|
| SANADCO, INC. | § | BEFORE THE STATE OFFICE |
| | § | |
| PETITIONER | § | |
| | § | |
| VS | § | OF |
| | § | |
| TEXAS COMPTROLLER OF | § | |
| PUBLIC ACCOUNTS, | § | |
| | § | |
| RESPONDENT | § | ADMINISTRATIVE HEARINGS |

| | | |
|---|---|---|
| MAHMOUD AHMED ISBA | § | BEFORE THE STATE OFFICE |
| | § | |
| PETITIONER | § | |
| | § | |
| VS | § | OF |
| | § | |
| TEXAS COMPTROLLER OF | § | |
| PUBLIC ACCOUNTS, | § | |
| | § | |
| RESPONDENT | § | ADMINISTRATIVE HEARINGS |

---

*PETITIONER'S POST-HEARING BRIEF*

---

EXHIBIT E

## TO THE HONORABLE JUDGE OF SAID COURT:

SANADCO, INC. and MAHMOUD AHMED ISBA, Petitioners, file this Post-Hearing Brief from an administrative review hearing held on September 10, 2013, and would show unto the Court the following:

### I. The Audit Must Be Revised To Exclude Previously Audited Inventory

1. *Background*—In 2009, SANADCO, INC. was audited for sales and use tax compliance by the BART (Business Activity Research Team), an arm of the Texas Comptroller of Public Accounts ("Comptroller") for the initial period of January 1, 2008 thru March 31, 2009, and assessed a tax liability of $23,593.60, including tax, a 10% penalty, an additional 50% penalty and accrued interest. (Exhibit 1). The audit was entirely conducted utilizing HB11 data and AP 92 and AP 122 estimated mark-ups and compared it to the reported tax payments provided from Sanadco's tax records to determine the additional tax liability.

SANADCO, INC. was provided a copy of a Texas Notification of Exam Results on July 9, 2009 advising of these results and informing him that the results would become final on July 22, 2009 unless a Request for Redetermination hearing was requested by that date. If no hearing was requested by that date the assessment would become due and payable on July 22, 2009 and if paid after that date, an additional 10% penalty of $2,086.71 would be added.

No Request for Redetermination was filed and the assessment became due and payable on July 22, 2009, but SANADCO, INC. never made any payments. On March 19, 2010 the Comptroller Certified the liability to the Office of the Attorney General for collection pursuant to Tex. Tax Code Ann. § 111.010. On July 6, 2010, the Attorney General filed suit to collect this debt in Cause No. D-1-GV-10-000902.

SANADCO, INC. filed its Original Answer on September 19, 2010 and its First Amended Answer and Counterclaims on January 11, 2011 alleging that the audit was void because the Comptroller had failed to promulgate AP 92, AP 122 and HB 11 as administrative rules. Gov't Code § 2001.038. Sanadco also alleged that the Comptroller had engaged in ultra vires conduct by authorizing the use of AP 92, AP 122 and HB 11

without first adopting them as rules as required by the APA, and by authorizing the desk audit without review of the store's records in excess of her statutory authority.

The Attorney General responded with his Original Answer and Plea to the Jurisdiction on January 26, 2011. The trial court held a non-evidentiary hearing on June 28, 2011, and granted the Comptroller's Plea to the Jurisdiction by order dated July 8, 2011. SANADCO, INC. filed an interlocutory appeal pursuant to Tex. Civ. Prac. & Rem Code Ann. § 51.014 (a) (8), on July 25, 2011.

The Third Court of Appeals issued its Memorandum Decision in Case No. 03-11-00462 on September 26, 2013. The court held, inter alia, that the directives in AP 92 and AP 122 are in fact rules, and the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules. Though the Court of Appeals stopped short of declaring that the rules were invalid, and instead remanded the case for further proceedings, the Comptroller has never asserted that she had complied with the APA before utilizing them, and it is unlikely that she would make such a claim during the remand proceedings.

2. **The audit is void and unenforceable—**

A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999). These procedures include providing notice, publication, and public comment on the proposed rule. *Id.* (citing Tex. Gov't Code Ann. §§ 2001.023-.030). The process assures notice to the public and affected persons and an opportunity to be heard on matters that affect them. *Id.*

Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ 2001.035,[1] 2001.004[2] and 2001.005[3]. Neither AP92 nor AP122 as it relates to HB 11,

---

[1]§ 2001.035. Substantial Compliance Requirement; Time Limit on Procedural Challenge
(a) A rule is voidable unless a state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034.

[2]§ 2001.004 Requirement to Adopt Rules of Practice and Index Rules, Orders, and Decisions
In addition to other requirements under law, a state agency shall:
(1) adopt rules of practice stating the nature and requirements of all available formal and informal procedures;
(2) index, cross-index to statute, and make available for public inspection all rules and other written statements of policy or interpretations that are prepared, adopted, or used by the agency in discharging its functions; and

were ever adopted as mandated by the APA and are therefore invalid and unenforceable when applied to convenience store audits.

The entire audit period was estimated for the period November 2006 thru June 2009 using reported HB-11 amounts for alcohol and tobacco and AP 122 percentages. It is therefore submitted that the entire audit is invalid and unenforceable pursuant to the relevant provisions of the APA.

## 3. The Subject Audit Overlaps Previous Final Audits

It is quite difficult to determine the actual audit period from the Comptroller's evidence because the dates conflict depending on the source of the information. The Notification of Estimation Procedures sent to the Petitioners on January 27, 2011 included conflicting dates within the same instrument. In the heading, the audit period was reported as *February 1, 2007* thru June 30, 2009. The body of the Notification, however, stated that "the entire audit period will be estimated from *November 2006* thru June 2009", a full four months prior to the period outlined in the heading.

The sixty-day letter, however, dated October 22, 2009, requested information from June 1, 2006 thru September 30, 2009. The follow-up letter dated July 28, 2010, requested information from February 1, 2007 through June 30, 2009. The Texas Notification of Audit Results issued to SANADCO, INC. on April 1, 2011 also lists the audit period as February 1, 2007 thru June 30, 2009, and will be assumed to be the official audit period.

As stated above, the Comptroller has filed suit regarding a prior audit which covered the audit period of January 1, 2008 thru March 31, 2009 which has been the subject of an interlocutory appeal authorizing SANADCO, INC. to proceed in its challenge of the audit on various grounds. Obviously this is from an order which became final on July 22, 2009 as stated in the Attorney General's petition and in the deficiency notice. Accordingly, the subject audit purporting to cover the period February 1, 2007 thru June

---

(3) index, cross-index to statute, and make available for public inspection all final orders, decisions, and opinions.

[3] § 2001.005 Rule, Order, or Decision Not Effective Until Indexed
(a) A state agency rule, order, or decision made or issued on or after January 1, 1976, is not valid or effective against a person or party, and may not be invoked by an agency, until the agency has indexed the rule, order, or decision and made it available for public inspection as required by this chapter.
(b) This section does not apply in favor of a person or party that has actual knowledge of the rule, order, or decision.

30, 2009 overlaps the audit filed in District Court and cannot be the subject of this audit. It would appear that the audit could only cover the bifurcated period from February 1, 2007 thru December 31, 2007 and April 1, 2009 thru June 20, 2009 for a total period of approximately 12 months instead of the 28 months alleged in the audit. Accordingly, this audit must be deleted.

Respectfully submitted,
By: /s/ **Samuel T. Jackson**
Samuel T. Jackson
Texas Bar No. 10495700
PO Box 170633
Arlington, TX 76003-0633
Tel. (214) 751-7155; (512) 692-6260
Fax. 866-374-0164
FOR DEFENDANTS, COUNTER-PLAINTIFFS
Email: jacksonlaw@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys **via facsimile**, certified mail, return receipt requested, and/or hand delivery on October 5, 2013, in accordance with Rule 21a, Texas Rules of Civil Procedure, to the following:

**ISREAL MILLER,** Assistant General Counsel, Administrative Hearings, P.O. Box 13528, Austin, Texas 78711-3528, *Telephone:* (512)463-4612; *Facsimile:* (512)463-4617; Email: isreal.miller@texasattorney general.gov
ATTORNEY FOR PLAINTIFFS

| | | | |
|---|---|---|---|
| RE: SANADCO, INC. | § | BEFORE THE STATE OFFICE | |
| | § | | |
| TAXPAYER NO: ███████ | § | | |
| AUDIT OFFICE: Fort Worth – 2140 | § | OF | |
| AUDIT PERIOD: February 1, 2007 | § | | |
| through June 30, 2009 | § | | |
| Limited Sales, Excise, and Use Tax/RDT | § | ADMINISTRATIVE HEARINGS | |

SOAH NO. 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.26
(Comptroller Hearing No. 107,006)

| | | | |
|---|---|---|---|
| RE: MAHMOUD AHMED ISBA | § | BEFORE THE STATE OFFICE | |
| | § | | |
| TAXPAYER NO: ███████ | § | | |
| AUDIT OFFICE: Advanced Collections | § | OF | |
| Processing 2S52 | § | | |
| AUDIT PERIOD: May 1, 2007 | § | | |
| through June 30, 2009 | § | ADMINISTRATIVE HEARINGS | |
| Limited Sales, Excise, and Use Tax/RDT | | | |

## TAX DIVISION'S RESPONSE TO PETITIONER'S POST-HEARING BRIEF

Order No. 4 instructed the Tax Division to file its response to Petitioner's post-hearing brief on or before November 4, 2013.

### Petitioner's Contentions

In its Post-Hearing Brief, Petitioner raised three new contentions. The Tax Division renumbers these contentions as 6, 7, and 8 because Petitioner did not withdraw its previous contentions:

1. The imposition of additional fraud penalties should be deleted because Petitioner provided substantial records, and the underpayment was not the result of fraud or a knowing or willful intent to evade taxes.

2. The auditor was not authorized to engage in estimating procedures because Petitioner maintained the required records, and the available records were not inadequate.

3. Petitioner disputes the auditor's exclusive use of HB11 information and estimated markups to determine the tax liability for beer and cigarettes when Petitioner had documentation regarding the actual purchases and markups which was ignored by the auditor.

4. Petitioner disputes the auditor's calculations regarding markups which were well beyond national averages and those contemplated under AP-122.

EXHIBIT F

5. Petitioner disputes the imposition of additional penalties for the jeopardy determination, because the statute authorizing such penalties is unconstitutionally vague for its failure to establish guidelines for its imposition.

6. The audit must be revised to exclude previously audited inventory.

7. The audit is void and unenforceable.

8. The subject audit overlaps previous final audits.

## Tax Division's Position

The Tax Division disagrees with all of Petitioner's contentions. The Tax Division reaffirms its positions as expressed in the Position Letter. The Tax Division contends that Petitioner has failed to meet its burden to show that the audit is in error or that any of the necessary factors for interest waiver are present in this case. Rule 1.40(2)(B). The Tax Division contends that the record evidence is clear and convincing that Petitioner intended to evade the tax, and thus, the assessment of the 50% additional penalty should be upheld.

**Contentions 1 and 5:**
The Tax Division recommends Petitioner's request for waiver of the 50% additional penalty be denied.

**Contention 2 - 4:**
Due to an absence of complete records, an audit was conducted using alcohol and tobacco records obtained directly from vendors (HB 11) and an estimate was calculated in accordance with Audit Policy Memo 122 (AP 122). Due to the high error rate (66.45%) and evidence of Petitioner's intent to evade tax, an additional 50% penalty was imposed in accordance with Section 111.061(b)(1).

Petitioner provides no documentation or other proof in support of its claims.[1]

Section 151.025 requires a seller to maintain records of gross receipts and purchases for at least four years. Rule 3.281(b) outlines the categories of records that a seller is required to maintain.

The recordkeeping requirements are imposed to enable the Comptroller to audit records and verify the accuracy of reporting.[2] If a seller fails to maintain the necessary records, the Comptroller is authorized to estimate the tax liability based on other information that is available.[3] The audit was estimated pursuant to these provisions. Petitioner did not provide

---

[1] Bare assertions are insufficient to overcome the presumption of validity afforded to the Comptroller's assessment. *Baker v. Bullock*, 529 S.W.2d 279 (Tex. Civ. App. – Austin 1975, writ ref'd n.r.e.); *State v. Glass*, 723 S.W.2d 325 (Tex. App. – Austin, 1987, writ ref'd n.r.e.).
[2] *See* Section 151.023.
[3] Section 111.008 and Rule 3.281(c)(1).

2

records or provided records that were insufficient to support audit adjustments. Consequently, the audit liability should be upheld.

Regarding the mark-up percentages, the auditor's determinations are shown in Audit Exam 20B. Petitioner has not shown that these determinations are in error.

**Contentions 6 and 7:**
The Tax Division disputes Petitioner's contention that the audit must be revised to exclude previously audited inventory.

Although Petitioner contends that because of the Memorandum Opinion issued by the Third Court of Appeals in *Sanadco Inc., et al. v. The Office of the Comptroller of Public Accounts of the State of Texas, et al* (No. 03-11-00462-CV) "the entire audit is invalid and unenforceable pursuant to the relevant provisions of the APA," the Tax Division believes Petitioner reliance on the decision is premature. In the opinion, the Court sustained the counter claim of *Sanadco Inc.*, concluding that Audit Procedure Memo 92 (AP 92) and Audit Procedures Memo 122 (AP 122) were improperly promulgated rules. The Tax Division maintains that the conclusion of the Court should not be applied, as a Motion for Rehearing and Reconsideration has been filed by the Comptroller, and the ruling is therefore not final. The Tax Division attaches the Memorandum Opinion as Exhibit No. 6 and the State Official's Motion for Rehearing and Reconsideration En Banc as Exhibit No. 7.

The opinion of the Court in *Sanadco* is not final until the Court's power to alter the decision expires. *See Oscar Renda Contracting, Inc. v. H&S Supply Co., Inc.*, 195 S.W.3d 772 (Tex. App.—Waco 2006, pet. denied) (Suit became final when appellate court's judgment of dismissal had "disposed of all issues and parties in the case and the court's power to alter the judgment ha[d] ended."). At this time, a Motion for Rehearing and Reconsideration has been filed, and the Third Court has the power to alter the judgment. However, the Court will lose plenary power "30 days after the court overrules all timely filed motions for rehearing or en banc reconsideration, and all timely filed motions to extend time to file such a motion." Tex. Rule App. P. 19.1(b). At that point, the judgment in *Sanadco* will be "final" and should be treated as binding precedent by all parties, even if further appeal is taken to the Texas Supreme Court.

**Contention 8:**
The Tax Division disagrees with Petitioner's contention that "this audit be deleted" because the subject audit overlaps previous final audits.

The Tax Division acknowledges that a BART Assessment was conducted and that Petitioner was assessed tax based on the difference between its purchases of alcohol and tobacco products as reported by its vendors and its reported taxable sales for the period January 1, 2008 through March 31, 2009. Because this tax was assessed before the audit was conducted for the audit period February 1, 2007 through June 30, 2009, the auditor accounted for the previously assessed tax in Column F of Exam 20A. The Tax Division contends that this adjustment is appropriate and that Petitioner has not suffered from double taxation as a result. Furthermore, the BART Assessment is not at issue in this hearing other than as an offset to the audit.

3

## Conclusion

The estimated tax, 10% penalty, 50% additional penalty, and interest should be upheld in the audit of Sanadco, Inc. because Petitioner failed to show error in the audit. Rule 1.40. The liability for the estimated tax, 10% penalty, 50% additional penalty, and interest that was assessed against Mahmoud Ahmed Isba individually under Sections 111.0611 and 111.022 as a result of the gross underreporting of sales tax in the audit of Sanadco, Inc. should also be upheld.

Respectfully submitted,

Isreal Miller
Assistant General Counsel
Administrative Hearings
Texas State Bar No. 24041485
Comptroller of Public Accounts
P.O. Box 13528
Austin, Texas 78711-3528
*Telephone*: (512) 463-4612
*Facsimile*: (512) 463-4617
isreal.miller@cpa.state.tx.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Tax Division's Response to Petitioner's Post-Hearing Brief was sent to Samuel T. Jackson, Law Office of Samuel T. Jackson, P.O. Box 170633, Arlington, TX 76003-0633, on this the 4th day of November, 2013.

Isreal Miller

4

# State Office of Administrative Hearings



Cathleen Parsley
Chief Administrative Law Judge

December 12, 2013

The Honorable Susan Combs
Comptroller of Public Accounts
LBJ Building
111 E. 17th Street, 1st Floor
Austin, TX 78701

**HAND DELIVERY**

RE:    **SOAH Docket Nos. 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.26 and 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.26; TCPA Hearing Nos. 106,815 and 107,006; Taxpayer No. 3-20-14145158 and 3-20-011105148; Sanadco, Inc. and Mahmoud Ahmed Isba v. Texas Comptroller of Public Accounts**

Dear Comptroller Combs:

Please find enclosed a Proposal for Decision in this case. It contains my recommendation and underlying rationale.

Exceptions and replies may be filed by any party in accordance with 1 Texas Administrative Code § 155.507(c), a SOAH rule which may be found at www.soah.state.tx.us.

Sincerely,

PETER BROOKS
ADMINISTRATIVE LAW JUDGE
STATE OFFICE OF ADMINISTRATIVE HEARINGS

PB/ad
xc:    Isreal Miller, Assistant General Counsel, Administrative Hearings Section, 1700 N. Congress, Suite 320, Austin, TX 78701 - **VIA HAND DELIVERY**
Samuel Jackson, Law Offices of Samuel T. Jackson, P.O. Box 170633, Arlington, TX 76003 - **VIA REGULAR MAIL**

EXHIBIT G

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

SOAH DOCKET NO. 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.26
TCPA HEARING NO. 106,815
TAXPAYER NO. ▊▊▊▊▊

| | | |
|---|---|---|
| SANADCO, INC.,<br>Petitioner | §<br>§<br>§ | BEFORE THE STATE OFFICE |
| | § | |
| v. | §<br>§ | OF |
| TEXAS COMPTROLLER OF PUBLIC<br>ACCOUNTS,<br>Respondent | §<br>§<br>§<br>§ | ADMINISTRATIVE HEARINGS |

SOAH DOCKET NO. 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.26
TCPA HEARING NO. 107,006
TAXPAYER NO. ▊▊▊ ▊▊▊ ▊

| | | |
|---|---|---|
| MAHMOUD AHMED ISBA,<br>Petitioner | §<br>§<br>§ | BEFORE THE STATE OFFICE |
| | § | |
| v. | §<br>§ | OF |
| TEXAS COMPTROLLER OF PUBLIC<br>ACCOUNTS,<br>Respondent | §<br>§<br>§<br>§ | ADMINISTRATIVE HEARINGS |

## PROPOSAL FOR DECISION

Sanadco, Inc. (Petitioner SI) was audited for sales and use tax compliance by the Texas Comptroller of Public Accounts (Comptroller) and assessed tax, a 10% penalty, an additional 50% penalty, and accrued interest. The Comptroller also assessed personal liability against Mahmoud Ahmed Isba (Petitioner Isba) under Tax Code § 111.0611 as the president of Petitioner SI. Petitioners contest their audit assessments on the same grounds, including the contentions that the audit assessment is void and unenforceable because the estimate was based on audit procedures that constituted invalid rules, and that the present audit overlaps a previous final audit assessment. Comptroller Staff (Staff) rejects the Petitioners' contentions. In this Proposal for Decision (PFD), the Administrative Law Judge (ALJ) recommends that the corporate assessment against Petitioner SI should be affirmed, except that the markup percentage

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

used in calculating the estimated tobacco sales should be adjusted and that the additional fraud penalty should be applied only to the report periods February 1, 2007 through April 30, 2008. The ALJ also recommends that the personal liability assessment against Petitioner Isba should be limited to the report periods May 1, 2007, through April 30, 2008.

## I. PROCEDURAL HISTORY, NOTICE AND JURISDICTION

On May 10, 2013, Staff referred the cases to the State Office of Administrative Hearings (SOAH) for oral hearings. ALJ Peter Brooks ordered the cases joined because the cases involve related parties, and common facts and issues of law. Staff was represented by Assistant General Counsel Isreal Miller and Petitioners were represented by Attorney Samuel T. Jackson. The case convened on September 9, 2013. The ALJ closed the record on November 12, 2013. There are no contested issues of notice or jurisdiction. Therefore, these matters are set out in the Findings of Fact and Conclusions of Law.

## II. REASONS FOR DECISION

### A.    Evidence Presented

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1.    Sixty-Day Letter;

2.    Texas Notification of Audit Results;

3.    Penalty and Interest Waiver Worksheet;

4.    Audit Report; and

5.    Audit Plan, which includes Audit Referral Report for Additional Penalty.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1.   Texas Notification of Personal Liability for Fraudulent Tax Evasion;

2.   Audit Exam, including correspondence and e-mail communications from the Revenue Accounting Division; the Calculated Message, Adjustment, and Allocation Reports; Tax Summary, Status, Balance, Audit, and Tax Allocation Basis Inquiries; and Personal Liability Fraudulent Tax Evasion Worksheet;

3.   Sales and Use tax Returns for report periods April 2007, May 2008, December 2008, February 2008, and January 2009; and

4.   State Filings (Statement of Change of Registered Office/Agent, dated May 5, 2006; and Texas Franchise Tax Public Information Reports signed May 10, 2006, March 13, 2008, and February 26, 2009.

Staff attached to its Response to Petitioner's Post-Hearing Brief the following exhibits:

6.   Copy of Memorandum Opinion issued in *Sanadco, Inc. v. Comptroller*, No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App. – Austin September 26, 2013); and

7.   Appellee's Motion for Rehearing and Reconsideration *en banc* filed in Sanadco, *Inc.*

Petitioner SI produced during the hearing its responses to Staff's Second Set of Interrogatories, Requests for Admissions and Requests for Production. Petitioner did not offer any other evidence during the hearing, but did attach to its Post-Hearing Brief the following exhibits:

1.   The Examination performed by the Comptroller's Business Activity Research Team (BART) for the exam period January 1, 2008 through March 31, 2009, including, the Accounts Examiner Coversheet; correspondence and e-mail communications from BART; the Texas Notification of Exam Results; the Message, Adjustment, and Allocation Reports; Petitioner's Alcohol and Tobacco

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

Purchases for January 2008 through March 2009; and ITS Work Manager Comments;

2. Plaintiff's Original Petition, *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013;

3. Defendant's First Amended Answer and Counterclaim, *Sanadco, Inc.* 2013 Tex. App. LEXIS 12013; and

4. Counter-Defendant's Original Answer and Jurisdictional Plea, *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013

There were no evidentiary objections, and each of the listed documents is admitted as part of the contested case record.

The only witness testimony presented during the contested case hearing was that of Dennis Eastman, the audit supervisor who supervised the Comptroller auditor who performed Petitioner SI's audit. Staff presented the testimony of Mr. Eastman.

B. **Adjustments**

Staff has not agreed to adjust any of the contested audit assessments.

C. **Facts Established and Issues Presented**

Petitioner SI operated a convenience store in Fort Worth, Texas during the audit period February 1, 2007 through June 30, 2009. Petitioner SI no longer owns the convenience store. Petitioner SI was subjected to a desk audit performed by BART for the exam period of January 1, 2008 through March 31, 2009. It was assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest. The exam was prompted[1] by a comparison of Petitioner SI's alcohol and tobacco purchases for

---

[1] Petitioner's Exhibit 1, letter dated July 2, 2009 from BART advising Petitioner SI of assessment.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

the exam period reported by Petitioner SI's tobacco and alcohol vendors pursuant HB 11.[2] The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo 122 (AP 122) in estimating the assessment. Petitioner SI did not file a request for redetermination contesting the assessment, consequently, the assessment became final. The sales and use tax delinquency was certified to the Attorney General.[3] The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioners SI and Isba.[4] Petitioners filed various counterclaims against the Comptroller. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction. Petitioners appealed the dismissal. The Appeals Court sustained Petitioners' claim that the Comptroller's directives in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. See Sanadco, Inc., 2013 Tex. App. LEXIS 12013.

The Comptroller subsequently conducted an audit of Petitioner SI's sales and use tax compliance for the audit period February 1, 2007 through June 30, 2009. Petitioner SI did not respond to the auditor's requests for records.[5] The auditor issued a Notification of Estimation Procedures for State Tax Audit (Notification of Estimation) dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.[6] When the auditor initiated the audit fieldwork Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead

---

[2] Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. HB 11, 80th Leg., R.S., 2007. The vendor records are commonly referred to as HB 11 records.

[3] Petitioner's Exhibit 2, Texas Certificate to Attorney General of Sales and Use Tax Delinquency.

[4] Petitioner's Exhibit 2, Plaintiff's Original Petition.

[5] Staff's Exhibit 4 (Petitioner SI), Audit Report.

[6] Id.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.[7] The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008, through June 30, 2009. The total alcohol and tobacco purchases were multiplied by their respective markup percentages.[8] No product-mix percentage was calculated, because no purchase invoices were available. Therefore, the standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales. The auditor afforded a 5% allowance for spoilage and theft, and credit was given for reported taxable sales. The adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008 through March 31, 2009, and the resulting additional taxable sales were then multiplied by the applicable tax rates to arrive at the tax due for the period January 1, 2008, through June 30, 2009.[9]

As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for the report periods January 1, 2008, through June 30, 2009 by first determining the average monthly net estimated taxable sales. The post-December 31, 2007 total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.[10] The additional taxable sales for the pre-January 1, 2008 report periods were calculated by giving credit for the taxable sales reported to the Comptroller and applying the 5% allowance for spoilage and theft. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for this part of the audit period.[11]

---

[7] *Id.*, and Staff's Exhibit 4 (Petitioner SI), Exam 20B)

[8] *Id.*

[9] Staff's Exhibit 3 (Petitioner SI), Audit Report, Exam 20.

[10] Staff's Exhibit 4 (Petitioner SI), Audit Report, Exam 20B.

[11] Staff's Exhibit 3 (Petitioner SI), Audit Report, Exam 20.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

SOAH DOCKET NOS. 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.26          PROPOSAL FOR DECISION          PAGE 7
& 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.26.26
TCPA DOCKET NOS 106,815 & 107,006

Since no contact was made during the audit with an officer, owner, or representative of Petitioner SI, the auditor did not record in the Audit Plan or in the Audit Referral Report for Additional Penalty any information regarding the role played by an officer, director, owner, or employee of Petitioner SI in the operation of the store or in the preparation and filing of the sales and use tax returns and the remittance of sales and use tax payments. The only substantive information regarding Petitioner Isba's activities is found in Petitioner SI's responses to Staff's Second Set of Interrogatories, Requests for Admissions and Requests for Production. Petitioner SI admitted that Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.[12] Petitioner Isba is identified as the person responsible for depositing the store's sales proceeds, ordering the store's inventory, and paying for the store's inventory purchases.[13] Petitioner Isba was also identified as the person who received the monthly bank statements.[14] However, according to Petitioner SI's answers to the interrogatories, Petitioner Isba's responsibility for these tasks ended when on May 1, 2008, he entered into an agreement to sell Sanadco, Inc. to his employees, Yassien Siam and Sandra Salazar. Mr. Siam thereafter assumed responsibility for these tasks from May 1, 2008, until the end of the audit period.

Petitioner SI, in the responses to Staff's Interrogatory No. 1, stated that Petitioner Isba was the sole owner, officer, or manager through May 1, 2008. Petitioner Isba signed Petitioner SI's 2006 Texas Franchise Tax Public Information Report (PIR) as president of Sanadco.[15] The PIR is dated May 10, 2006. Although Petitioner SI's 2008 PIR identified Petitioner Isba as the corporate president, the form is signed by a Mike Isba.[16] The PIR is dated

---

[12] Petitioner SI's Admission No. 2.

[13] Petitioner SI's Answers to Interrogatories Nos. 4, 5, and 6.

[14] Petitioner SI's Answer to Interrogatory No. 7.

[15] Staff's Exhibit 4 (Petitioner Isba).

[16] *Id.*

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

March 13, 2008. The 2009 PIR identifies Petitioner Isba as the president, but it bears the signature Isba, without a given name.[17] The PIR is dated February 26, 2009.

On April 1, 2011, the Comptroller issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax. The overall error rate for Petitioner SI was 66.45%, which was calculated by dividing the tax assessed by the sum of the tax reported and assessed.[18] Petitioner SI timely requested redetermination.

The Comptroller also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007, through June 30, 2009.[19] The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax. Petitioner Isba timely requested redetermination.

Both Petitioners SI and Isba contested their assessments on the same grounds:

1.    The imposition of additional fraud penalties should be deleted because Petitioner provided substantial records, and the underpayment was not the result of fraud or a knowing or willful intent to evade taxes;

2.    The auditor was not authorized to engage in estimating procedures because Petitioner maintained the required records, and the available records were not inadequate;

---

[17] *Id.*

[18] Petitioner SI's Penalty and Interest Waiver Worksheet.

[19] Staff's Exhibit 1 (Petitioner Isba). Texas Notification of Personal Liability.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

3. The auditor's exclusive use of HB 11 information and estimated markups to determine the tax liability for beer and cigarettes, when Petitioner had documentation regarding the actual purchases and markups, was improper;

4. The auditor's calculations regarding markups were well beyond national averages and those contemplated under AP 122;

5. The imposition of additional penalties for the jeopardy determination was flawed, because the statute authorizing such penalties is unconstitutionally vague for its failure to establish guidelines for its imposition;

6. The audit should be revised to exclude previously audited inventory;

7. The audit is void as unenforceable because it was based on audit procedures that constitute invalid rules; and

8. The subject audit overlaps a previous final audit, consisting of a BART exam for the period January 1, 2008 through March 31, 2009.

## D. Analysis and Recommendation

### 1. SOAH Docket No. 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.2626 (Petitioner SI)

When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code § 111.0042(d). An estimated audit was appropriate in this case because Petitioner SI did not have complete records. The Comptroller has held that estimated audits based on HB 11 vendor records and AP 122 procedures meet the best information available requirement when taxpayer records are incomplete or unreliable. *See* Comptroller's Decision No. 103,892 (2011). The evidence that Staff submitted establishes that the audit was based on the best information available and that established audit procedures were followed. Consequently, the audit is entitled to a presumption of correctness. Petitioners, therefore, bear the burden of proof to show by a preponderance of the evidence that the audit results are incorrect. 34 Tex. Admin. Code § 1.40(2)(B).

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

Several of the contentions are based on Petitioners' claim that there were sufficient records available for the auditor to perform an audit without relying on HB 11 data and the AP 122 estimating procedures. The audit work papers do not support Petitioners' assertion that records were provided to the auditor. The auditor issued letters (dated October 22, 2009 and July 28, 2010) requesting the records required to conduct the audit, including purchase invoices and sales records but there was no response.[20] The failure to produce records is also referenced in the Notification of Estimation and Sixty-Day Letter issued by the auditor.[21] Moreover, Petitioner during the SOAH contested case hearing did not offer any of the records it claimed it had available.

Petitioners also asserted that the markup percentages used by the auditor exceeded the national averages and those contemplated by AP 122. The auditor used the markup percentage of 124.07% designated in AP 122 for alcohol purchases.[22] AP 122 expressly provides that the average convenience store markup percentage of 124.07% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The same provision applies for tobacco products. The markup percentage of 118.02% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The auditor, instead, used the markup percentage of 118.44% that is reserved for 2006.[23] No explanation was found in the audit work papers or in Staff's pleadings for deviating from this directive. Consequently, the ALJ finds that the auditor erred and recommends that the correct markup percentage of 118.02% should be used in marking up the tobacco purchases to calculate estimated tobacco sales. The application of the correct markup percentage will have only a minor effect on the calculation of the estimated tobacco sales. The adjusted estimated tobacco sales total $100,550.67 versus the $100,908.51 resulting from the markup of 118.44%. The ALJ calculated that the application of

---

[20] Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibits II and III.

[21] Staff's Exhibit 1 (Petitioner SI), Sixty-Day Letter and Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibit I.

[22] Staff's Exhibit 4 (Petitioner SI), Exam 20B.

[23] *Id.*

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

the correct markup percentage for tobacco products would reduce the assessment of tax from $64,336.90 to approximately $64,305.00.

Next Petitioners assert that the audit assessment should be disregarded because it is based on invalid estimating procedures. Petitioners rely on the appellate court's recent decision in *Sanadco, Inc.,* 2013 Tex. App. LEXIS 12013. However, any precedential value placed on the decision is premature, as the decision has not become final. Appellee has filed motions for *en banc* reconsideration and for rehearing. The court has yet to rule on the motions. The appellate court's decision becomes final when the court's plenary power expires. *See Oscar Renda Contracting, Inc. v. H&S Supply Co., Inc.,* 195 S.W. 3d 772 (Tex. App. – Waco 2006, pet. denied). And the court will lose plenary power thirty days after the court overrules the motion for rehearing and *en banc* reconsideration. Tex. Rule App. P. 19.1(b).

Petitioners also contend that the subject audit should be restricted to the report periods that fall outside of the BART exam period of January 1, 2008 through March 31, 2009. Thus, according to Petitioners, the audit assessment should be restricted to the report periods February 1, 2007 through December 31, 2007, and April 1, 2009 through June 30, 2009. Petitioners, in effect, are arguing that Staff is estopped from rearguing the liability due during the period previously examined by BART. However, a party seeking to assert the bar of collateral estoppel must establish that: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs. v. Trapnell,* 890 S.W. 2d 796, 801-802 (Tex. 1994), *citations omitted;* and *Also see* Comptroller's Decision No. 100,190 (2012).

The BART exam of Petitioner SI's convenience store differs in several significant ways from the subsequent sales and use tax audit of the same convenience store. As the BART exam focused exclusively on Petitioner SI's alcohol and tobacco sales and purchases, no product-mix

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

percentage was applied. However, a product-mix percentage was needed when Petitioner SI was subsequently audited for sales of other products such as candy, soft drinks, food and general merchandise. In addition Petitioner SI was afforded a 5% allowance for spoilage and theft in the sales and use tax audit. The same facts were not essential to the judgment in each contested tax case. Thus, the Comptroller was not estopped by the results of the BART exam from subsequently performing a sales and use tax audit of the same taxpayer, especially since the taxable sales determined in the BART exam were deleted from the calculation of additional taxable sales in the sales and use tax audit. *See* Comptroller's Decision Nos. 107,579 (2013) and 104,445 and 105,726 (2012).

The Comptroller is authorized to assess an additional 50% penalty under Tex. Tax Code § 111.061(b) if she determines that a taxpayer committed fraud or had the intent to evade tax. Staff has the burden of establishing by clear and convincing evidence that the fraud penalty applies. *See* 34 Tex. Admin. Code § 1.40(1)(B). Clear and convincing evidence is proof that will produce a firm belief or conviction as to the truth of the allegations sought to be established, but which need not be unequivocal or undisputed. *See* Comptroller's Decision No. 37,946 (2000); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979), on remand, 435 U.S. 967. *See also, Webb v. Commissioner of Internal Revenue*, 394 F.2d 366 (1968) (fraud with the intent to evade tax requires actual, intentional wrongdoing with a specific purpose to evade).

As noted above, the overall error rate for the audit period is 66.45%. The revised overall error rate decreased, almost unperceptively, to 66.44% once the error rate is recalculated using the assessed tax amount of $64,305.[24] In prior Comptroller decisions gross underreporting of taxable sales, defined as an error of 25% or greater, has been found sufficiently indicative of intent to evade the tax to warrant assessment of the fraud penalty, particularly when there were

---

[24] The recalculated formula is assessed tax ($64,305) ÷ sum of the assessed tax and reported tax ($96,790.61).

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

other factors or no plausible explanation. *See, e.g.,* Comptroller's Decision No. 43,248 (2004). Also see Tex. Tax Code § 111.205(b).

Such gross underreporting, however, is not in and of itself sufficient to justify imposition of the fraud penalty on corporate taxpayers. In the case of corporate taxpayers, the Comptroller recognizes that a corporation is a separate legal entity that is controlled by its officers and directors and that the requisite intent of a corporation is determined from the actions of the officers or directors. When an officer is proven to have been directly involved in the fraudulent activities, the additional penalty against a corporation has been upheld, because a corporate officer's fraudulent actions can be attributed to the corporation. *See* Comptroller's Decision Nos. 105,418 & 104,471 (2011), 44,891 (2005) and 44,528 (2005). The question is to what degree Petitioner Isba, the company's president, was aware or should have been aware of the underreporting of tax. *See* e. g., Comptroller's Decision No. 103,204 and 104,238 (2012).

The only substantive evidence in the record directly establishing the extent of Petitioner Isba's involvement in the operation and management of the convenience store, in the preparation and filing of the sales and use tax returns, and remittance of the tax payments during the audit period is found in the answers propounded to Staff's discovery. There also are the five checks remitting payment signed by Petitioner Isba that were proffered by Staff.[25] The ALJ, based solely on the statements made in response to Staff's discovery, finds that Petitioner Isba purchased and paid for the taxable inventory, made the daily deposits, and received the bank statements, signed the sales tax returns, and paid the sales and use taxes. The ALJ, therefore, concludes that Petitioner Isba was involved in, aware of, or should have been aware of the underreporting of sales tax. However, the same information that supports this conclusion expressly limits Petitioner Isba's involvement to the period preceding May 1, 2008, when he entered into an agreement to sell the business and one of the buyers assumed responsibility for performing these tasks. Staff has not addressed or refuted any part of Petitioner SI's responses to

---

[25] Staff's Exhibit 4 (Petitioner Isba).

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

its discovery requests, including the statements limiting Petitioner Isba's involvement to the report periods preceding May 1, 2008.

The ALJ concludes that the record is sufficient to establish, by clear and convincing evidence, fraudulent actions on the part of Petitioner Isba that are attributable to the company, but only for the period February 1, 2007, through April 30, 2008. The ALJ therefore recommends that the additional 50% fraud penalty should be dismissed for the period May 1, 2008 through the end of the audit period.

Petitioners also argue that the imposition of additional penalties for jeopardy determination are unconstitutional vague. The ALJ lacks the jurisdiction to consider Petitioner's contention regarding the constitutionality of the jeopardy determination statute. The courts have ruled that the Comptroller lacks jurisdiction to rule on the constitutionality of a statute that she administers. See Tex. State Bd. Of Pharmacy v. Walgreen Texas Co., 520 S.W.2d 845 (Tex. App.--Austin 1975, writ ref'd n.r.e.) Also see Comptroller's Decision No. 105,821 (2013).

2. SOAH Docket No. 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.26 (Petitioner Isba)

Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty if applicable, and interest that are due from the corporation. Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code § 111.0611(b)(1) and (3).

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

The same facts that the ALJ relied on in recommending imposition of the additional 50% penalty support upholding the assessment of personal liability. First, there was an overall gross underreporting of the tax, which resulted, even after taking into account the adjustment recommended by the ALJ, in an error rate of 66.45%. Moreover, the record establishes that Petitioner Isba was involved in the operation and management of the store and in the signing of the sales and use tax returns and remittance of the tax payments. He ordered and paid for the taxable inventory, deposited the store's receipts, received the bank statements, and signed both the sales tax returns and the checks remitting payments to the Comptroller. However, the evidence establishes this involvement by clear and convincing evidence only for the period February 1, 2007 through, April 30, 2008. This record is sufficient to affirm the personal liability assessment for that period, and the ALJ recommends that the personal liability assessment should be dismissed for the period May 1, 2008, through June 30, 2009.

### 3. Recommendations

The ALJ recommends that the audit assessment against Petitioner SI should be affirmed, but subject to the recommended adjustments correcting the calculation of estimated tobacco sales and limiting the additional penalty to the period February 1, 2007 through April 30, 2008. In the case of the personal liability assessment against Petitioner Isba, the ALJ recommends that the assessment should be affirmed subject to the recommended adjustment in the underlying corporate assessment and recommended dismissal of the personal liability assessment for the period May 1, 2008 through June 30, 2009.

## III. FINDINGS OF FACT

1. Sanadco, Inc. (Petitioner SI) operated a convenience store in Fort Worth, Texas during the audit period February 1, 2007 through June 30, 2009.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

2.  Petitioner SI was subjected to a desk audit performed by the Business Activity Research Team (BART) of the Texas Comptroller of Public Accounts (Comptroller) for the exam period of January 1, 2008 through March 31, 2009 and assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest.

3.  The BART exam was prompted by a comparison of Petitioner SI's alcohol and tobacco purchases for the exam period reported by Petitioner SI's tobacco and alcohol vendors under HB 11.

4.  Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. HB 11, 80th Leg., R.S., 2007. The vendor records are commonly referred to as HB 11 records.

5.  The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo 122 (AP 122) in estimating the assessment.

6.  Petitioner SI did not file a request for redetermination contesting the assessment, consequently, the assessment became final and the sales and use tax delinquency was certified to the Attorney General. The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioners SI and Isba. *See Sanadco, Inc. v. Comptroller*, No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App. – Austin September 26, 2013).

7.  Petitioners filed various counterclaims against the State. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction, which decision Petitioners appealed. The Appeals Court sustained Petitioners' claim that the Comptroller's directives in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that Audit Division Policy Memoranda (AP) 92 and 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. *See Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013.

8.  Petitioner SI was audited by the Comptroller for sales and use tax compliance for the audit period, and the auditor estimated the audit due to incomplete records.

9.  Petitioner SI did not respond to the auditor's requests for records. The auditor issued a Notification of Estimation Procedures for State Tax Audit (Notification of Estimation)

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.

10. When the auditor initiated the audit fieldwork Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.

11. The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008 through June 30, 2009. The total alcohol and tobacco purchases were marked up by their respective markup percentages.

12. The standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales, because no purchase records were available.

13. The auditor afforded a 5% allowance for spoilage and theft to determine net estimated taxable sales. Credit was given for reported taxable sales.

14. The resulting adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008 through March 31, 2009.to arrive at the additional taxable sales.

15. The additional taxable sales were multiplied by the applicable tax rates to determine the tax due for the report periods from January 1, 2008 through June 30 2009.

16. As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for this period by first determining the average monthly net estimated taxable sales for the report periods January 1, 2008 through June 30, 2009. The post-December 31, 2007 total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.

17. The additional taxable sales for the pre-January 1, 2008 report periods were calculated by reducing the average monthly net estimated taxable sales by the taxable sales reported to the Comptroller.

18. A 5% allowance for spoilage and theft was applied to determine the additional taxable sales.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

19. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for pre-January 1, 2008 part of the audit period.

20. Petitioner Isba was the president of Petitioner SI.

21. Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.

22. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007 through April 30, 2008.

23. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007 through April 30, 2008.

24. Petitioner Isba was responsible for ordering the store's inventory from February 27, 2007 through April 30, 2008.

25. Petitioner Isba was responsible for payment of the store's inventory purchases from February 27, 2007 through April 30, 2008.

26. Petitioner Isba was the person who received the monthly bank statements from February 27, 2007 through April 30, 2008.

27. Petitioner Isba's responsibility for these tasks ended on May 1, 2008, when he entered into an agreement to sell the company to his employees Yassien Siam and Sandra Salazar.

28. Mr. Siam assumed responsibility for these tasks from May 1, 2008 until the end of the audit period.

29. On April 1, 2011, the Comptroller issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax.

30. Petitioner SI timely requested redetermination.

31. The Comptroller also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007 through June 30, 2009.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

SOAH DOCKET NOS. 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.26       PROPOSAL FOR DECISION          PAGE 19
& 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.26.26
TCPA DOCKET NOS 106,815 & 107,006

32.   The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax.

33.   Comptroller Staff (Staff) referred the cases to the State Office of Administrative Hearings for oral hearings. Staff issued Notices of Hearing that contained a statement of the date, time, and place of the hearings, a statement of the nature of the hearings; a statement of the legal authority and jurisdiction under which the hearings were to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted.

34.   The Administrative Law Judge (ALJ) ordered the cases joined.

35.   The ALJ convened the hearing on August 12, 2013

36.   The ALJ ordered the record closed on November 12, 2013.

37.   The correct markup percentage that the auditor should have applied to the tobacco purchases was 118.02%, which AP 122 directs should be used for years following 2007.

38.   Applying the corrected markup percentage to the tobacco purchases produced estimated tobacco sales of $100,550.67 (versus the $100,908.51 resulting from a markup of 118.44%).

39.   The application of the corrected markup percentage to tobacco purchases reduced the assessment of tax from $64,336.90 to approximately $64,305.

40.   The original overall error rate for Petitioner SI's audit was 66.45%.

41.   The ALJ has recalculated the error rate using the reduced principal amount of tax due. The recalculated audit error rate is 66.44%, which was calculated by dividing the tax assessed ($64,305) by the sum of the assessed tax and reported tax ($96,790.61).

## IV. CONCLUSIONS OF LAW

1.   The Comptroller has jurisdiction over this matter pursuant to Texas Tax Code ch. 111.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

2. The State Office of Administrative Hearings has jurisdiction over matters related to the hearing in this matter, including the authority to issue a proposal for decision with findings of fact and conclusions of law pursuant to Texas Government Code ch. 2003.

3. The Comptroller provided proper and timely notice of the hearing pursuant to Texas Government Code ch. 2001.

4. The Comptroller is authorized to use the best information available to estimate a taxpayer's liability when records are incomplete or unreliable. Tex. Tax Code § 111.0042(d) and 34 Tex. Admin Code § 3.281(c).

5. Petitioner SI must show by a preponderance of the evidence that the audit was in error. 34 Tex. Admin. Code § 1.40(2)(B).

6. The audit of SI was performed based on the best information available.

7. The auditor erred in not using the correct percentage of 118.02% in marking up the tobacco purchases in order to estimate tobacco sales. *See* Audit Division Policy Memorandum 122.

8. The calculation of additional taxable sales should be adjusted by using the correct markup percentage of 118.02% in marking up tobacco purchases.

9. The Comptroller is authorized to impose an additional 50% penalty if the failure to pay tax or file a report when due was a result of fraud or an intent to evade the tax. Tex. Tax Code § 111.061(b).

10. Staff bears the burden of proof to show by clear and convincing evidence that Petitioner SI acted with intent to evade tax. 34 Tex. Admin. Code § 1.40(1)(B).

11. Petitioner SI had the intent to evade tax required by Tex. Tax Code § 111.061(b)(1), but only for the report periods February 1, 2007 through April 30, 2008.

12. The record establishes by clear and convincing evidence that the gross underreporting of tax was due to the intent to evade tax and that the imposition of the additional 50% penalty was warranted, but only for the report periods February 1, 2007 through April 30, 2008. Tex. Tax Code § 111.061(b)(1).

13. The additional 50% penalty should be deleted for the report periods May 1, 2008 through June 30, 2009.

CONFIDENTIAL
Pursuant to
Tex. Gov't Code § 2003.104

14.   The assessment against Petitioner SI should be affirmed except for the adjustments recommended in Conclusions of Law Nos. 8 and 13.

15.   Texas Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty if applicable, and interest that are due from the corporation. Tex. Tax Code §111.061(a).

16.   Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code § 111.0611(b)(1) and (3).

17.   Staff established that Petitioner Isba was personally liable under Texas Tax Code § 111.0611 for the assessment made against Petitioner SI, but only for the report periods May 1, 2007 through April 30, 2008.

18.   The personal liability assessment against Petitioner Isba for report periods May 1, 2008 through June 30, 2009 should be deleted.

19.   The assessment against Petitioner Isba should be upheld, subject to the deletion recommended in Conclusion of Law No. 19 and to the adjustment to the underling corporate tax assessment against Petitioner SI recommended in Conclusion of Law No. 8.

SIGNED December 12, 2013.

_____
PETER BROOKS
ADMINISTRATIVE LAW JUDGE
STATE OFFICE OF ADMINISTRATIVE HEARINGS

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00462-CV

Sanadco Inc., a Texas Corporation; Mahmoud A. Isba, a/k/a Mahmoud Ahmed Abuisba, a/k/a Mike Isba; Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc. Individually, Appellants

v.

The Office of the Comptroller of Public Accounts of the State of Texas; Susan Combs, Individually and in her Official Capacity as Comptroller of Public Accounts of the State of Texas; and Greg Abbott in his Official Capacity as Attorney General for the State of Texas, Appellees

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GV-10-000902, HONORABLE TIM SULAK, JUDGE PRESIDING

---

## MEMORANDUM OPINION

After the Comptroller of Public Accounts performed an audit on a convenience store owned by Sanadco Inc., the Comptroller and the Attorney General (cumulatively the "Comptroller") filed suit against Sanadco to recover delinquent taxes. In response, Sanadco filed various counterclaims against the Comptroller arguing that the manner in which she calculated the amount of taxes due was under the terms of an unauthorized rule, that many of the actions that she engaged in while conducting her audits were ultra vires, and that the provision of the tax code authorizing audits by sampling and projecting was unconstitutional. After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction contending that the district court did

EXHIBIT H

not have jurisdiction over the counterclaims. Subsequent to reviewing the plea and convening a hearing, the district court dismissed Sanadco's counterclaims for lack of jurisdiction. On appeal, Sanadco challenges the dismissal of its counterclaims, and we will reverse the portion of the district court's order dismissing Sanadco's rule challenge, affirm the remainder of the district court's order dismissing Sanadco's other counterclaims, and remand the case for further proceedings.

## RELEVANT STATUTORY SCHEME AND AUDITING MEMOS

Before delving into the background and issues in this case, a brief overview of the governing framework for this case as well as a brief synopsis of the actions by the Comptroller that form the subject of this case is helpful. Under the tax code, convenience stores are required to maintain their sales records for tax purposes, Tex. Tax Code § 151.025, and the Comptroller is authorized to examine and audit the records of convenience-store owners, *id.* §§ 151.025, 111.004. In addition, the Comptroller may use sampling and projection methods for estimating the amount of taxes owed if "the taxpayer's records are inadequate or insufficient." *Id.* § 111.0042(b). Moreover, if the Comptroller "is not satisfied" with the calculated tax owed based on the taxpayer's records, the Comptroller may determine the amount of tax owed from "other information available to the comptroller." *Id.* § 111.008(a).

In addition to requiring convenience stores to maintain sales records, the tax code also requires brewers, manufacturers, wholesalers, and distributors of alcoholic beverages to file reports chronicling their sales to stores and listing the stores by name. *Id.* §§ 151.461-.462. Similarly, the tax code authorizes the Comptroller to request wholesalers and distributors of tobacco products to file the same type of reports. *Id.* §§ 154 (addressing cigarette sales), 155.105 (covering non-cigarette

2

tobacco products). The type of information required in these reports is commonly referred to as H.B. 11 information because the reporting requirements were enacted by House Bill 11 of the 80th legislature. *See* Act of May 3, 2007, 80th. Leg., R.S., ch. 129, §§ 1-3, 2007 Tex. Gen. Laws 159, 159-62.

Once an audit has been performed, the store owner may request a redetermination from the Comptroller within 30 days of receiving notice of the Comptroller's assessment. Tex. Tax Code § 111.009(a), (b). In addition, the owner may also request a hearing on the redetermination, *id.* § 111.009(c), before the State Office of Administrative Hearings, *id.* § 111.00455. If no request for a redetermination is filed within 30 days, "the determination is final on the expiration of the period." *Id.* § 111.009(b). As an alternative to requesting a redetermination, an individual may also pay the assessed taxes along with a written protest and then file a suit challenging the tax. *Id.* §§ 112.051(a), (b), .052.

Prior to the passage of House Bill 11, the Comptroller issued a memo entitled AP 92, which provided guidance to auditors performing audits of convenience stores. In the memo, the Comptroller explained that there had been a "lack of uniformity in estimated convenience store audits" and that "mark-up percentages and product mix percentages" were developed to be used in audits "when necessitated by lack of reliable records" or if a store's "records are unavailable, inadequate or unreliable." After House Bill 11 passed, the Comptroller issued another memo to audit personnel entitled AP 122. The new memo updated AP 92 and required auditors to use H.B. 11 information "to produce the most accurate audit results." The issuance of these two memos along with various actions taken by the Comptroller when performing convenience-store audits form the basis for this case.

3

## BACKGROUND

Turning to the facts of this case, Sanadco owns a convenience store, and Mahmoud Isba operates the store and is designated as a responsible person for Sanadco. The Comptroller audited Sanadco and determined that Sanadco had underreported its taxable sales for alcohol and tobacco products. The amount of the deficit was determined using H.B. 11 data. After making her determination, the Comptroller sent a bill for the estimated amount owed and for interest on that amount as well as a penalty.

After receiving notice of the amount due, Sanadco did not file an administrative challenge to the assessment, nor did it pay the amount due. Accordingly, the Attorney General filed suit to collect the delinquent taxes. In response, Sanadco filed an answer and raised several counterclaims for declaratory relief. Those counterclaims were made against the Office of the Comptroller, Susan Combs in her official capacity as Comptroller, and Greg Abbott in his official capacity as the Attorney General. In its response, Sanadco also named as counter-plaintiffs other individuals and companies who had been assessed similar taxes. Those other individuals and companies are Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc.[1] Unlike Sanadco, the other named counter-plaintiffs all sought redeterminations of their assessed taxes through administrative review, but none of the administrative proceedings had been completed by the time that the individuals were added to the lawsuit.

---

[1] For ease of reading, we will generally refer to all of the counter-plaintiffs as Sanadco.

4

Regarding its counterclaims, Sanadco alleged six complaints relevant to this appeal. In its first counterclaim, Sanadco asserted that AP 92 and AP 122 are administrative rules but that they were not promulgated in compliance with the requirements of the administrative procedure act. Accordingly, Sanadco sought a declaration that those memos are invalid administrative rules. In its second counterclaim, Sanadco alleged that the Comptroller engaged in ultra vires actions when she issued AP 92 and AP 122 and thereby authorized auditors to estimate taxes owed by convenience-store owners without "first ascertaining whether adequate records are available" from the taxpayer to perform an audit. For those reasons, Sanadco sought declarations asserting that "the Comptroller is not authorized to estimate convenience store audits using the methods described in AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority." In its third counterclaim, Sanadco contended that the Comptroller acted without legal authority when she improperly instructed auditors to use H.B. 11 information for convenience store audits "without first ascertaining whether the determination can be made from the taxpayer's records." Accordingly, Sanadco insisted that the Comptroller's decision to require the use of H.B. 11 data is an ultra vires act and, therefore, sought declarations that the use of H.B. 11 information was improper and that the governing statutes do not allow "the Comptroller to give conclusive effect to the HB11 data."[2] In its fourth counterclaim, Sanadco alleged that the Comptroller improperly authorized auditors to "use an abbreviated procedure which bypassed

---

[2] In this counterclaim, Sanadco also sought a declaration that the Comptroller's decision to require the use of H.B. 11 information constituted an impermissible and invalid rule. Because that declaratory relief would seem to parallel the assertions made in Sanadco's first counterclaim, our analysis regarding the first counterclaim is intended to address the declaration regarding H.B. 11 as well.

examination of the taxpayer's records and authorized an estimation of his tax liability based solely on the invalid H.B. 11 data, without first determining the adequacy of the taxpayer's records." For that reason, Sanadco insisted that the Comptroller was acting ultra vires and sought a declaration that the governing tax code provisions do not authorize the abbreviated procedure. In its fifth counterclaim, Sanadco alleged that the Comptroller acted ultra vires by authorizing the imposition of a 50% penalty without proof of fraud or of an intent to avoid the tax as required by the tax code. *See* Tex. Tax Code § 111.061(b). In its sixth counterclaim, Sanadco sought a declaration that the provision of the tax code authorizing sample and projection audits for estimating taxes owed is unconstitutionally vague and is, "by its nature, a denial of substantive and procedural due process." *See id.* § 111.0042.

After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction. In her plea and brief in support of the plea, the Comptroller argued that the district court did not have jurisdiction over Sanadco's counterclaims because Sanadco did not allege a proper rule challenge, because the claims are barred by sovereign immunity, because Sanadco and the other named counter-plaintiffs failed to exhaust their administrative remedies before filing suit, because some of the counterclaims were not ripe for review, and because Sanadco and the other counter-plaintiffs did not have standing to challenge the allegedly unconstitutional tax statute.

After reviewing the pleadings, the plea, and Sanadco's response to the plea, the district court signed an order granting the Comptroller's plea.[3] On appeal, Sanadco contests the

---

[3] In addition to the six counterclaims mentioned above, Sanadco also alleged the following additional counterclaims: (1) that the Comptroller engaged in an unconstitutional taking when she improperly collected sales and use taxes, and (2) that the tax code provision authorizing the Comptroller to impose a ten percent penalty if she believes that "the amount due for a tax period is jeopardized by delay" is unconstitutional.

6

district court's order granting the Comptroller's plea and, in six issues, challenges the district court's dismissal of its six counterclaims.[4]

## STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A party to a lawsuit may challenge a trial court's subject-matter

---

The responsive filing containing the Comptroller's plea to the jurisdiction also served as a motion for summary judgment. In the plea portion of the filing, the Comptroller sought dismissal of the six counterclaims discussed in the body of the opinion but did not discuss the two additional counterclaims. In the summary-judgment portion, the Comptroller sought judgment in her favor regarding the two additional counterclaims as well as some of the other counterclaims. In a separate order, the district court granted the motion for summary judgment.

In two issues on appeal, Sanadco argues that the district court erred by dismissing the two additional counterclaims listed above. However, those additional claims were disposed of by summary judgment. The legislature has empowered appellate review of a trial court's interlocutory order granting a plea to the jurisdiction by a governmental unit, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a), but has not empowered us with authority over interlocutory orders granting a governmental unit's motion for summary judgment. Accordingly, in this appeal, we only address the six counterclaims listed in the body of the opinion that were attacked and dismissed on jurisdictional grounds.

[4] In its counterclaims, Sanadco filed suit against the Comptroller in her individual capacity and sought to initiate a class action on behalf of individuals who had similarly been assessed taxes. In her plea to the jurisdiction and brief in support of the plea, the Comptroller sought dismissal of Sanadco's claims against her in her individual capacity on the ground that Sanadco had failed to "plead any facts that would expose [her] to individual liability" and because the pleadings demonstrate that Sanadco "*cannot* plead any facts that would give rise to such liability." Similarly, the Comptroller requested that the district court dismiss the class action claims for several reasons, including that none of the convenience-store owners had "satisfied the statutory prerequisite to filing a class action under" the tax code. *See* Tex. Tax Code § 112.055 (allowing for class actions by persons who have paid their taxes under protest). The district court granted the Comptroller's plea in its entirety, and Sanadco does not challenge the dismissal of its claims against the Comptroller in her individual capacity or of its class-action claims. Accordingly, those claims are not considered in this appeal and remain dismissed.

jurisdiction over a case by filing a plea. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). Determinations regarding whether a trial court has jurisdiction over a case are questions of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Subject matter jurisdiction is a question of law that appellate courts review de novo, *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007), and may be raised for the first time in an interlocutory appeal, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-96 (Tex. 2012). Moreover, appellate courts must consider their jurisdiction "even if that consideration is sua sponte." *Freedom Commc'ns., Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (per curiam).

On appeal, we review de novo a trial court's decision to grant a plea to the jurisdiction. *Ferrell*, 248 S.W.3d at 156. In performing this jurisdictional analysis, courts look to the "plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *Holland*, 221 S.W.3d at 642. "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.* at 643. However, if "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227.

## DISCUSSION

As mentioned above, Sanadco challenges the dismissal of its six counterclaims in six separate issues on appeal.

8

**Sanadco's First Issue**

In its first issue on appeal, Sanadco urges that the district court erred by dismissing its counterclaim regarding AP 92 and AP 122. In its counterclaim, Sanadco sought a declaration that the memos are invalid administrative rules. Essentially, Sanadco contends that the memos required the Comptroller's auditors to use certain methods when performing audits of all convenience stores and that the Comptroller used the procedures specified in the memos when performing the audits at issue in this case. In challenging the district court's order, Sanadco insists that the memos constituted administrative rules as defined by the administrative procedure act but that the rules were not adopted in compliance with the act. *See* Tex. Gov't Code §§ 2001.021-.041; *see also id.* § 2001.003(6) (defining "rule"). Accordingly, Sanadco contends that the district court had jurisdiction to consider its challenge to the rules because the administrative procedure act empowers a party to seek a declaration challenging the validity or applicability of a rule, *see id.* § 2001.038, including one not adopted in compliance with the act, *see El Paso Cnty. Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008).

In supporting the district court's dismissal of this counterclaim, the Comptroller contends that the provision of the administrative procedure act authorizing rule challenges does not apply in this case because the memos do not qualify as rules under the act. As support for this proposition, the Comptroller argues that the memos are simply statements regarding the internal management of the agency and do not impose any duties or requirements on convenience-store owners. On the contrary, the Comptroller insists that the memos are designed to improve the accuracy of audits by requiring auditors, not taxpayers, to use certain auditing methods. Furthermore,

9

the Comptroller urges that although the memos may help auditors ascertain whether taxpayers owe money, the taxpayer may challenge the determination. Accordingly, the Comptroller insists that any effect on a taxpayer caused by the implementation of AP 92 and AP 122 would only be binding after an administrative hearing, which she contends supports the conclusion that those memos are not rules.

Because we believe that AP 92 and AP 122 are rules, we must conclude that the district court erred by dismissing Sanadco's first counterclaim. Under the administrative procedure act, a rule is defined as "a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." Tex. Gov't Code § 2001.003(6)(A). For rule determinations, "general applicability" refers to statements affecting the interest of the public and does not refer to statements issued when determining the rights of individuals. *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 721 (Tex. App.—Austin 2009, no pet.). Further, the statutory definition "includes the amendment or repeal of a prior rule" but excludes "a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." Tex. Gov't Code § 2001.003(6)(B)-(C). In determining whether an agency statement is a rule, courts consider "the intent of the agency, the prescriptive nature of the guidelines, and the context in which the statement was made." *Entertainment Publ'ns*, 292 S.W.3d at 722.

AP 92 states that formulas were developed for estimating convenience-store audits to promote uniformity. Essentially, the memo sets out mark-up percentages that were to be used in all cases where "records are unavailable, inadequate or unreliable." Similarly, AP 122 provides guidelines for convenience-store audits and instructs that H.B. 11 information "**must** be the starting point" for all convenience-store audits conducted after the date of the memo.

10

By their language, both memos are statements implementing, interpreting, or prescribing law or policy. *Cf. id.* at 721 (concluding that letters by Comptroller indicating her intention to apply statute in all cases "involving brochure fundraising firms" without regard to individual factors were rules). The directives in the memo apply to audits performed on all convenience-store owners and not just to the named counter-plaintiffs, and the memos, particularly AP 122, reveal the Comptroller's intention to apply particular information and methods when performing all audits of convenience stores in all future cases and regardless of any individual circumstances. *See Trinity Settlement Servs., LLC v. Texas State Sec. Bd.*, No. 03-10-00639-CV, 2013 Tex. App. LEXIS 9487, at *15-16 (Tex. App.—Austin Aug. 1, 2013, no pet. h.) (concluding that agency statement did not qualify as rule because it applied only to particular company and because agency did not express intention to apply statement to all future cases).

Another factor weighing in favor of a determination that the memos are rules is Sanadco's allegation that the Comptroller is in fact generally using directives and formulas in those memos when performing audits on convenience stores and that the Comptroller used the memos during the audits of the convenience stores at issue in this case. In other words, the memos had a tangible effect and were not simply advisory statements. *See Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 770 (Tex. App.—Austin 1999, no pet.) (explaining that letters from Commission setting forth criteria by which licensees could determine if their eight-liner machines were legal were not rules because they were merely informal views bearing upon internal agency management in absence of statute giving letters legal effect or attempt by agency to enforce statement against licensee). Given that the memos had effects on convenience stores at large, we also cannot agree

11

with the Comptroller's assertion that the memos were only statements directed to auditing personnel "regarding only the internal management or organization" of the Comptroller's office. *See* Tex. Gov't Code § 2001.003(6)(C); *cf. Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 555 (Tex. App.—Austin 2008, pet. denied) (determining that staff report concerning inconsistent implementation of rule was not itself rule because report was presented to agency but agency took no official action regarding report and because it simply presented possible correction to stop inconsistency).

Although we need not thoroughly pursue the issue here, we are also persuaded that AP 122 is a rule because that memo requires the use of H.B. 11 information as a primary tool for estimating taxes regardless of the condition of the taxpayer's records. That requirement is noteworthy because it seems like a departure from the provisions of the tax code authorizing estimating techniques when the taxpayer's records are somehow inadequate and when the Comptroller is "not satisfied" with a tax report that has been filed "or the amount of the tax required to be paid." *See* Tex. Tax Code §§ 111.0042, .008; *see also El Paso Cnty. Hosp. Dist.*, 247 S.W.3d at 714 (concluding that agency letter setting cutoff date for seeking reimbursement was rule because it was statement of general applicability, affected all hospitals, and implemented agency policy by modifying pre-existing base-year rule). This type of modification to prior practices and governing frameworks would seem to more properly fall under the category of a rule rather than a statement about an agency's internal organization.

In addition, we are also not persuaded by the Comptroller's assertion that the ability of a taxpayer to challenge an audit performed under the methods described in the memos

12

somehow precludes a conclusion that the memos are rules. Assuming that the ability to challenge a tax assessment could affect whether the audit was performed under the terms of a rule, the assessment would seem to be final and binding upon those individuals who do not contest their assessments. Regardless, formally promulgated rules may contain provisions authorizing administrative challenges without affecting their status as rules, and for that reason, we do not believe that the ability to seek administrative review forecloses a challenge to whether agency directives were enacted under the terms of an improperly promulgated rule.

In reaching our result, we would be remiss if we did not mention that the line that separates rules from statements of "internal management or organization" is a blurry one. *See* Tex. Gov't Code § 2001.003(6); *see Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 546 (Tex. App.—Austin 2011, pet. denied) (describing distinction as "elusive"). Although the legislature has attempted to distinguish the two through legislation, making the distinction is often not an easy task, particularly given the varied functions that agencies are charged with undertaking. In discussing the difficulty in making these determinations, this Court has explained that the core concept to consider is whether the agency statement has "a binding effect on private parties." *Slay*, 351 S.W.3d at 546; *see also id.* at 546, 548 (concluding that evidence supported trial court's determination that agency statement was not rule because there was evidence that agency commissioners "were not *bound* to follow [statement's] methodology when exercising their legislatively conferred discretion to impose penalties"). Although this is an extremely close case, we believe that the record as it has been developed at this stage of the lawsuit compels a conclusion that the memos at issue have sufficient effect on private parties to render them rules.

13

In light of the preceding, we conclude that the directives in AP 92 and AP 122 are in fact rules. For that reason, we must also conclude that the district court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the district court erred by dismissing Sanadco's first counterclaim. Accordingly, we sustain Sanadco's first issue on appeal.

**Sanadco's Second, Third, Fourth, and Fifth Issues**

In its second, third, and fourth issues, Sanadco challenges the dismissal of its requested declaratory relief regarding actions taken by the Comptroller that it contends are ultra vires acts. Specifically, Sanadco urges that the following actions by the Comptroller are not supported by any governing law: the Comptroller's decision to require auditors to estimate taxes owed by using the methods described in AP 92 and AP 122 and to authorize her auditors to use H.B. 11 information to conduct abbreviated tax audits. In asserting that these actions are ultra vires, Sanadco points to section 111.0042 of the tax code, which allows auditors to use sampling auditing methods when a taxpayer's records are unsatisfactory. *See* Tex. Tax Code § 111.0042. Similarly, Sanadco refers to a rule in the administrative code that authorizes the Comptroller to use "a sample and projection auditing method to determine tax liability" when a taxpayer's records are unsatisfactory. *See* 34 Tex. Admin. Code § 3.282(c), (d). In light of the statutory provision and the rule, Sanadco insists that the Comptroller's decision to perform the audits in the manner described is contrary to the governing law. In its fifth issue, Sanadco challenges the dismissal of his declaratory claim alleging that the Comptroller acted ultra vires by authorizing a 50% penalty for fraud. Specifically, Sanadco insists that although subsection 111.061(b) of the tax code authorizes the Comptroller to impose penalties, the provision limits its imposition to circumstances in which it is determined that a failure

14

to pay the tax "due was a result of fraud or an intent to evade the tax" or that the taxpayer engaged in fraudulent conduct to affect the "outcome of an audit." *See* Tex. Tax Code § 111.061(b). Relying on that statute, Sanadco insists that the Comptroller did not make the requisite determinations before imposing the fraud penalty on convenience-store owners.

Furthermore, Sanadco contends that even though none of the named counter-plaintiffs had fully exhausted their administrative remedies regarding the Comptroller's tax assessments, the district court still had jurisdiction to consider these declaratory complaints because parties are not required to exhaust their administrative remedies for properly pleaded ultra-vires claims. Accordingly, Sanadco insists that the district court had jurisdiction over its declaratory claims requesting the Comptroller to comply with the governing statutes and rules.

Generally speaking, a party must exhaust all of its administrative remedies before seeking judicial review of an agency determination. *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 525 (Tex. App.—Austin 2002, pet. denied); *cf. Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (explaining that Comptroller has exclusive jurisdiction to resolve tax refunds and that party must exhaust such remedy before filing refund suit); *cf.* Tex. Gov't Code § 2001.171(empowering person who has exhausted his administrative remedies and who is aggrieved by final agency decision to seek judicial review). Exhaustion of administrative remedies is necessary in order to waive sovereign immunity, which otherwise typically forecloses suits against government officials. *See Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 869 (Tex. App.—Austin 2013, pet. filed). In its brief, Sanadco correctly points out that the supreme court has recognized an exception to the

general rule for claims alleging that government officials have engaged in ultra vires acts. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73, 380 (Tex. 2009) (explaining that with one exception, "governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers" and that suits filed against government officials seeking "to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity"); *Appraisal Review Bd. of Harris Cnty. v. O'Connor & Assocs.*, 267 S.W.3d 413, 418-19 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (outlining exception to exhaustion requirement for ultra vires claims and stating that generally courts may only interfere with duties of agency when officials exceed statutorily conferred powers even though administrative remedies have not been exhausted).

However, we do not believe that the exception applies to Sanadco's claims. In order to fall within the exception, a party must allege that the official "acted wholly outside [his] jurisdiction," and allegations that an agency official failed to fully comply "with all of the intricacies" of the governing statutes and rules are insufficient to confer jurisdiction. *Friends of Canyon Lake*, 96 S.W.3d at 528; *see O'Connor & Assocs.*, 267 S.W.3d at 419. As a preliminary matter, we note that the H.B. 11 information that the Comptroller used for calculating the audits was information that the legislature required wholesalers to provide regarding their sales of alcohol and tobacco products to convenience-store owners. *See* Tex. Tax Code §§ 151.462, 154.212. Moreover, the bill analysis for H.B. 11 reveals that the law was enacted because of "growing concern over fraud among convenience store owners in the area of sales tax reporting" and that the legislature

16

was requiring the information in order to help the Comptroller perform her audits of convenience stores. Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 11, 80th Leg., R.S. (2007).

In addition, the legislature has specifically empowered the Comptroller to perform tax audits of convenience stores. *See* Tex. Tax Code §§ 111.001 (empowering Comptroller to collect sales taxes), .004-.0041 (authorizing Comptroller to examine records of taxpayers). Importantly, the legislature has also allowed the Comptroller to estimate the amount of taxes due in certain circumstances. *See id.* §§ 111.0042 (allowing Comptroller to use sampling auditing techniques if certain conditions are met), .008 (authorizing Comptroller to use other information if she is dissatisfied with tax report). Moreover, the tax code directs the Comptroller to impose a penalty of 50% of the taxes due if the Comptroller concludes that a taxpayer's failure to pay was the "result of fraud or an intent to evade the tax." *Id.* § 111.061(b).

Although Sanadco may disagree with the manner in which the Comptroller is performing her duties and her decision to use legislatively prescribed information for estimating the amount owed in her audits, we cannot agree that Sanadco has alleged complaints about actions wholly outside of the Comptroller's authority. Allegations that the Comptroller is not complying completely with every statutory requirement when performing the duties that she is authorized to perform are not sufficient to invoke the ultra-vires exception. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 517-18 (Tex. App.—Austin 2010, no pet.) (determining that allegations that agency reached incorrect result when exercising its delegated authority does not constitute ultra-vires claims); *O'Connor & Assocs.*, 267 S.W.3d at 419 (explaining that assertions that agency hearings did not fully comply with statutory procedural requirements

17

were not enough to invoke ultra-vires exception); *Friends of Canyon Lake, Inc.*, 96 S.W.3d at 528 (concluding that arguments that agency did not provide required notice and information during application process were insufficient to invoke exception); *cf. Texas Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (relating that claim that agency had authority to interpret statute but had interpreted provision incorrectly was insufficient to invoke ultra-vires exception because possibility that agency might interpret provision incorrectly does not destroy agency's ability to make that determination).

In light of the fact that Sanadco's petition failed to demonstrate that the named counter-plaintiffs had failed to exhaust their administrative remedies and in light of our determination that Sanadco's allegations did not properly invoke the ultra-vires exception to the exhaustion requirement, we must conclude that Sanadco's petition did not invoke the jurisdiction of the district court to consider its requested declaratory relief. For these reasons, we cannot conclude that the district court erred by dismissing Sanadco's requested declaratory relief, and therefore, we overrule Sanadco's second, third, fourth, and fifth issues on appeal. *See Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 515 (noting that party does not avoid jurisdictional limitation by filing claim under uniform declaratory judgment act and that act is not general waiver of immunity).[5]

---

[5] On appeal, Sanadco contends that exhaustion of administrative remedies was not warranted in this case because its claims presented pure questions of law and were based on uncontested facts. Assuming without deciding that Sanadco invokes a viable exception to the exhaustion-of-remedies doctrine, we disagree with Sanadco's assertion that the relief that it sought only involved pure questions of law. In addition to seeking declarations regarding whether certain procedures by the Comptroller complied with relevant governing law, Sanadco also sought in its counterclaims to have the counter-plaintiffs be relieved of the obligation to pay their respective taxes, to recover compensatory damages from the Comptroller as well as interest and attorney's fees, and to obtain a judgment directing the Comptroller "to account . . . for all of the damages caused to" the

18

**Sanadco's Sixth Issue**

In its final issue on appeal, Sanadco asserts that the district court erred by dismissing on jurisdictional grounds the counterclaim that section 111.0042 of the tax code is unconstitutional. That provision authorizes the Comptroller to use sampling auditing methods if certain criteria are met. Tex. Tax Code § 111.0042. In its sixth counterclaim, Sanadco sought a declaration that the provision is unconstitutionally vague as written and as applied to the counter-plaintiffs.

In order for a trial court to have jurisdiction over a declaratory-judgment claim, a party must allege "a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). If there is no case or controversy, then any declaration issued by a trial court would constitute an impermissible advisory opinion. *Brooks*, 141 S.W.3d at 164.

Although Sanadco urges the statute's unconstitutionality, neither his filing containing the counterclaim nor his appellate briefs contain any allegation regarding a dispute between the Comptroller and the named counter-plaintiffs involving the statute in question. In particular, Sanadco does not assert that the Comptroller used or threatened to use the sampling methods authorized in

counter-plaintiffs. *Cf. Harris Cnty. Appraisal Dist. v. ETC Mktg.*, 399 S.W.3d 364, 368 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (disagreeing with assertions that claims were just questions of law and that exhaustion requirement did not need to be met because party was seeking to have its tax assessments set aside and could not, therefore, be pursuing pure question of law).

the provision when performing the audits for any of the counter-plaintiffs. To the contrary, Sanadco's filings in the district court and in his appellate briefs all allege that the Comptroller improperly used H.B. 11 information when performing audits. Accordingly, Sanadco did not plead any conflict regarding the statute, and there was no justiciable controversy between the named counter-plaintiffs and the Comptroller. For that reason, we cannot conclude that the district court erred by dismissing its requested declaratory relief, and therefore, we overrule Sanadco's sixth issue on appeal.

## CONCLUSION

Having overruled Sanadco's second, third, fourth, fifth, and sixth issues, we affirm the portion of the district court's order dismissing on jurisdictional grounds the following declaratory counterclaims urged by Sanadco: that the Comptroller acted ultra vires by implementing AP 92 and AP 122, that the Comptroller acted ultra vires by requiring the use of H.B. 11 information during audits of convenience stores, that the Comptroller acted ultra vires by authorizing abbreviated audits and by giving preclusive effect to H.B. 11 information during those audits, that the Comptroller acted ultra vires by authorizing the imposition of a fraud penalty without requiring a determination that all the statutory criteria had been met, and that section 111.0042 is unconstitutional. Having sustained Sanadco's first issue on appeal, we reverse that portion of the district court's order dismissing the counterclaim asserting that AP 92 and AP 122 were improperly promulgated rules. Accordingly, we remand the case for proceedings consistent with this opinion.

20

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
  Justice Henson not participating

Affirmed in Part; Reversed and Remanded in Part

Filed:   September 26, 2013

21



# Amalia Rodriguez–Mendoza

District Clerk, Travis County
Travis County Courthouse Complex
P. O. Box 679003
Austin, Texas 78767

Date: November 3, 2008

TO: All attorneys of record in cases pending in Travis County District Court

NOTICE OF ENTRY OF NEW E-FILE MANDATE ORDER

The 2008 Court Order Regarding E-filing is effective as of November 1, 2008. You can view this order by selecting the link near the top of the following web page:

http://www.co.travis.tx.us/district_clerk/default.asp

If you have not yet established an e-filing account, please refer to Texas Online's eFiling Main Information at:

http://www.texasonline.com/portal/tol/en/info

We are asking that you establish your account as soon as possible, but a grace period through the end of the year has been implemented to allow you adequate time to make e-filing preparations.

If you have any questions regarding the e-filing process or the order's application to any of your pending cases, you may call 512-854-FILE (512-854-3453) for assistance.

Thank you.

Amalia Rodriguez-Mendoza
Travis County District Clerk

Travis County District Clerk's Office
Civil Division

---

| Administrative Offices | Civil and Family Division | Criminal Division | Jury Office |
|---|---|---|---|
| (512) 854-9737 | (512) 854-9457 | (512) 854-9420 | (512) 854-4295 |
| Fax: 854-4744 | Fax: 854-6610 | Fax: 854-4566 | Fax: 854-4457 |

# THE LAWYER REFERRAL SERVICE OF CENTRAL TEXAS

A Non-Profit Corporation

## IF YOU NEED A LAWYER
## AND DON'T KNOW ONE,
## THE LAWYER REFERRAL SERVICE
## CAN HELP

### 512-472-8303
**866-303-8303 (toll free)**
**www.AustinLRS.com**

**Weekdays 8:00 am to 4:30 pm**
**$20.00 for first half hour attorney consultation**
**(free consultations for personal injury, malpractice, worker's compensation,**
**bankruptcy, and social security disability)**

This service is certified as a lawyer referral service as required by the State of Texas
under Chapter 952, Occupations Code. Certificate No. 9303

---

## SI USTED NECESITA EL CONSEJO DE UN
## ABOGADO Y NO CONOCE A NINGUNO
## PUEDE LLAMAR
## A LA REFERENCIA DE ABOGADOS

### 512-472-8303
**866-303-8303 (llame gratis)**
**www.AustinLRS.com**

**Abierto de lunes a viernes de 8:00 am-4:30 pm**
**$20.00 por la primera media hora de consulta con un abogado**
**(la consulta es gratis si se trata de daño personal, negligencia,**
**indemnización al trabajador, bancarrota o por incapacidad del Seguro Social)**

This service is certified as a lawyer referral service as required by the State of Texas
under Chapter 952, Occupations Code. Certificate No. 9303

# Tab D

Letter regarding payment for Reporter's Record
Sanadco II, No. 03-14-00771-CV
Third Court of Appeals.

FILE COPY



# COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
www.txcourts.gov/3rdcoa.aspx
(512) 463-1733

JEFF L. ROSE, CHIEF JUSTICE
DAVID PURYEAR, JUSTICE
BOB PEMBERTON, JUSTICE
MELISSA GOODWIN, JUSTICE
SCOTT K. FIELD, JUSTICE
CINDY OLSON BOURLAND, JUSTICE

JEFFREY D. KYLE, CLERK

February 10, 2015

Mr. Samuel T. Jackson
Law Office of Samuel T. Jackson
P. O. Box 170633
Arlington, TX 76003
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number:    03-14-00771-CV
       Trial Court Case Number:    D-1-GN-13-004352

Style:    Sanadco Inc., a Texas Corporation; Mahmoud Ahmed Isba; Broadway Grocery, Inc.;
          and Shariz, Inc.
          v. Susan Combs, in Her Individual and Official Capacity as Comptroller of Public
          Accounts; Office of Comptroller of Public Accounts for The State Of Texas; and Gregg
          Abbott in His Official Capacity as Attorney General of The State Of Texas

Dear Counsel:

The reporter's record was due in this Court on **December 15, 2014** and is overdue. The Court has been informed by Sheri Linder, the court reporter, that appellant has neither paid, nor made arrangements for payment, for the reporter's record. Accordingly, the reporter's record will not be filed.

If appellant does not notify this Court that payment arrangements have been made for the record, or otherwise respond to this notice on or before **Friday, February 20, 2015**, the Court will consider the appeal without the reporter's record. *See* Tex. R. App. P. 37.3(c). If the appeal is submitted for decision without a reporter's record, appellant will be expected to file a brief on or before **March 12, 2015**.

Very truly yours,

JEFFREY D. KYLE, CLERK

BY: *Amy Strother*

Amy Strother, Deputy Clerk

cc:    Mr. Jack Hohengarten

**Tab E**

Order Denying Plaintiff's Declaratory Judgment and
Application for Temporary Injunction Plaintiffs' Third
Amended Petition for Judicial Review, Declaratory Judgment,
Temporary Injunction and Request for Disclosure
Sanadco II, No. D-1-GN-13-004352
200th Judicial District Court of Travis County, Texas

NO. D-1-GN-13-004352

| | | |
|---|---|---|
| SANADCO INC, A TEXAS CORPORATION AND MAHMOUD AHMED ISBA Plaintiffs, | § § § § § | IN THE DISTRICT COURT OF |
| V. | § § | |
| SUSAN COMBS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS COMPTROLLER OF PUBLIC, ACCOUNTS | § § § § § | TRAVIS COUNTY, TEXAS |
| OFFICE OF COMPTROLLER OF PUBLIC ACCOUNTS FOR THE STATE OF TEXAS, | § § § § | |
| AND GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS Defendants | § § § § § | 200th JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFF'S DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY INJUNCTION

ON October 14th, 2014, this Court heard Mahmoud Ahmed Isba's application for temporary injunction. After considering the pleadings on file, the evidence, and the arguments of counsel, the Court finds that the application is without merit and should be DENIED.

ACCORDINGLY, Mahmoud Ahmed Isba's application for temporary injunction is denied.

SIGNED on the 13 day of Nov. October, 2014.

_____
HONORABLE CHARLES RAMSAY

10-17-14

CAUSE NO. D-1-GN-13-4352

| | | |
|---|---|---|
| SANADCO INC, A TEXAS CORPORATION, | § | IN THE DISTRICT COURT |
| MAHMOUD AHMED ISBA, BROADWAY | § | |
| GROCERY, INC., SHARIZ, INC., AND RUBY & | § | |
| SONS STORE, INC., AND RUBINA NOORANI, | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| VS | § | |
| | § | |
| SUSAN COMBS, IN HER INDIVIDUAL | § | TRAVIS COUNTY, TEXAS |
| AND OFFICIAL CAPACITY | § | |
| AS COMPTROLLER OF PUBLIC ACCOUNTS, | § | |
| | § | |
| OFFICE OF COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS FOR THE STATE OF TEXAS, | § | |
| | § | |
| AND GREGG ABBOTT IN HIS OFFICIAL | § | |
| CAPACITY AS ATTORNEY GENERAL OF | § | |
| THE STATE OF TEXAS | § | |
| *Defendants* | § | 200TH JUDICIAL DISTRICT |

---

**PLAINTIFFS' THIRD AMENDED PETITION FOR JUDICIAL REVIEW,
DECLARATORY JUDGMENT, TEMPORARY INJUNCTION
AND REQUEST FOR DISCLOSURE**

---

COME NOW **SANADCO INC.** and **MAHMOUD AHMED ISBA**, et al, Plaintiffs, who file this Second Amended Petition for Judicial Review, Declaratory Judgment and Temporary Injunction from a pending Comptroller's Decision in a contested case proceeding before the State Office of Administrative Hearings, and joining Plaintiffs **RUBI & SONS STORE, INC.** and **RUBINA NOORANI**, and **Mahmoud A. Isba**, complaining of SUSAN COMBS, in her individual and official capacity as Texas Comptroller of Public Accounts, and GREG ABBOTT, in his official capacity as Texas Attorney General ("Defendants"), and for cause would respectfully show the following:

## I.
## DISCOVERY CONTROL PLAN

1. Plaintiffs designate this case as a Level 2 case requiring a discovery control plan tailored to the circumstances of this particular suit pursuant to Texas Rule of Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2. Pursuant to Texas Rules of Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of service of this request, all of the information or material described in Rule 194.2.

## III.
## PARTIES

3. Sanadco Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 3801 East Rosedale St., Fort Worth, Texas 76105-1732, and whose Taxpayer No. is ███████.

4. Mahmoud A. Isba, Plaintiff, is an individual who resides in Arlington, Tarrant County TX and operates the convenience store owned by Sanadco Inc., located at 3801 East Rosedale St., Fort Worth, Texas 76105-1732, and whose Taxpayer No. is ███████.

5. Broadway Grocery Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 8342 Broadway St., San Antonio, Texas 78209-2009, and whose Taxpayer No. is █ ███████.

6. Shariz, Inc., Plaintiff, is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 14310 Tasmania Ct., Sugarland, TX 77498, and whose Taxpayer No. is ███████.

7. Plaintiffs Rubi & Sons Store, Inc. and Rubina Noorani join this petition on all claims as Petitioners in a suit currently on file with the State Office of

Administrative Hearings who have not yet exhausted their administrative remedies, but an audit has been initiated by the Comptroller of Public Accounts.

8.  Mahmoud A. Isba, Plaintiff, as owner and operator of Nevine Food Store #2, located at 1631 E Vickery Blvd., Ft. Worth, TX, joins this Petition on all claims as the Petitioner in Case No. 110,485 with the State Office of Administratrative Hearings for audit periods March 1, 2009 thru September 30, 2012.

9.  Defendant, Susan Combs (hereinafter referred to as ("Comptroller"), joined herein as a necessary party in her and official capacity as Texas Comptroller of Public Accounts, and in her individual capacity for purposes of certain of Plaintiffs' claims that certain described actions as set forth below are ultra vires and she was acting beyond the scope of her lawful authority. Susan Combs is a public official who is charged with the collection of Limited Sales, Excise and Use Taxes pursuant to the Texas Tax Code and may be served by personal service at 111 East 17th Street, Austin, Texas 78774.

10.  Defendant, Gregg Abbott in his official capacity as the Attorney General of Texas, joined herein as a necessary party in his official capacity, is a state agency as defined by TEX. GOV'T. CODE ANN. § 2001.003 (7), having statewide jurisdiction which makes rules and determines contested cases and may be served by personal service at 209 West 14th Street, 8th Floor, Austin, Texas 78701.

## IV.
## JURISDICTION AND VENUE

11.  This is an action seeking declaratory and injunctive relief from contested case proceedings pending issuance of the Comptroller's Decision before the State Office of Administrative Hearings (SOAH) against Plaintiffs.

12.  This court has subject matter jurisdiction to determine the validity of AP 92 and AP 122, and enter declaratory relief pursuant to TEX. GOV'T. CODE ANN. § 2001.038, wherein sovereign immunity has been waived when it is alleged that a rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

13.  This Court has subject matter jurisdiction pursuant to the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et seq., by which sovereign immunity has been waived and authorizes Plaintiffs to obtain a declaration of rights, status, or other legal relations affected by a statute; and

against a state official who engages in ultra vires acts without legal or statutory authority, or refuses to perform a purely ministerial act. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 370 (Tex. 2009).

14.     This Court has subject matter jurisdiction pursuant to TEX. GOV'T CODE ANN. §§ 2001.171, 2001.173 and 2001.174, seeking judicial review from a pending final decision in a contested case before the State Office of Administrative Hearings. *See, Lindig v. Johnson City,* 03-08-00574-CV (Tex. App.-Austin 10-21-2009). (a premature petition for judicial review may be cured if there is a claim over which the court obtained jurisdiction under its general jurisdictional authority.)

15.     This Court has subject matter jurisdiction pursuant to TEX. CONST. ART. I, § 19.

## V.
## SUMMARY OF FACTS

16.     On August 17, 2004, after the Comptroller became aware of lack of uniformity in convenience store audits, she issued a policy memorandum implementing new procedures for convenience store audits entitled Audit Policy 92 (AP 92), directing all auditors, *inter alia,* to conduct a shelf test during convenience store audits if the taxpayer is still in business, and use the percentages designated in AP 92 as the mark-up for beer and tobacco products if the records of a convenience store are "unavailable, inadequate, or unreliable" and if the actual mark-up percentage could not be ascertained by other means.

17.     Effective September 1, 2007, the Texas Legislature enacted legislation directing each wholesaler or distributor of beer, wine, malt liquor or tobacco products to file a report with the Comptroller detailing the monthly net sales made to the retailer by the wholesaler or distributor, including the quantity and units of beer, wine, malt liquor and tobacco products sold to the retailer. (Tex. Tax Code § Tex. Tax Code § 151.462 (a) and Tex. Tax Code § 155.105[1]. The data provided as a

---

[1]§ 155.105 Reports by Wholesalers and Distributors of Cigars and Tobacco Products
(a) The comptroller may, when considered necessary by the comptroller for the administration of a tax under this chapter, require each wholesaler or distributor of cigars and tobacco products to file with the comptroller a report each month of sales to retailers in this state.
(b) The wholesaler or distributor shall file the report on or before the 25th day of each month. The report must contain the following information for the preceding calendar month's sales in relation to each retailer
* * *

result of the legislation is commonly referred to as HB 11 data, but no directives regarding its use accompanied the legislation. The first reports became available on January 1, 2008.

18.    After HB 11 became effective, the Comptroller revised <u>AP 92</u>with <u>AP 122</u> effective July 22, 2009, by revising the audit procedures and determination of mark-up percentages and incorporating HB11, instructing that this data must be the starting point for all convenience store audits whether used as internal control verification or as data used to estimate the audit.

19.    The Comptroller is statutorily authorized to conduct a detailed audit of selected convenience stores throughout the state, and upon a determination that the store records are inadequate or insufficient, to conduct a sample and projection audit and, in the absence of any records, may utilize the best information available. Tex. Tax Code Ann. <u>§ 111.0042.</u>

20.    The Comptroller subsequently notifies Plaintiffs that they have been assessed a deficiency determination, including interest, and, if proven by clear and convincing evidence, an additional 50% fraud penalty and/or an additional 10% jeopardy determination penalty which becomes due if the deficiency is not paid on or before the assessment becomes final, but tax liens may be immediately attached to the subject property.

21.    Plaintiffs must file a Request for Redetermination with the Comptroller within 20 days of the date of the notice or the assessment becomes final and immediately due.

22.    If the Comptroller denies the redetermination, Plaintiffs may request a hearing before the State Office of Administrative Hearings, and, if aggrieved by that determination, may request a rehearing followed by suit in District Court in Travis County, Texas.  If no rehearing is requested, the tax assessment becomes a final judgment.

23.    Sanadco Inc. and Mahmoud A. Isba timely filed a request for redetermination in SOAH Docket No. 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.26, TCPA <u>Hearing No. 106,815,</u>

---

(4) the monthly net sales made to the retailer by the wholesaler or distributor, including:
(A) the quantity and units of cigars and tobacco products sold to the retailer; and
(B) for each unit of tobacco products other than cigars, the net weight as listed by the manufacturer.

and SOAH Docket No. 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.26, TCPA Hearing No. 107,006, respectively, and joined for the sake of efficiency. A hearing was held before the SOAH on September 9, 2013, but the ALJ requested post-hearing briefs from both parties. Plaintiffs filed their brief on October 6, 2013, the Comptroller filed her response on November 4, 2013 and the Proposal for Decision was issued on December 12, 2013. The Comptroller issued her Decision on June 16, 2014 and Petitioners timely filed their Motion for Rehearing which was denied by the Comptroller on July 15, 2014, thereby exhausting Plaintiffs' administrative remedies.

24.      Mahmoud A. Isba, as owner and operator of Nevine Food Store, filed a request for redetermination on May 13, 2013, and his request for hearing was dismissed by the Comptroller for lack of prosecution in Hearing No. 110,485. Plaintiff filed a timely motion for rehearing which was denied by the Comptroller on September 16, 2014. Mr. Isba, having exhausted his administrative remedies, files this Petition for Judicial Review, by joining as a Plaintiff in this cause.

25.      Plaintiff, Broadway Grocery Inc., is engaged in a contested case proceeding in the State Office of Administrative Hearings regarding an alleged sales and use tax deficiency in Docket Number 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.26, TCPA HRG No. 109,293 and timely filed a Request for Redetermination on July 30, 2012, and a hearing was held before SOAH on August 1, 2014, but no Comptroller's Decision has been rendered.

26.      Plaintiff, Shariz, Inc., is engaged in a contested case proceeding in the State Office of Administrative Hearings regarding an alleged sales and use tax deficiency in TCPA HRG No. 108,636 but has not yet been transferred to SOAH.

27.      Plaintiffs, Rubi & Sons Store, Inc. is a private Texas Corporation, duly organized and existing under the laws of the State of Texas, engaged in the operation of a convenience store whose principal place of business is located at 622 W. Garland St, Grand Saline, TX, 75140, and whose taxpayer number is ██████ ████████ The Comptroller has initiated, but not completed, an audit at Plaintiff's convenience store.

## V.
## RELIEF SOUGHT

28.      Plaintiffs are engaged in contested case proceedings before the State Office of Administrative Hearings regarding alleged sales and use tax deficiency, but no final decision has been entered by the Comptroller.

29.     Plaintiffs seek to void the underlying audit, alleging that the auditor acted fraudulently by his unauthorized use of AP 92 and AP 122 as well as HB 11 despite the recent Third Court of Appeals opinion that these documents were "invalid rules" and therefore void and unenforceable because they were not formally adopted pursuant to the mandatory provisions of the Administrative Procedures Act. *See, Sanadco, Inc. v. Comptroller of Public Accounts*, 03-11-00462 (Tex. App. – Austin 2013); LEXIS 12013 at *13 (Tex. App.—Austin Sept 26, 2013).

30.     Plaintiffs also seek to void the underlying audit, alleging that the Comptroller engaged in ultra vires conduct by failing to perform the purely ministerial act of promulgating AP 92 and AP 122 as administrative rules, and subsequently acting without legal authority by implementing the illegal and unauthorized memos as agency policy and procedure.

31.     Plaintiffs further seek to void all instances in which the Comptroller imposed the additional 50% fraud penalty upon the mere finding of "underreporting" instead of the statutorily required finding of fraud or willful intent to evade the tax. In doing so, the Comptroller has engaged in conduct in excess of her statutory authority by substantially reducing her burden of proof and shifting that burden to the taxpayer by requiring him to prove that his conduct was not willful or intentional. Plaintiffs allege that this is ultra vires conduct and is outside the Comptroller's statutory authority.

32.     SOAH has acknowledged that the foregoing issues are beyond the jurisdictional authority of the Administrative Law Judge and have therefore refused to address them within the parameters of a contested case proceeding. *See,* Comptroller's Decision No. 106,516 (2013) (The ALJ does not have jurisdiction to consider whether Audit Policy Memorandums 92 and 122 constitute rules as defined by the Administrative Procedure Act.); Comptroller's Decision No. 106,516 (2013) (Petitioner also contends the 50% additional penalty should be deleted because the statute authorizing the additional penalties is unconstitutional and because there was no intent to evade the tax. However, it is well settled that neither the Comptroller nor the ALJ has jurisdiction to consider the validity or constitutionality of a statute.); See also, Comptroller's Decision Nos. 103,683, 103,961(2011), 104,445, 105,726 (2012).

33.     In the absence of jurisdiction for SOAH to address these issues—which may be determinative of the validity of the audits—Petitioners seek to have these issues addressed by this Court under the authority of Tex. Gov't Code § 2001.038 together with the authorities previously recited wherein this Court is granted jurisdiction to determine the validity or applicability of a rule *before* it is applied to the detriment of this taxpayer, *Montemayor v. City of San Antonio Fire Dept.*, 985 S.W.2d 549, 551 (Tex.App.-San Antonio 1998, pet. denied), and *before* he has exhausted his administrative remedies. *R Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314, 317-18 (Tex. 1994); *PUC of Texas v. City of Austin*, 728 S.W.2d 907 (Tex.App.-Austin 1987); *Combs v. Texas Entertainment Ass.*, 287 S.W.3d 852 (Tex.App.-Austin 2009).

## COMPLAINT I

**The Comptroller engaged in ultra vires conduct because she failed or refused to perform the purely ministerial act of adopting the memoranda designated as AP 92 and AP 122 as agency rules pursuant to procedures required by the APA, thereby rendering the audits utilizing these procedures invalid and unenforceable.**

34. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

35.     The Comptroller's memos implementing Audit Policy Memoranda 92 and 122 (AP 92 and AP 122) effective August 17, 2004, and July 22, 2009 respectively, are agency rules as defined by Tex. Gov't Code § 2001.003 (6). The use of these rules or their threatened application interfere with or impair, or threaten to interfere with or impair, a legal right or privilege of the Plaintiff in that they subject Plaintiff to potential loss of his business, his license, illegal tax assessments and subjecting his property to liens and potentially to forcible sale.

36.     The Audit Policy Memoranda regarding AP 92, AP 122 and HB 11 constitute agency rules as defined by the Administrative Procedures Act (APA) because they are statements of general applicability relating to all convenience store audits; that implemented agency policy to add uniformity to the audits; and described the procedure or practice requirements of the agency by implementing the use of HB 11 and the percentages for mark-ups and product mixes incorporated in AP 92 and AP 122.

37.     The Comptroller is charged with establishing methods for administering and adopting necessary rules for the collection of taxes and other revenues. Tex.

Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." *Id.*

38. A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999). These procedures include providing notice, publication, and public comment on the proposed rule. *Id.* (citing Tex. Gov't Code Ann. §§ 2001.023-.030). The process assures notice to the public and affected persons and an opportunity to be heard on matters that affect them. *Id.*

39. Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. Neither AP 92 nor AP 122 as it relates to HB 11, were ever adopted as mandated by the APA and are therefore invalid and unenforceable when applied to convenience store audits.

40. Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, which waive sovereign immunity, declaring that the Comptroller's memoranda, designated as AP 92, AP 122 (incorporating HB 11), are invalid administrative rules because they were not adopted in accordance with the requirements of the APA found at Tex. Gov't Code Ann. §§ 2001.035 and 2001.004. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT II

**The comptroller acted ultra vires because she acted without legal authority by implementing and enforcing AP 92, AP 122 and HB 11 before performing the purely ministerial act of adopting them as Rules in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

41. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

42. The Comptroller is charged with establishing methods for administering

and adopting necessary rules for the collection of taxes and other revenues. Tex. Tax Code Ann. § 111.002(a). Specifically, the Comptroller has statutory authority to "adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title." Id.

43. Suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. *Heinrich*, 284 S.W.3d at 372. To fall within the *ultra vires* exception to sovereign immunity, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (citations omitted). "Thus, *ultra vires* suits do not attempt to exert control over the state — they attempt to reassert the control of the state. Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.*

44. Unless a rule is promulgated and adopted in accordance with the requirements of the APA, it is invalid and unenforceable. Tex. Gov't. Code Ann. §§ Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005. The Comptroller has no legal authority to enforce agency rules before they are adopted in accordance with the APA. Such adoption is mandatory and nondiscretionary. The Comptroller's failure to comply with this ministerial, nondiscretionary act was therefore an ultra vires act. This Court is respectfully requested to enjoin the use of AP 92 and AP 122 until they are properly adopted as rules pursuant to the requirements of the APA.

45. Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq.*, declaring that the Comptroller is not authorized to estimate convenience store audits using the methods prescribed by AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

<u>COMPLAINT IV</u>

**The Comptroller acted ultra vires and in excess of her statutory authority when she unilaterally established "gross underreporting" as an irrebuttable presumption of proof to impose the additional 50% penalty instead of proof of fraud or intent to avoid the tax as required by Tex. Tax Code Ann. § 111.061(b).**

46.      Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

47.      Tex. Tax Code § 111.061(b) authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40 (1) (B)

48.      Fraud implies "bad faith, intentional wrong, and a sinister motive, and the intent required to be showed is that there was specific intent to evade tax believed to be owing." Comptroller's Decision No. 34,499 (1997). The Comptroller, however, has held on many occasions that "gross underreporting of taxable sales, along with other factors or no plausible explanation, is sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty. Comptroller's Decision No. 101,911; See Rule 1.40(1) (B).

49.      The burden proof is on the Comptroller to prove by clear and convincing evidence that the failure to pay the tax was willful or fraudulent. 34 Tex. Admin. Code Section 1.40(1) (B). Although she claims to bear this burden, the Comptroller has authorized a finding of fraud upon the irrebuttable presumption that a 25% underreporting constitutes fraud, thereby unlawfully shifting the burden to the taxpayer to provide some plausible reason for the underreporting.

50.      An agency's interpretation of a statute it is charged with enforcing is entitled to serious consideration, so long as the construction is reasonable and does not conflict with the statute's language. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). An agency's opinion, however, cannot change plain language, nor contradict statutory text. *Combs v. Health Care Services Corp.*, 401 S.W.3d 623 (Tex. 2013); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006).

51. The Comptroller has exceeded her statutory authority by reducing the burden of proof required to establish fraud by eliminating the requirement of intent or

willfulness, and establishing an entirely new irrebuttable presumption standard of "gross underreporting", thereby clearly shifting the burden of proof in direct conflict with legislative and statutory authority.

52. Plaintiffs seek a declaratory judgment against Susan. Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, construing Tex. Tax Code § 111.061(b) and declaring that the Comptroller has acted ultra vires, and in excess of her statutory authority by unlawfully creating a new irrebuttable standard of proof and shifting the burden of proof and authorizing the imposition of the 50% fraud penalty upon an irrebuttable finding of gross underreporting without a finding of fraud or intent to avoid the tax as required by the statute, and/or that such procedure conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations.

## COMPLAINT V

**The comptroller acted ultra vires because she acted without legal authority by implementing a completely new irrebuttable presumption of "gross underreporting" as proof of fraud or intent to avoid the tax as required by Tex. Tax Code § 111.061(b), before performing the purely ministerial act of adopting it as a rule in compliance with the nondiscretionary, purely ministerial rule-making procedures mandated by the APA.**

53. Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

54. Tex. Tax Code § 111.061(b) authorizes the Comptroller to impose a penalty of 50% for fraud, or intent to evade the tax, in addition to the deficiency determination. When the Comptroller seeks to impose a 50 percent additional penalty it must show clear and convincing evidence of fraud or intent to evade tax. TEX. TAX CODE Section 111.061(b) and 34 TEX. ADMIN. CODE Section 1.40 (1) (B)

55. The Comptroller has, without statutory authority, created an entirely new irrebuttable presumption that the tax payer's underreporting of 25% or more is "sufficiently indicative of intent to evade the tax to warrant the assessment of the fraud penalty."

56.     There is no statutory provision or administrative regulation authorizing the Comptroller to determine fraud or the intent to invade the tax by giving conclusive effect to underreporting of taxable sales, without first ascertaining whether that determination includes willful, fraudulent intent.

57.     The Comptroller's creation of this new standard of proof is a rule as defined by Tex. Gov't Code § 2001.003 (6). The use of this rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Defendant by threatening loss of revenue or loss of property.

58.     The cases implementing the use of this irrebuttable presumption constitute rules as defined by the APA because they are of general application to convenience store audits, and they implement and prescribe policy and describe the procedure or practice requirements for imposing the additional 50% penalty.

59.     Plaintiffs seek a declaratory judgment against Susan Combs in her individual and official capacities as Comptroller of Public Accounts for the State of Texas, pursuant to Tex. Gov't. Code Ann. § 2001.038 and the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, declaring that the Comptroller is not authorized to impose the additional 50% penalty by implementing the irrebuttable presumption of underpayment as a substitute for a finding of fraud or intent to evade the tax until its proper adoption, and/or that the authorization of its use is a non-discretionary ultra vires act committed without legal authority which conflicts with relevant provisions of the Tax Code and the Comptroller's administrative regulations. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (quoting *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003)); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex.App.-Austin 2009, no pet.).

## COMPLAINT VI

**Tex. Tax Code Ann. § 111.0042 authorizing sample and projection audits is unconstitutionally vague as written and as applied to plaintiffs.**

60.     Plaintiffs incorporates the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

61.     The Comptroller has the authority to examine the type of records she deems necessary for conducting a thorough audit of a taxpayer's records. See Tex.

Tax Code Ann. §§ 111.004, 111.008, and 151.023.

62.     Section 151.025 requires sellers to maintain (a) records of gross receipts, including documentation in the form of receipts, shipping manifests, invoices, and "other pertinent papers", (b) similar documentation relating to their purchases, and (c) records in the form of receipts, shipping manifests, invoices, "and other pertinent papers" that substantiate each claimed deduction or exclusion authorized by law. See also, Rule 3.281(a) (2).

63.     The Comptroller is only authorized to conduct a sample and projection audit "when the taxpayer's records are inadequate or insufficient, so that a competent audit for the period in question is not otherwise possible." Tex. Tax Code Ann. § 111.0042 (b) (2).

64.     When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code § 111.0042(d). The Comptroller has held that the use of vendor records and the procedures set out in AP 92 satisfies the best information available requirement when no records or unreliable records are made available. See Comptroller's Decision No. 44,893 (2006).

65.     The types of records the taxpayer is required to maintain is extremely nebulous because of the inclusion of the statement "and other pertinent papers" accompanying each category of records required to be maintained. This leaves open the requirement to maintain records not included or described in the statute, providing little notice to the taxpayer of what is essential to meet the ill-defined requirements of the statute.

66.     The determination of whether the records are "inadequate" or "insufficient" is therefore discretionary with the auditor and thus whether a detailed audit based on a thorough review of the taxpayer's records or an estimated "desk audit", based on HB 11 data and AP 92 or AP 122 estimates will be required.

67.     There is no statutory guidance by which an auditor or the taxpayer may determine whether records are adequate or insufficient, and the records the auditor may require are boundless as a result of the vast array of records not specifically identified, but ostensibly permitted by the statute, such as sales summary records, general ledgers, purchase invoices, federal income tax returns, purchase journals, cash register tapes, fixed asset/depreciation schedules, daily

sales journals or Z-tapes. See SOAH Docket No. 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.26; Hearing No. 104,037.

68.     A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const. Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct, lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

69.     Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code ANN. § 37.004 *et seq.*, construing Tex. Tax Code § 111.0042, declaring that this statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and is constitutionally vague because it permits the audit to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

## COMPLAINT VII

**Tex. Tax Code §111.022, authorizing a Jeopardy Determination without guidelines, is Unconstitutional on its face and as applied.**

70.     Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

71.     Tex. Tax Code § 111.022 authorizes the Comptroller to impose an additional 10% jeopardy determination penalty against a deficiency determination, which comes due immediately, if she "believes" that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay.

72.     The statute is purely discretionary because it establishes no parameters by which the Comptroller is to make this determination except for her undefined

"belief", and there is no statutory definition for the terms "jeopardized by delay".

73.    "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* Thus, for a statute not to be unconstitutionally vague, it must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) if First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. Id. at 108-09; Long v. State, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996).

74.    A court will find a rule unconstitutionally vague, in violation of due process, if it does not give fair notice of what conduct may be punished, and invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. U.S.C.A. Const. Amend. 14. *Vista Healthcare V. Texas*, 03-09-00178-CV (Tex.App.-Austin 8-26-2010). This statute fails to establish guidelines for its application and does not give fair notice to the taxpayer of the prohibited conduct, lending itself to discriminatory enforcement. It is therefore unconstitutionally vague and must be stricken.

75.    Plaintiffs seek a declaratory judgment against the Office of the Comptroller of Public Accounts, Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as the Attorney General for the State of Texas, pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004 *et seq.*, construing Tex. Tax Code § 111.022 and declaring that the statute is unconstitutional on its face and as applied to Plaintiffs because it is, by its nature, a denial of substantive and procedural due process and unconstitutionally vague because it permits the Jeopardy Determination to be made merely on undefined subjective criteria, and without providing any guidelines for the administration thereof.

## VIII. Attorney's Fees

Pursuant to Tex Gov't Code Ann § 2006.013[2] and Tex. Civ. Prac. & Rem. Code Ann. § 37.009, request is made for all costs and reasonable and necessary attorney's fees

---

[2] § 2006.013 GOV'T. Requirements for Recovery

incurred by Plaintiffs herein, including all attorney's fees and costs necessary in the event of an appeal or original proceeding to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## COUNTER-PLAINTIFFS' APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.     Defendants, Counter-Plaintiffs ("Plaintiffs") incorporate the preceding paragraphs by reference as if the same were set forth fully and verbatim herein.

2.     Plaintiffs, Counter-Defendants ("Defendants") are Susan Combs, Comptroller; Greg Abbott, Texas Attorney General; and the Office of the Comptroller, as previously described in this petition.

3.     Defendants' activities and omissions as described above and below are in violation of the mandated provisions of the Administrative Procedure Act (APA) and/or constitute ultra vires conduct in excess of the Comptroller's official capacity and subject to the Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq*, and as described in *City of El Paso v. Heinrich*, 284 S.W.3d at 372 (Tex. 2009); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d at, 720 (Tex.App.-Austin 2009, no pet.); *Texas Dep't. Of Protective & Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d at 173 (Tex. 2004), including the following:

   i. The Comptroller's failure or refusal to perform the purely ministerial act of adopting AP 92 and AP 122 as agency rules, as mandated by Tex. Gov't Code § 2001 *et seq*.
   ii. The Comptroller's authorization and enforcement of policies and procedures that had not been promulgated as agency rules, as mandated by Tex. Gov't. Code Ann. §§ 2001.035, 2001.004 and 2001.005, including the use of AP 92, AP 122 and HB 11 data.

(a) In an administrative adjudicatory proceeding or a civil action resulting from a complaint issued by a state agency against a small business under the agency's administrative or regulatory functions, the small business may be awarded reasonable attorney fees and court costs if:
   (1) it is a small business at the time it becomes a party to the proceeding or action;
   (2) it prevails in the proceeding or action; and
   (3) the proceeding or action was groundless and brought:
   (A) in bad faith; or
   (B) for purposes of harassment.

iii. The Comptroller's authorization to conduct "desk" audits and giving conclusive effect to HB11 data without determining the adequacy of plaintiffs' records in contravention of Tex. Tax Code Ann. § 111.0042 and 34 Tex. Admin. Code Section 3.281(c).

iv. The Comptroller's authorization, in excess of her statutory authority, to conduct estimated audits in contravention of Tex. Tax Code Ann. § 111.0042 which specifically restricts the Comptroller to either detailed or sample and projection audits when sales tax reports have been filed. The only time the Comptroller is statutorily authorized to *estimate* an audit is where the taxpayer *fails to file a sales tax report*. Tex. Tax Code Ann. § 151.503.

v. The Comptroller's unauthorized, ultra vires reduction of the burden of proof required to impose an additional 50% penalty from "fraud, or intent to avoid the tax" as required by Tex. Tax Code Ann. § 111.061(b), to "gross underreporting" of 25% of the tax due as developed by agency decisions absent its promulgation as a rule under the APA.

4.      Plaintiffs have plead a cause of action against the Comptroller. As previously outlined in this petition, Plaintiff seeks a declaration under Tex. Gov't. Code Ann. § 2001.038 that AP 92 and AP 122 are invalid. Plaintiff seeks a declaration also under Tex. Civ. Prac. & Rem. Code § 37.004 that the Comptroller exceeded her statutory authority under Sections 111.0042 and 111.061 of the Texas Tax Code in authorizing estimated audits and the additional 50% penalty.

5.      The Comptroller's ultra vires conduct in excess of her statutory authority continues to create invalid, unenforceable, fraudulent and illegal audits resulting in excessive and distorted deficiencies upon convenience store owners and operators subjecting them to the following pre-hearing enforcement remedies:

i. Imposition of a jeopardy determination from which taxes can be immediately and forcibly collected without filing a collection suit. Tex. Tax Code Ann. § 111.022.

ii. Perfection of a lien on all non-exempt property, real and personal, merely by filing a tax lien notice with the appropriate county clerk. Tex. Tax Code Ann. §§ 113.001-.002, attaching to all after-acquired property until the taxes are paid, Tex. Tax Code Ann. § 113.105, rendering the taxpayer's property virtually unsalable.

iii. Garnishment of the taxpayer's bank accounts and freezing of property held by third parties without the requirement of a hearing. *See* Tex. Tax Code Ann. §§ 111.021, 113.103.

iv. Seizure and auctioning of the taxpayer's property, or, after affording a hearing, revoking the taxpayer's sales tax permit. *See* Tex. Tax Code Ann. §§ 111.0047, 111.017-.019.

v. Enjoining further sales of goods or services after revoking the sales tax permit, effectively closing a business. Tex. Tax Code Ann. § 151.262(a).

vi. Unilateral imposition of a bond to secure payment of the deficiency under the threat of revocation of the sales tax permit and effectively closure of the business without a hearing. Tex. Tax Code Ann. § 111.012.

vii. Refusal to renew sales tax permit due to delinquency or refusal to pay the tax. Tex. Tax Code Ann. § 111.0046.

viii. Continued accumulation of daily interest until a final judgment is reached.

ix. These remedies are cumulative, and may therefore be imposed simultaneously upon the taxpayer.

6. It is probable that Plaintiffs will prevail against Defendants on the merits and obtain permanent injunctive and declaratory relief prohibiting the use of the policies and procedure incorporated in <u>AP 92</u> and <u>AP 122</u> because it is indisputable that they are administrative rules as defined by the APA as statements of statewide application; that prescribe law or policy; and describes the procedure or practice requirements of the agency. Further, the Third Court of Appeals has already rendered a decision from the accelerated appeal declaring that AP 92 and AP 122 were invalid administrative rules subject to the provisions of the APA, because they had not been properly adopted under the mandatory requirements of the APA. *Jackson v. Office of the Comptroller of Public Accounts,* No. 03-11-00462 (Austin App.) (Sept. 28, 2013).

7. If the Plaintiffs' Application for Temporary Injunction is not granted, irreparable harm is imminent because denying the request for the injunctive relief will immediately subject defendants to the enforcement procedures outlined in paragraph 44 above without benefit of a hearing, based solely on the auditors' unconfirmed deficiency determinations.

8. The Plaintiffs will therefore potentially face the immediate imposition of property liens; seizure and sale of property and property rights; immediate garnishment and freezing of banking accounts; suspension or revocation of sales and use tax permits; imposition of onerous bond or security requirements; accrual of interest, and potential loss and destruction of their businesses without access to judicial intervention for which Defendants have no adequate remedy at law. (See ¶¶ 4 – 11, incorporated herein by reference).

9. Plaintiffs have no adequate remedy at law because the Comptroller is not subject to damages claims and these enforcement procedures are not subject to pre-deprivation hearings because any judicial remedy available is by appeal to the District Court after the enforcement procedures have already been applied. Tex. Tax Code Ann. §§ 111.0049, 162.007. By the time these remedies are accessed, the taxpayers will have already lost their permits, their right to engage in business, and the probable loss or sale of their business and assets.

10. Plaintiffs move the Court to set this request for a temporary injunction hearing, and after the hearing, enter a temporary injunction granting the relief requested herein and further enjoining Defendants from conducting any audits incorporating the procedure and practice requirements established in AP 92 and AP 122, or attempting to enforce deficiencies established as a result of the use of such procedures and practices.

11. To preserve the Plaintiffs rights during the pendency of this action, Defendants should be cited to appear and show cause why they should not be enjoined during the pendency of this cause from further engaging in any of the conduct or activities described herein.

12. Plaintiffs would therefore respectfully request the Court to grant the following relief:
   i.    After notice and hearing, enter a temporary injunction, enjoining Plaintiffs, their agents and their employees from continuing to engage in the conduct or activities herein described, including, but not limited to, the use of the procedures described in AP 92 and AP 122 as herein described, in the conduct of convenience store audits.
   ii.   After notice and hearing, abate the accumulation of interest where appropriate, pending a final determination on the merits.
   iii.  After a final hearing on the merits of this cause, permanently enjoin Plaintiffs and all others acting in concert with them from engaging in

the activities and conduct described herein pending compliance with the relevant statutes, including the APA.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Defendants, Cross-Plaintiffs (Plaintiffs) pray that this Court, after notice and hearing:

1. Deny Plaintiff, Cross-Defendant's (Defendants) claims and enter a take nothing judgment.

2. Allow Plaintiffs to proceed with their claims in protest of the taxes, penalties and interest assessed in the decisions complained of without regard to the requirements of Tex. Tax Code §§ 112.108, 112.051, or 112.101 for the reason that Plaintiffs are unable to meet these financial requirements, and that such prohibition is in violation of the Open Courts provision of Article I, Sec. 13 of the Texas Constitution.

3. Enter judgments pursuant to the foregoing allegations making the following declarations as to Plaintiffs' rights:

   a. that the Comptroller's memos AP 92 and AP 122 on August 17, 2004, and July 22, 2009 respectively, establishing and implementing procedures for the conduct of convenience store audits, are invalid administrative rules, and that the Comptroller's authorization of their use without complying with the APA requirements was ultra vires and exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

   b. that the Comptroller's memo of July 22, 2009, implementing and establishing procedures for the use of HB11 data, is an invalid administrative rule, and that the Comptroller's authorization of its use without complying with the APA requirements was a non-discretionary, ultra vires act which exceeded the scope of her statutory authority, and that her failure to comply with the requirements of the APA was a failure to perform a purely ministerial, non-discretionary act, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

c.        that Tex. Tax Code § 151.462 and 155.105 do not authorize the Comptroller to conduct desk audits giving conclusive effect to the HB11 data in determining Plaintiffs' tax deficiency without examination of Plaintiffs' business records, and that doing so is ultra vires and in excess of the Comptroller's statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from  the collection of these illegal, invalid and unenforceable taxes, penalties and interest ;

d.        that the Comptroller is not authorized to estimate the markup of alcohol and tobacco products or to conduct audits of convenience stores under the requirements of AP 92 or AP 122 without first adopting them as Rules pursuant to the requirements of the APA, and that doing so is a non-discretionary and ultra vires act in excess of her statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from  the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

e.        that Tex. Tax Code § 111.0042 is unconstitutional on its face and as applied to Plaintiffs because it permits the auditor to determine whether records are adequate based solely on undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application, thereby entitling Plaintiffs to declaratory and injunctive relief from  the collection of these illegal, invalid and unenforceable taxes, penalties and interest;

f.        that Tex. Tax Code § 111.022 is unconstitutional on its face and as applied to Plaintiffs because it permits the Jeopardy Determination to be made merely on the Comptroller's undefined subjective criteria, and without providing any guidelines for its administration lending itself to discriminatory application thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

g.        that the Comptroller is not authorized to unilaterally reduce the burden of proof, or to shift the burden of proof in establishing fraud as required by Tex. Tax Code Ann. § 111.061, and that such conduct is non-discretionary and ultra vires and in excess of her statutory authority, thereby entitling Plaintiffs and Class to declaratory and injunctive relief from the collection of these illegal, invalid and unenforceable taxes, penalties and interest.

h.        that the Comptroller has engaged in intentional conduct resulting in the taking of Plaintiffs' property for public use without adequate compensation in violation of Const. art. I, sec. 17 of the Texas Constitution

Page 22 of 26

and that Plaintiffs are entitled to declaratory, injunctive and compensatory relief.

4. After setting a reasonable bond, enter judgment temporarily, and after hearing on the merits, permanently restraining and enjoining Susan Combs, in her individual and official capacities, and the Office of the Comptroller of Public Accounts, its employees and agents, and all other persons in active concert or participation with these Counter-Defendants from engaging in the acts and practices made the subject of the temporary injunction.

5. Enter judgment, jointly and severally, against the Comptroller of Public Accounts, Susan Combs individually and in her official capacity as Comptroller of Public Accounts for the State of Texas and Gregg Abbott, in his official capacity as Attorney General of the State of Texas for compensatory damages, including pre and post-judgment interest, to all Plaintiffs from whom the Comptroller has collected these illegal, invalid and unenforceable taxes, penalties and interest, in whatever manner, in violation of Tex. Const. art I, sec. 17 resulting from her adherence to the invalid procedures and unconstitutional statutes alleged herein.

6. Enter judgment directing Defendants to account to Plaintiffs and the Class for all damages caused to them as a result of their unlawful actions, and appointing a Special Master to oversee implementation of this Court's orders with periodic reports submitted to the Court on progress with the fees and all reasonable costs charged and incurred by the Special Master to be paid by Defendants as such charges may be apportioned by the Court.

7. Enter judgment awarding to Plaintiffs the costs and disbursements of this action including reasonable attorneys' fees and costs for experts pursuant to the provisions of the Texas Government Code, Texas Civil Practices and Remedies Code and the Administrative Procedures Act.

8. Plaintiffs pray for all other relief, equitable and legal to which they may prove themselves justly entitled.

Respectfully submitted,
By: /s/ **Samuel T. Jackson**
Samuel T. Jackson
Texas Bar No. 10495700
PO Box 170633
Arlington, TX 76003-0633
Tel. (214) 751-7155; (512) 692-6260
Fax. 866-374-0164

FOR DEFENDANTS, COUNTER-PLAINTIFFS
Email: jacksonlaw@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing instrument was served on the parties or their attorneys **via facsimile**, certified mail, return receipt requested, and/or hand delivery on October 17, 2014, in accordance with Rule 21a, Texas Rules of Civil Procedure, to the following:

**JACK HOHENGARTEN**
Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-3503
Fax: (512) 477-2348
jack.hohengarten@texasattorneygeneral.gov
**Attorneys for Counter-Defendants**

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned authority, personally appeared Samuel T. Jackson, who, being by me duly sworn, on his oath deposed and stated the following:

I, Samuel T. Jackson, am over 18, of sound mind and otherwise capable of making this affidavit. I am the attorney representing Sanadco Inc., Mahmaud Isba, and the remaining plaintiffs in this putative class action suit. I have prepared *Plaintiffs' Second Amended Petition for Judicial Review, Declaratory Judgment, Temporary Injunction and Request for Disclosure*. I hereby certify upon personal knowledge and information and belief, that the factual allegations in the foregoing Application for Temporary Injunction are true and correct.

_____
SAMUEL T. JACKSON
ATTORNEY FOR PLAINTIFFS

Subscribed and Sworn to Before Me on October 17, 2014 to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas
My commission expires _____

# TRCP 21a. - Service by Telephonic Transfer

As provided by TRCP 21a, this document is sent to you using ProDoc FaxService. For more information about this service visit www.prodocefile.com/Information/Faqs.aspx.

| | |
|---|---|
| **Date:** | 10/17/2014 6:00:59 PM |
| **To:** | JACK HOHENGARTEN |
| **Fax Number:** | 512-477-2348 |
| **From:** | Samuel Jackson<br>Law Office of Samuel T. Jackson<br>P.O. Box 170633<br>Arlington, TX 76003-0633 |
| **Phone Number:** | 512-692-6260 |
| **Re:** | |
| **Service Document(s):** | SANADCO 3d AMEND PET FOR JUD REV.docx |
| **Total Number of Pages:** | 27 (including cover sheet) |

PRIVILEGED AND CONFIDENTIAL
This facsimile transmission may contain privileged confidential information and is intended for the sole use of the addressee. If you are not the intended recipient, or the person responsible to deliver the message to the intended recipient, you are hereby advised that any dissemination, distribution or copying of this communication is prohibited. If you have received this facsimile in error, please notify the sender and destroy all copies of the original facsimile message.

**Tab F**

Certification of Public Records for Order Denying Motion for Rehearing on Comptroller's Decision on Hearing Nos. 106,815 and 107,006
and
Certification of Public Records for Comptroller's Decision on Hearing Nos. 106815 and 107006 with Attachments A – Texas Notification of Hearing Results



| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

## CERTIFICATION OF PUBLIC RECORDS

I, Lisa Brown, Paralegal of the Litigation Section in the General Counsel Division of the Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY AND ATTEST that I am a custodian of tax records and files of the Comptroller of Public Accounts.

I FURTHER CERTIFY that the attached document, **Order Denying Motion for Rehearing on Comptroller's Decision on Hearing Nos. 106,815 and 107,006** is a true and correct copy of an official record, report or entry therein, or document authorized by law to be recorded or filed in our office, and is actually recorded or filed in our office. Said documents are related to Sanadco, Inc., Taxpayer No. █████████ and Mahmoud Ahmed Isba, Taxpayer No. █████████

IN TESTIMONY WHEREOF, I have officially affixed my name and caused to be impressed hereon the seal Texas Comptroller of Public Accounts at 111 East 17th Street, Suite 131, Austin, County of Travis, Texas 78701, on this the 16th day of April 2015.



_Lisa Brown_

Lisa Brown
Custodian of Records
Litigation Section
(512) 463-4095

# HEARING NO. 106,815

| | | |
|---|---|---|
| RE: SANADCO, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: ███████ | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Fort Worth 2140 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: February 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

# HEARING NO. 107,006

| | | |
|---|---|---|
| RE: MAHMOUD AHMED ISBA | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: ███████ | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Advanced Processes 2S52 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: May 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

## ORDER DENYING MOTION FOR REHEARING

On July 8, 2014, Petitioners timely filed a Motion for Rehearing concerning the June 16, 2014 Comptroller's Decision issued in the above-referenced matter. On July 8, 2014, the Tax Division filed its Reply opposing Petitioners' Motion.

Having considered Petitioners' Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

Sanadco, Inc. and Mahmoud Ahmed Isba
Hrg. Nos. 106,815 and 107,006
Page 2

       All parties of record are being notified by copy of this Order.

Signed on this ____15th____ day of July 2014.

                              SUSAN COMBS
                              Comptroller of Public Accounts

by: _____
                              Martin A. Hubert
                              Deputy Comptroller

STATE OF TEXAS §
                           §
COUNTY OF TRAVIS §

## CERTIFICATION OF PUBLIC RECORDS

I, Lisa Brown, Paralegal of the Litigation Section in the General Counsel Division of the Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY AND ATTEST that I am a custodian of tax records and files of the Comptroller of Public Accounts.

I FURTHER CERTIFY that the attached document, **Order Denying Motion for Rehearing on Comptroller's Decision on Hearing Nos. 106,815 and 107,006** is a true and correct copy of an official record, report or entry therein, or document authorized by law to be recorded or filed in our office, and is actually recorded or filed in our office. Said documents are related to Sanadco, Inc., Taxpayer No. ███████ and Mahmoud Ahmed Isba, Taxpayer No. ███████

IN TESTIMONY WHEREOF, I have officially affixed my name and caused to be impressed hereon the seal Texas Comptroller of Public Accounts at 111 East 17th Street, Suite 131, Austin, County of Travis, Texas 78701, on this the 16th day of April 2015.



Lisa Brown
Custodian of Records
Litigation Section
(512) 463-4095

## HEARING NO. 106,815

| | | |
|---|---|---|
| RE: SANADCO, INC. | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: ███████ | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Fort Worth 2140 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: February 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

## HEARING NO. 107,006

| | | |
|---|---|---|
| RE: MAHMOUD AHMED ISBA | § | BEFORE THE COMPTROLLER |
| | § | OF PUBLIC ACCOUNTS |
| | § | OF THE STATE OF TEXAS |
| | § | |
| TAXPAYER NO: ████████ | § | SUSAN COMBS |
| | § | Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Advanced Processes 2S52 | § | |
| | § | ISREAL MILLER |
| AUDIT PERIOD: May 1, 2007 | § | Representing Tax Division |
| THROUGH June 30, 2009 | § | |
| | § | SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | § | Representing Petitioner |

## ORDER DENYING MOTION FOR REHEARING

On July 8, 2014, Petitioners timely filed a Motion for Rehearing concerning the June 16, 2014 Comptroller's Decision issued in the above-referenced matter. On July 8, 2014, the Tax Division filed its Reply opposing Petitioners' Motion.

Having considered Petitioners' Motion and the Tax Division's Reply, it is concluded that the Motion for Rehearing does not raise any legal or factual grounds that would affect the decision of the Comptroller. It is accordingly ORDERED that the Motion for Rehearing be, and is hereby, DENIED.

The Comptroller's Decision becomes final on the date of this Order Denying Motion for Rehearing, and the total sum of the tax, penalty, and interest is due and payable within twenty (20) days thereafter. If such sum is not paid timely, an additional penalty of ten percent of the taxes due will accrue and interest will continue to accrue until the taxes owed are paid.

Sanadco, Inc. and Mahmoud Ahmed Isba
Hrg. Nos. 106,815 and 107,006
Page 2

       All parties of record are being notified by copy of this Order.

       Signed on this 15th day of July 2014.

                         SUSAN COMBS
                         Comptroller of Public Accounts

                         by: _____
                         Martin A. Hubert
                         Deputy Comptroller



STATE OF TEXAS                 §
                               §
COUNTY OF TRAVIS               §

## CERTIFICATION OF PUBLIC RECORDS

I, Lisa Brown, Paralegal of the Litigation Section in the General Counsel Division of the Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY AND ATTEST that I am a custodian of tax records and files of the Comptroller of Public Accounts.

I FURTHER CERTIFY that the attached document, **Comptroller's Decision on Hearing Nos. 106,815 and 107,006 with Attachments A – Texas Notification of Hearing Results** is a true and correct copy of an official record, report or entry therein, or document authorized by law to be recorded or filed in our office, and is actually recorded or filed in our office. Said documents are related to Sanadco, Inc., Taxpayer No. ███████ and Mahmoud Ahmed Isba, Taxpayer No. ███████.

IN TESTIMONY WHEREOF, I have officially affixed my name and caused to be impressed hereon the seal Texas Comptroller of Public Accounts at 111 East 17th Street, Suite 131, Austin, County of Travis, Texas 78701, on this the 16th day of April 2015.

Lisa Brown
Custodian of Records
Litigation Section
(512) 463-4095

## SOAH DOCKET NO. 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.26
## CPA HEARING NO. 106,815

| | |
|---|---|
| RE: SANADCO, INC.      . | §   BEFORE THE COMPTROLLER |
| | §   OF PUBLIC ACCOUNTS |
| | §   OF THE STATE OF TEXAS |
| | § |
| TAXPAYER NO: ▬▬▬▬ | §   SUSAN COMBS |
| | §   Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Fort Worth 2140 | § |
| | §   ISREAL MILLER |
| AUDIT PERIOD: February 1, 2007 | §   Representing Tax Division |
|      THROUGH June 30, 2009 | § |
| | §   SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | §   Representing Petitioner |

## SOAH DOCKET NO. 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.26
## CPA HEARING NO. 107,006

| | |
|---|---|
| RE: MAHMOUD AHMED ISBA | §   BEFORE THE COMPTROLLER |
| | §   OF PUBLIC ACCOUNTS |
| | §   OF THE STATE OF TEXAS |
| | § |
| TAXPAYER NO: ▬▬▬▬ | §   SUSAN COMBS |
| | §   Texas Comptroller of Public Accounts |
| AUDIT OFFICE: Advanced Processes 2S52 | § |
| | §   ISREAL MILLER |
| AUDIT PERIOD: May 1, 2007 | §   Representing Tax Division |
|      THROUGH June 30, 2009 | § |
| | §   SAMUEL T. JACKSON |
| Sales And Use Tax/RDT | §   Representing Petitioner |

## COMPTROLLER'S DECISION

Sanadco, Inc. (Petitioner SI) was audited for sales and use tax compliance by the Tax Division of the Texas Comptroller of Public Accounts (Staff) and assessed tax, a 10% penalty, an additional 50% penalty, and accrued interest. Staff also assessed personal liability against Mahmoud Ahmed Isba (Petitioner Isba) under Tax Code § 111.0611 as the president of Petitioner SI. Petitioners contest their audit assessments on the same grounds, including the contentions that the audit assessment is void and unenforceable because the estimate was based on audit procedures that constituted invalid rules, and that the present audit overlaps a previous

final audit assessment. Staff rejects the Petitioners' contentions. In the Proposal for Decision, the Administrative Law Judge (ALJ) recommends that the corporate assessment against Petitioner SI should be affirmed, except that the markup percentage used in calculating the estimated tobacco sales should be adjusted and that the additional fraud penalty should be applied only to the report periods February 1, 2007, through April 30, 2008. The ALJ also recommends that the personal liability assessment against Petitioner Isba should be limited to the report periods May 1, 2007, through April 30, 2008.

## I. PROCEDURAL HISTORY, NOTICE AND JURISDICTION

On May 10, 2013, Staff referred the cases to the State Office of Administrative Hearings (SOAH) for oral hearings. ALJ Peter Brooks ordered the cases joined because the cases involve related parties, and common facts and issues of law. Staff was represented by Assistant General Counsel Isreal Miller, and Petitioners were represented by Attorney Samuel T. Jackson. The case convened on September 9, 2013. The ALJ closed the record on November 12, 2013. There are no contested issues of notice or jurisdiction. Therefore, these matters are set out in the Findings of Fact and Conclusions of Law.

## II. REASONS FOR DECISION

### A. Evidence Presented

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1. 60-Day Letter;

2. Texas Notification of Audit Results;

3. Penalty and Interest Waiver Worksheet;

4. Audit Report; and

5. Audit Plan, which includes Audit Referral Report for Additional Penalty.

2

Staff submitted the following exhibits in SOAH Docket No. 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.26:

1. Texas Notification of Personal Liability for Fraudulent Tax Evasion;

2. Audit Exam, including correspondence and e-mail communications from the Revenue Accounting Division; the Calculated Message, Adjustment, and Allocation Reports; Tax Summary, Status, Balance, Audit, and Tax Allocation Basis Inquiries; and Personal Liability Fraudulent Tax Evasion Worksheet;

3. Sales and use tax returns for report periods April 2007, May 2008, December 2008, February 2008, and January 2009; and

4. State Filings: Statement of Change of Registered Office/Agent, dated May 5, 2006; and Texas Franchise Tax Public Information Reports signed May 10, 2006, March 13, 2008, and February 26, 2009.

Staff attached to its Response to Petitioner's Post-Hearing Brief the following exhibits:

6. Copy of Memorandum Opinion issued in *Sanadco, Inc. v. Comptroller of Pub. Accounts*, No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App.–Austin September 26, 2013, no pet. h.); and

7. Appellee's Motion for Rehearing and Reconsideration *en banc* filed in *Sanadco, Inc.*

Petitioner SI produced during the hearing its responses to Staff's Second Set of Interrogatories, Requests for Admissions, and Requests for Production. Petitioner did not offer any other evidence during the hearing, but did attach to its Post-Hearing Brief the following exhibits:

1. The Examination performed by the Comptroller's Business Activity Research Team (BART) for the exam period January 1, 2008, through March 31, 2009, including, the Accounts Examiner Coversheet; correspondence and e-mail communications from BART; the Texas Notification of Exam Results; the Message, Adjustment, and Allocation Reports; Petitioner's Alcohol and Tobacco Purchases for January 2008 through March 2009; and ITS Work Manager Comments;

2. Plaintiff's Original Petition, *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013;

3

3.      Defendant's First Amended Answer and Counterclaim, *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013; and

4.      Counter-Defendant's Original Answer and Jurisdictional Plea, *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013.

There were no evidentiary objections, and each of the listed documents is admitted as part of the contested case record.

The only witness testimony presented during the contested case hearing was that of Dennis Eastman, the audit supervisor who supervised the Comptroller auditor who performed Petitioner SI's audit. Staff presented the testimony of Mr. Eastman.

### B.      Adjustments

Staff has not agreed to adjust any of the contested audit assessments.

### C.      Facts Established and Issues Presented

Petitioner SI operated a convenience store in Fort Worth, Texas, during the audit period February 1, 2007, through June 30, 2009. Petitioner SI no longer owns the convenience store. Petitioner SI was subjected to a desk audit performed by BART for the exam period of January 1, 2008, through March 31, 2009. It was assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest. The exam was prompted[1] by a comparison of Petitioner SI's alcohol and tobacco purchases for the exam period reported by Petitioner SI's tobacco and alcohol vendors pursuant HB 11.[2] The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo 122 (AP 122) in estimating the assessment. Petitioner SI did not

---

[1]    Petitioner's Exhibit 1, letter dated July 2, 2009, from BART advising Petitioner SI of assessment.

[2]    Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code Ann. §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. H.B. 11, 80th Leg., R.S. (2007). The vendor records are commonly referred to as HB 11 records.

file a request for redetermination contesting the assessment, consequently, the assessment became final. The sales and use tax delinquency was certified to the Attorney General.[3] The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioners SI and Isba.[4] Petitioners filed various counterclaims against the Comptroller. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction. Petitioners appealed the dismissal. The appeals court sustained Petitioners' claim that the Comptroller's directives in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. *See Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013, at *21-22.

Staff subsequently conducted an audit of Petitioner SI's sales and use tax compliance for the audit period February 1, 2007, through June 30, 2009. Petitioner SI did not respond to the auditor's requests for records.[5] The auditor issued a Notification of Estimation Procedures for State Tax Audit (Notification of Estimation) dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.[6] When the auditor initiated the audit fieldwork Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.[7] The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008, through June 30, 2009. The total alcohol and tobacco purchases were multiplied by their respective markup percentages.[8] No product-mix percentage was calculated, because no purchase invoices were available. Therefore, the standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales. The auditor afforded a 5% allowance for spoilage and theft, and credit was given for reported taxable sales. The adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008, through March 31, 2009, and the resulting additional taxable sales were

---

[3] Petitioner's Exhibit 2, Texas Certificate to Attorney General of Sales and Use Tax Delinquency.
[4] Petitioner's Exhibit 2, Plaintiff's Original Petition.
[5] Staff's Exhibit 4 (Petitioner SI), Audit Report.
[6] *Id.*
[7] *Id.*, and Staff's Exhibit 4 (Petitioner SI), Exam 20B.
[8] *Id.*

5

then multiplied by the applicable tax rates to arrive at the tax due for the period January 1, 2008, through June 30, 2009.[9]

As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for the report periods January 1, 2008, through June 30, 2009 by first determining the average monthly net estimated taxable sales. The post-December 31, 2007, total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.[10] The additional taxable sales for the pre-January 1, 2008, report periods were calculated by giving credit for the taxable sales reported to the Comptroller and applying the 5% allowance for spoilage and theft. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for this part of the audit period.[11]

Since no contact was made during the audit with an officer, owner, or representative of Petitioner SI, the auditor did not record in the Audit Plan or in the Audit Referral Report for Additional Penalty any information regarding the role played by an officer, director, owner, or employee of Petitioner SI in the operation of the store or in the preparation and filing of the sales and use tax returns and the remittance of sales and use tax payments. The only substantive information regarding Petitioner Isba's activities is found in Petitioner SI's responses to Staff's Second Set of Interrogatories, Requests for Admissions and Requests for Production. Petitioner SI admitted that Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.[12] Petitioner Isba is identified as the person responsible for depositing the store's sales proceeds, ordering the store's inventory, and paying for the store's inventory purchases. [13] Petitioner Isba was also identified as the person who received the monthly bank statements.[14] However, according to Petitioner SI's answers to the interrogatories, Petitioner Isba's responsibility for these tasks ended when, on May 1, 2008, he entered into an agreement to sell Sanadco, Inc. to his employees, Yassien Siam and Sandra Salazar. Mr. Siam

---

[9] Staff's Exhibit 3 (Petitioner SI), Audit Report, Exam 20.
[10] Staff's Exhibit 4 (Petitioner SI), Audit Report, Exam 20B.
[11] Staff's Exhibit 3 (Petitioner SI), Audit Report, Exam 20.
[12] Petitioner SI's Admission No. 2.
[13] Petitioner SI's Answers to Interrogatories Nos. 4, 5, and 6.
[14] Petitioner SI's Answer to Interrogatory No. 7.

6

thereafter assumed responsibility for these tasks from May 1, 2008, until the end of the audit period.

Petitioner SI, in the responses to Staff's Interrogatory No. 1, stated that Petitioner Isba was the sole owner, officer, or manager through May 1, 2008. Petitioner Isba signed Petitioner SI's 2006 Texas Franchise Tax Public Information Report (PIR) as president of Sanadco.[15] The PIR is dated May 10, 2006. Although Petitioner SI's 2008 PIR identified Petitioner Isba as the corporate president, the form is signed by a Mike Isba.[16] The PIR is dated March 13, 2008. The 2009 PIR identifies Petitioner Isba as the president, but it bears the signature Isba, without a given name.[17] The PIR is dated February 26, 2009.

On April 1, 2011, Staff issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax. The overall error rate for Petitioner SI was 66.45%, which was calculated by dividing the tax assessed by the sum of the tax reported and assessed.[18] Petitioner SI timely requested redetermination.

Staff also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007, through June 30, 2009.[19] The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax. Petitioner Isba timely requested redetermination.

Both Petitioners SI and Isba contested their assessments on the same grounds:

1.     The imposition of additional fraud penalties should be deleted because Petitioner provided substantial records, and the underpayment was not the result of fraud or a knowing or willful intent to evade taxes;

---

[15]  Staff's Exhibit 4 (Petitioner Isba).
[16]  *Id.*
[17]  *Id.*
[18]  Petitioner SI's Penalty and Interest Waiver Worksheet.
[19]  Staff's Exhibit 1 (Petitioner Isba). Texas Notification of Personal Liability.

7

2. The auditor was not authorized to engage in estimating procedures because Petitioner maintained the required records, and the available records were not inadequate;

3. The auditor's exclusive use of HB 11 information and estimated markups to determine the tax liability for beer and cigarettes, when Petitioner had documentation regarding the actual purchases and markups, was improper;

4. The auditor's calculations regarding markups were well beyond national averages and those contemplated under AP 122;

5. The imposition of additional penalties for the jeopardy determination was flawed, because the statute authorizing such penalties is unconstitutionally vague for its failure to establish guidelines for its imposition;

6. The audit should be revised to exclude previously audited inventory;

7. The audit is void as unenforceable because it was based on audit procedures that constitute invalid rules; and

8. The subject audit overlaps a previous final audit, consisting of a BART exam for the period January 1, 2008, through March 31, 2009.

## D. Analysis and Recommendation

### 1. SOAH Docket No. 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.2626 (Petitioner SI)

When records are inadequate to reflect the taxpayer's business operations, the Comptroller is authorized to estimate a taxpayer's liability based on the best information available. Tex. Tax Code Ann. § 111.0042(d). An estimated audit was appropriate in this case because Petitioner SI did not have complete records. The Comptroller has held that estimated audits based on HB 11 vendor records and AP 122 procedures meet the best information available requirement when taxpayer records are incomplete or unreliable. *See* Comptroller's Decision No. 103,892 (2011). The evidence that Staff submitted establishes that the audit was based on the best information available and that established audit procedures were followed. Consequently, the audit is entitled to a presumption of correctness. Petitioners, therefore, bear the burden of proof to show by a preponderance of the evidence that the audit results are incorrect. 34 Tex. Admin. Code § 1.40(2)(B).

8

Several of the contentions are based on Petitioners' claim that there were sufficient records available for the auditor to perform an audit without relying on HB 11 data and the AP 122 estimating procedures. The audit work papers do not support Petitioners' assertion that records were provided to the auditor. The auditor issued letters (dated October 22, 2009, and July 28, 2010) requesting the records required to conduct the audit, including purchase invoices and sales records, but there was no response.[20] The failure to produce records is also referenced in the Notification of Estimation and 60-day letter issued by the auditor.[21] Moreover, Petitioner during the SOAH contested case hearing did not offer any of the records it claimed it had available.

Petitioners also asserted that the markup percentages used by the auditor exceeded the national averages and those contemplated by AP 122. The auditor used the markup percentage of 124.07% designated in AP 122 for alcohol purchases.[22] AP 122 expressly provides that the average convenience store markup percentage of 124.07% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The same provision applies for tobacco products. The markup percentage of 118.02% assigned to 2007 is to be used for subsequent years until new markup percentages are available. The auditor, instead, used the markup percentage of 118.44% that is reserved for 2006.[23] No explanation was found in the audit work papers or in Staff's pleadings for deviating from this directive. Consequently, the ALJ finds that the auditor erred and recommends that the correct markup percentage of 118.02% should be used in marking up the tobacco purchases to calculate estimated tobacco sales. The application of the correct markup percentage will have only a minor effect on the calculation of the estimated tobacco sales. The adjusted estimated tobacco sales total $100,550.67 versus the $100,908.51 resulting from the markup of 118.44%. The ALJ calculated that the application of the correct markup percentage for tobacco products would reduce the assessment of tax from $64,336.90 to approximately $64,305.00.

[20] Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibits II and III.
[21] Staff's Exhibit 1 (Petitioner SI), Sixty-Day Letter and Staff's Exhibit 4 (Petitioner SI), Audit Report, Exhibit L
[22] Staff's Exhibit 4 (Petitioner SI), Exam 20B.
[23] Id.

9

Next Petitioners assert that the audit assessment should be disregarded because it is based on invalid estimating procedures. Petitioners rely on the appellate court's recent decision in *Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013. However, any precedential value placed on the decision is premature, as the decision has not become final. Appellee has filed motions for *en banc* reconsideration and for rehearing. The court has yet to rule on the motions. The appellate court's decision becomes final when the court's plenary power expires. *See Oscar Renda Contracting, Inc. v. H&S Supply Co.*, 195 S.W. 3d 772 (Tex. App.–Waco 2006, pet. denied). And the court will lose plenary power 30 days after the court overrules the motion for rehearing and *en banc* reconsideration. Tex. R. App. P. 19.1(b).

Petitioners also contend that the subject audit should be restricted to the report periods that fall outside of the BART exam period of January 1, 2008, through March 31, 2009. Thus, according to Petitioners, the audit assessment should be restricted to the report periods February 1, 2007, through December 31, 2007, and April 1, 2009, through June 30, 2009. Petitioners, in effect, are arguing that Staff is estopped from rearguing the liability due during the period previously examined by BART. However, a party seeking to assert the bar of collateral estoppel must establish that: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994), *citations omitted;* and *Also see* Comptroller's Decision No. 100,190 (2012).

The BART exam of Petitioner SI's convenience store differs in several significant ways from the subsequent sales and use tax audit of the same convenience store. As the BART exam focused exclusively on Petitioner SI's alcohol and tobacco sales and purchases, no product-mix percentage was applied. However, a product-mix percentage was needed when Petitioner SI was subsequently audited for sales of other products such as candy, soft drinks, food and general merchandise. In addition Petitioner SI was afforded a 5% allowance for spoilage and theft in the sales and use tax audit. The same facts were not essential to the judgment in each contested tax case. Thus, the Comptroller was not estopped by the results of the BART exam from subsequently performing a sales and use tax audit of the same taxpayer, especially since the

10

taxable sales determined in the BART exam were deleted from the calculation of additional taxable sales in the sales and use tax audit. *See* Comptroller's Decision Nos. 107,579 (2013) and 104,445 and 105,726 (2012).

The Comptroller is authorized to assess an additional 50% penalty under Tex. Tax Code Ann. § 111.061(b) if she determines that a taxpayer committed fraud or had the intent to evade tax. Staff has the burden of establishing by clear and convincing evidence that the fraud penalty applies. *See* 34 Tex. Admin. Code § 1.40(1)(B). Clear and convincing evidence is proof that will produce a firm belief or conviction as to the truth of the allegations sought to be established, but which need not be unequivocal or undisputed. *See* Comptroller's Decision No. 37,946 (2000); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam), *on remand*, 441 U.S. 418.

As noted above, the overall error rate for the audit period is 66.45%. The revised overall error rate decreased, almost unperceptively, to 66.44% once the error rate is recalculated using the assessed tax amount of $64,305.[24] In prior Comptroller decisions gross underreporting of taxable sales, defined as an error of 25% or greater, has been found sufficiently indicative of intent to evade the tax to warrant assessment of the fraud penalty, particularly when there were other factors or no plausible explanation. *See, e.g.,* Comptroller's Decision No. 43,248 (2004). Also see Tex. Tax Code Ann. § 111.205(b).

Such gross underreporting, however, is not in and of itself sufficient to justify imposition of the fraud penalty on corporate taxpayers. In the case of corporate taxpayers, the Comptroller recognizes that a corporation is a separate legal entity that is controlled by its officers and directors and that the requisite intent of a corporation is determined from the actions of the officers or directors. When an officer is proven to have been directly involved in the fraudulent activities, the additional penalty against a corporation has been upheld, because a corporate officer's fraudulent actions can be attributed to the corporation. *See* Comptroller's Decision Nos. 105,148 & 104,471 (2011), 44,891 (2005) and 44,528 (2005). The question is to what degree Petitioner Isba, the company's president, was aware or should have been aware of the underreporting of tax. *See* e. g., Comptroller's Decision No. 103,204 and 104,238 (2012).

---

[24] The recalculated formula is assessed tax ($64,305) ÷ sum of the assessed tax and reported tax ($96,790.61).

11

The only substantive evidence in the record directly establishing the extent of Petitioner Isba's involvement in the operation and management of the convenience store, in the preparation and filing of the sales and use tax returns, and remittance of the tax payments during the audit period is found in the answers propounded to Staff's discovery. There also are the five checks remitting payment signed by Petitioner Isba that were proffered by Staff.[25] The ALJ, based solely on the statements made in response to Staff's discovery, finds that Petitioner Isba purchased and paid for the taxable inventory, made the daily deposits, and received the bank statements, signed the sales tax returns, and paid the sales and use taxes. The ALJ, therefore, concludes that Petitioner Isba was involved in, aware of, or should have been aware of the underreporting of sales tax. However, the same information that supports this conclusion expressly limits Petitioner Isba's involvement to the period preceding May 1, 2008, when he entered into an agreement to sell the business and one of the buyers assumed responsibility for performing these tasks. Staff has not addressed or refuted any part of Petitioner SI's responses to its discovery requests, including the statements limiting Petitioner Isba's involvement to the report periods preceding May 1, 2008.

The ALJ concludes that the record is sufficient to establish, by clear and convincing evidence, fraudulent actions on the part of Petitioner Isba that are attributable to the company, but only for the period February 1, 2007, through April 30, 2008. The ALJ therefore recommends that the additional 50% fraud penalty should be dismissed for the period May 1, 2008, through the end of the audit period.

Petitioners also argue that the imposition of additional penalties for jeopardy determination are unconstitutional vague. The ALJ lacks the jurisdiction to consider Petitioner's contention regarding the constitutionality of the jeopardy determination statute. The courts have ruled that the Comptroller lacks jurisdiction to rule on the constitutionality of a statute that she administers. *See Tex. State Bd. of Pharmacy v. Walgreen Tex. Co.*, 520 S.W.2d 845 (Tex. Civ. App.–Austin 1975, writ ref'd n.r.e.). *Also see* Comptroller's Decision No. 105,821 (2013).

---

[25]  Staff's Exhibit 4 (Petitioner Isba).

12

## 2. SOAH Docket No. 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.26 (Petitioner Isba)

Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty, and interest that are due from the corporation. Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the Comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code Ann. § 111.0611(b)(1), (3).

The same facts that the ALJ relied on in recommending imposition of the additional 50% penalty support upholding the assessment of personal liability. First, there was an overall gross underreporting of the tax, which resulted, even after taking into account the adjustment recommended by the ALJ, in an error rate of 66.45%. Moreover, the record establishes that Petitioner Isba was involved in the operation and management of the store and in the signing of the sales and use tax returns and remittance of the tax payments. He ordered and paid for the taxable inventory, deposited the store's receipts, received the bank statements, and signed both the sales tax returns and the checks remitting payments to the Comptroller. However, the evidence establishes this involvement by clear and convincing evidence only for the period February 1, 2007 through, April 30, 2008. This record is sufficient to affirm the personal liability assessment for the period May 1, 2007, through April 30, 2008, and the ALJ recommends that the personal liability assessment should be dismissed for the period May 1, 2008, through June 30, 2009.

## 3. Recommendations

The ALJ recommends that the audit assessment against Petitioner SI should be affirmed, but subject to the recommended adjustments correcting the calculation of estimated tobacco sales

13

and limiting the additional penalty to the period February 1, 2007, through April 30, 2008. In the case of the personal liability assessment against Petitioner Isba, the ALJ recommends that the assessment should be affirmed subject to the recommended adjustment in the underlying corporate assessment and recommended dismissal of the personal liability assessment for the period May 1, 2008, through June 30, 2009.

## III. FINDINGS OF FACT

1.    Sanadco, Inc. (Petitioner SI) operated a convenience store in Fort Worth, Texas, during the audit period February 1, 2007, through June 30, 2009.

2.    Petitioner SI was subjected to a desk audit performed by the Business Activity Research Team (BART) of the Texas Comptroller of Public Accounts (Comptroller) for the exam period of January 1, 2008, through March 31, 2009, and assessed a tax liability of $23,593.60, consisting of tax, the 10% standard penalty, the additional 50% penalty, and accrued interest.

3.    The BART exam was prompted by a comparison of Petitioner SI's alcohol and tobacco purchases for the exam period reported by Petitioner SI's tobacco and alcohol vendors under HB 11.

4.    Wholesalers and distributors of beer, wine, malt liquor, cigarettes, cigars, and tobacco products are required to submit electronic reports, on a monthly basis, to the Comptroller. These electronic reports are required by Tex. Tax Code Ann. §§ 151.462, 154.212, and 155.105, which were enacted as part of Tex. H.B. 11, 80th Leg., R.S. (2007). The vendor records are commonly referred to as HB 11 records.

5.    The HB 11 tobacco and alcohol purchases for the exam period exceeded the reported taxable sales for the same period by $268,056 to $76,976. BART relied on the HB 11 data and the Comptroller's Audit Division Policy Memo (AP) 122 in estimating the assessment.

6.    Petitioner SI did not file a request for redetermination contesting the assessment, consequently, the assessment became final and the sales and use tax delinquency was certified to the Attorney General. The Attorney General filed a lawsuit seeking to collect the delinquency from Petitioner SI and Mahmoud Ahmed Isba (Petitioner Isba). *See Sanadco, Inc. v. Comptroller of Pub. Accounts*, No. 03-11-00462-CV, 2013 Tex. App. LEXIS 12013 (Tex. App. – Austin September 26, 2013, no pet. h.).

7.    Petitioners filed various counterclaims against the State. However, the trial court dismissed Petitioners' counterclaims for lack of jurisdiction, which decision Petitioners appealed. The appeals court sustained Petitioners' claim that the Comptroller's directives

14

in AP 92 and AP 122 were in fact rules and also concluded that the trial court had jurisdiction over Sanadco's claim that AP 92 and AP 122 were invalid rules and that, therefore, the trial court erred in dismissing this counterclaim. *See Sanadco, Inc.*, 2013 Tex. App. LEXIS 12013, at *21-22.

8. Petitioner SI was audited by the Comptroller' Tax Division (Staff) for sales and use tax compliance for the audit period, and the auditor estimated the audit due to incomplete records.

9. Petitioner SI did not respond to the auditor's requests for records. The auditor issued a Notification of Estimation Procedures for State Tax Audit dated January 27, 2011, advising Petitioner SI that the audit would be estimated using HB 11 data, and that the AP 122 procedures would be followed.

10. When the auditor initiated the audit fieldwork, Petitioner SI no longer operated the convenience store. Therefore, the auditor could not perform a shelf test and instead used the industry average markup percentages of 118.44% and 124.07% respectively for tobacco and alcohol purchases set out in AP 122.

11. The auditor totaled the tobacco and alcohol purchases made by Petitioner SI using the HB 11 data for the report periods January 1, 2008, through June 30, 2009. The total alcohol and tobacco purchases were marked up by their respective markup percentages.

12. The standard AP 122 product-mix percentage of 54% for tobacco and alcohol products was applied to arrive at estimated taxable sales, because no purchase records were available.

13. The auditor afforded a 5% allowance for spoilage and theft to determine net estimated taxable sales. Credit was given for reported taxable sales.

14. The resulting adjusted taxable sales were then reduced by the amounts assessed in the BART exam for the report periods January 1, 2008, through March 31, 2009 to arrive at the additional taxable sales.

15. The additional taxable sales were multiplied by the applicable tax rates to determine the tax due for the report periods from January 1, 2008, through June 30 2009.

16. As there was no HB 11 data available for the periods preceding January 1, 2008, the auditor estimated the additional taxable sales for this period by first determining the average monthly net estimated taxable sales for the report periods January 1, 2008, through June 30, 2009. The post-December 31, 2007, total net estimated taxable sales of $728,443.17 were divided by the 18 report periods to arrive at a monthly average of $40,469.06.

15

17. The additional taxable sales for the pre-January 1, 2008, report periods were calculated by reducing the average monthly net estimated taxable sales by the taxable sales reported to the Comptroller.

18. A 5% allowance for spoilage and theft was applied to determine the additional taxable sales.

19. The resulting additional taxable sales were then multiplied by the applicable tax rate to determine the tax due for pre-January 1, 2008, part of the audit period.

20. Petitioner Isba was the president of Petitioner SI.

21. Petitioner Isba signed checks for remitting sales and use tax payments during the audit period.

22. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007, through April 30, 2008.

23. Petitioner Isba was responsible for depositing the store's sales proceeds from February 27, 2007, through April 30, 2008.

24. Petitioner Isba was responsible for ordering the store's inventory from February 27, 2007, through April 30, 2008.

25. Petitioner Isba was responsible for payment of the store's inventory purchases from February 27, 2007, through April 30, 2008.

26. Petitioner Isba was the person who received the monthly bank statements from February 27, 2007, through April 30, 2008.

27. Petitioner Isba's responsibility for these tasks ended on May 1, 2008, when he entered into an agreement to sell the company to his employees Yassien Siam and Sandra Salazar.

28. Mr. Siam assumed responsibility for these tasks from May 1, 2008, until the end of the audit period.

29. On April 1, 2011, the Staff issued to Petitioner SI a Texas Notification of Audit Results assessing tax, the standard 10% penalty, the additional 50% fraud penalty, and accrued interest, totaling $112,381.02, with $64,336.87 attributable to tax.

30. Petitioner SI timely requested redetermination.

31. Staff also issued a jeopardy determination on March 30, 2011, against Petitioner Isba, pursuant to Tax Code § 111.0611, assessing personal liability for the tax liability of Petitioner SI for the period May 1, 2007, through June 30, 2009.

16

32. The personal liability assessment consisted of tax, the standard 10% penalty, the additional 50% penalty, and accrued interest through the date of notification. The personal liability assessed against Petitioner Isba totaled $95,620.96, with $55,168.87 attributable to tax.

33. Staff referred the cases to the State Office of Administrative Hearings for oral hearings. Staff issued Notices of Hearing that contained a statement of the date, time, and place of the hearings, a statement of the nature of the hearings; a statement of the legal authority and jurisdiction under which the hearings were to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted.

34. The Administrative Law Judge (ALJ) ordered the cases joined.

35. The ALJ convened the hearing on August 12, 2013

36. The ALJ ordered the record closed on November 12, 2013.

37. The correct markup percentage that the auditor should have applied to the tobacco purchases was 118.02%, which AP 122 directs should be used for years following 2007.

38. Applying the corrected markup percentage to the tobacco purchases produced estimated tobacco sales of $100,550.67 (versus the $100,908.51 resulting from a markup of 118.44%).

39. The application of the corrected markup percentage to tobacco purchases reduced the assessment of tax from $64,336.90 to approximately $64,305.

40. The original overall error rate for Petitioner SI's audit was 66.45%.

41. The ALJ has recalculated the error rate using the reduced principal amount of tax due. The recalculated audit error rate is 66.44%, which was calculated by dividing the tax assessed ($64,305) by the sum of the assessed tax and reported tax ($96,790.61).

## IV. CONCLUSIONS OF LAW

1. The Comptroller has jurisdiction over this matter pursuant to Texas Tax Code ch. 111.

2. The State Office of Administrative Hearings has jurisdiction over matters related to the hearing in this matter, including the authority to issue a proposal for decision with findings of fact and conclusions of law pursuant to Texas Government Code ch. 2003.

3. Staff provided proper and timely notice of the hearing pursuant to Texas Government Code ch. 2001.

4.  The Comptroller is authorized to use the best information available to estimate a taxpayer's liability when records are incomplete or unreliable. Tex. Tax Code Ann. § 111.0042(d) and 34 Tex. Admin Code § 3.281(c).

5.  Petitioner SI must show by a preponderance of the evidence that the audit was in error. 34 Tex. Admin. Code § 1.40(2)(B).

6.  The audit of Petitioner SI was performed based on the best information available.

7.  The auditor erred in not using the correct percentage of 118.02% in marking up the tobacco purchases in order to estimate tobacco sales. *See* AP 122.

8.  The calculation of additional taxable sales should be adjusted by using the correct markup percentage of 118.02% in marking up tobacco purchases.

9.  The Comptroller is authorized to impose an additional 50% penalty if the failure to pay tax or file a report when due was a result of fraud or an intent to evade the tax. Tex. Tax Code Ann. § 111.061(b).

10. Staff bears the burden of proof to show by clear and convincing evidence that Petitioner SI acted with intent to evade tax. 34 Tex. Admin. Code § 1.40(1)(B).

11. Petitioner SI had the intent to evade tax required by Tex. Tax Code Ann. § 111.061(b)(1), but only for the report periods February 1, 2007, through April 30, 2008.

12. The record establishes by clear and convincing evidence that the gross underreporting of tax was due to the intent to evade tax and that the imposition of the additional 50% penalty was warranted, but only for the report periods February 1, 2007, through April 30, 2008. Tex. Tax Code Ann. § 111.061(b)(1).

13. The additional 50% penalty should be deleted for the report periods May 1, 2008, through June 30, 2009.

14. The assessment against Petitioner SI should be affirmed except for the adjustments recommended in Conclusions of Law Nos. 8 and 13.

15. Texas Tax Code § 111.0611 imposes personal liability on an officer, manager, or director of a corporation who "as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes." The personal liability is for taxes, penalties, including an additional 50% penalty and interest that are due from the corporation. Tex. Tax Code Ann. §111.0611(a).

16. Actions that indicate a fraudulent scheme or fraudulent plan to evade the payment of taxes include filing, or causing to be filed, a fraudulent tax return or report with the Comptroller on behalf of the business entity, or filing, or causing to be filed, a tax return

18

or report with the Comptroller on behalf of the business entity that contains an intentionally false statement that results in the amount of the tax due exceeding the amount of tax reported by 25% or more. Tex. Tax Code Ann. § 111.0611(b)(1), (3).

17. Staff established that Petitioner Isba was personally liable under Texas Tax Code § 111.0611 for the assessment made against Petitioner SI, but only for the report periods May 1, 2007, through April 30, 2008.

18. The personal liability assessment against Petitioner Isba for report periods May 1, 2008, through June 30, 2009, should be deleted.

19. The assessment against Petitioner Isba should be upheld, subject to the deletion recommended in Conclusion of Law No. 18 and to the adjustment to the underling corporate tax assessment against Petitioner SI recommended in Conclusion of Law No. 8.

Hearing Nos. 106,815 and 107,006

## ORDER OF THE COMPTROLLER

On December 12, 2013, the State Office of Administrative Hearings' Administrative Law Judge (ALJ), Peter Brooks, issued a Proposal for Decision in the above-referenced matters to which Tax Division filed Exceptions on December 17, 2013. The Comptroller has considered the Exceptions and the ALJ's recommendation letter. The Comptroller has determined that the ALJ's Proposal for Decision, except for minor changes to correct typographical or clerical errors, should be adopted without change and this Decision represents the ruling thereon.

The above Decision resulting in Petitioners' liabilities as set out in Attachments A, which are incorporated by reference, is approved and adopted in all respects. The Decision becomes final twenty days after the date Petitioners receive notice of this Decision, and the total sum of the tax, penalty, and interest amounts is due and payable within twenty days thereafter. If such sum is not paid within such time, an additional penalty of ten percent of the taxes due will accrue, and interest will continue to accrue. If either party desires a rehearing, that party must file a motion for rehearing, which must state the grounds for rehearing, no later than twenty days after the date Petitioners receive notice of this Decision. Notice of this Decision is presumed to occur on the third day after the date of this Decision.

Signed on this 16th day of June 2014.

SUSAN COMBS
Texas Comptroller of Public Accounts

by: _____
Martin A. Hubert
Deputy Comptroller

20

00-739

(Rev 9 -96/9)

**TEXAS NOTIFICATION OF HEARINGS RESULTS - Attachment A**

STATEMENT DATE

June 17, 2014

Taxpayer Number
32014145158

Audit Period
2/1/07 THRU 6/30/09

Hearing Number
106815

Type of Tax
Limited Sales, Excise, and Use

## FIGURES WERE AMENDED

|  | STATE | LOCAL | TOTAL |
|---|---|---|---|
| TAX | $48,676.69 | $15,576.62 | $64,253.31 |
| PENALTY | 18,768.89 | 6,006.07 | 24,774.96 |
| INTEREST THRU STATEMENT DATE | 13,787.27 | 4,411.94 | 18,199.21 |
| TOTAL DUE AS OF STATEMENT DATE | $81,232.85 | $25,994.63 | $107,227.48 |

Additional 50% Penalty is waived per the Proposal for Decision. Interest will continue to accrue at $ 7.48 per day after 6/17/14 through the date of payment.

A 10% penalty will be assessed on tax still due 43 days after the Order of the Comptroller (TEX. TAX CODE ANN. SEC. 111.0081 (c).

For payment information call 1-800-531-5441, ext. 3-3900 toll free nationwide, or call 512/483-3900.

Make your check payable to STATE COMPTROLLER and mail to Comptroller of Public Accounts, 111 E. 17th Street, Austin, Texas 78774-0100.

* Per annum interest rates are subject to change on January 1st of each year. For more interest rate information, refer to Publication 98-304, call 1-877-447-2834, or refer to http://www.window.state.tx.us/taxinfo/int_rate.html

(Cut And Return Bottom Portion With Payment)

00-240

TEXAS NOTIFICATION OF HEARING RESULTS
- Attachment A

Hearing Number
106815

STATEMENT DATE
June 17, 2014

Type of Tax
Limited Sales, Excise, and Use

Taxpayer Name & Mailing Address
SANADCO, INC.
3801 E ROSEDALE ST
FORT WORTH TX 76105-1732

Amount of Your Payment

\*PMD_____

| *Tcode | *Taxpayer Number | *Period | *Audit | *Type | *State Amount | *Type | *Local Amount |
|---|---|---|---|---|---|---|---|
| 26040 | 32014145158 | 0906 | 001 | 02 | 81232.85 | 04 | 25994.63 |

00-739

(Rev 9 -96/9)

TEXAS NOTIFICATION OF HEARINGS RESULTS - Attachment A

STATEMENT DATE
June 25, 2014

| Taxpayer Number | 0804 | Audit Period | Hearing Number |
| 3-20-1110514-8 | | 5/1/2007 THRU 4/30/2008 | 107,006 |

Type of Tax
[ SALES, EXCISE AND USE ]

FIGURES WERE [ UPHELD ]

| | STATE | LOCAL | TOTAL |
|---|---|---|---|
| TAX | $20,863.58 | $6,676.38 | $27,539.96 |
| PENALTY | $12,518.14 | $4,005.82 | $16,523.96 |
| INTEREST THRU STATEMENT DATE | $6,617.77 | $2,117.70 | $8,735.47 |
| | | | |
| TOTAL DUE AS OF STATEMENT DATE | $39,999.49 | $12,799.90 | $52,799.39 |

This notice reflects the total amount due. Payments made by Sanadco, Inc. will be credited when they become available. You will need to contact Revenue Accounting/Successor Liability at (800) 531-5441 or locally at (512) 463-4560 for questions on updated statements.

(Interest will continue to accrue at [ $3.21 ] per day after [ June 25, 2014 ] through the date of payment. * )

A 10% penalty will be assessed on tax still due 43 days after the Order of the Comptroller (TEX. TAX CODE ANN. SEC. 111.0081 (c).

For payment Information call 1-800-531-5441, ext. 3-3900 toll free nationwide, or call 512/463-3900.

Make your check payable to STATE COMPTROLLER and mail to Comptroller of Public Accounts, 111 E. 17th Street, Austin, Texas 78774-0100.

* Per annum interest rates are subject to change on January 1st of each year. For more interest rate Information, refer to Publication 98-304, call 1-877-447-2834, or refer to http://www.window.state.tx.us/taxinfo/int_rate.html

(Cut And Return Bottom Portion With Payment)

---

00-240
TEXAS NOTIFICATION OF HEARING RESULTS
- Attachment A

Hearing Number
107,006

STATEMENT DATE
June 25, 2014

Type of Tax
[ SALES, EXCISE AND USE ]

Taxpayer Name & Mailing Address
MAHMOUD AHMED ISBA
1631 E. VICKERY BLVD
FORT WORTH TX 76104-3853

Amount of Your Payment
_____

*PMD_____

| *Tcode | *Taxpayer Number | *Period | *Audit | *Type | *State Amount | *Type | *Local Amount |
|---|---|---|---|---|---|---|---|
| 26040 | 3-20-1110514-8 | 0804 | 003 | 02 | $39,999.49 | 04 | $12,799.90 |

# Tab G

Appellants' Post-Submission Letter Brief
Sanadco I, No. 03-11-00462-CV
Third Court of Appeals.



**Law Office
Of
Samuel T. Jackson**

Mail: P.O. Box 170633; Arlington, TX 76003-0633
(817) 751-7155 ~ (214) 628-0977 ~ (512) 692-6260
Toll Free: (800) 969-5023 ~ Fax: (866) 374-0164

3/13/2012

Hon. Jeffrey D. Kyle, Clerk
Third Court of Appeals
PO Box 12547
Austin TX 78711

RE:   No. 03-11-00462-CV; In re Sanadco Inc., and Mahmaud A. Isba;
      Panel: Justices Puryear, Henson and Goodwin;
      Post-Submission Letter Brief

To the Honorable Clerk of the Court of Appeals:

Enclosed is the letter brief approved for filing by the court on February 24, 2012. Please accept my apologies for the delay in filing this document, as I was not made aware of the necessity of filing a separate copy until recently.

Respectfully submitted,

*Law Office of Samuel T. Jackson*

P.O. Box 170633
Arlington, TX 76017
Tel: (817) 751-7155
Fax: (866) 374-0164
jacksonlaw@hotmail.com

By:_____
Samuel T. Jackson
State Bar No. 10495700
Attorney for Taxpayer



**Law Office
Of
Samuel T. Jackson**

Mail: P.O. Box 170633; Arlington, TX 76003-0633
(817) 751-7155 ~ (214) 628-0977 ~ (512) 692-6260
Toll Free: (800) 969-5023 ~ Fax: (866) 374-0164

3/13/2012

Hon. Jeffrey D. Kyle, Clerk
Third Court of Appeals
PO Box 12547
Austin TX 78711

RE:    No. 03-11-00462-CV; In re Sanadco Inc., and Mahmaud A. Isba;
       Panel: Justices Puryear, Henson and Goodwin;
       Post-Submission Letter Brief

To the Honorable Court of Appeals Panel:

This letter brief is in response to a question raised by the Honorable Justice Puryear during the submission of this case on January 11, 2012 in which he inquired of the effect the finality of the administrative hearing has on the rights of Appellants, Sanadco Inc., and Mahmaud Isba (hereinafter, "Sanadco"), as well as the class claimants, to raise defenses and counterclaims in this cause.

## Background

The Comptroller issued a *Texas Notification of Exam Results* to Sanadco, Inc. on July 2, 2010, assessing additional taxes due of $23, 593.60, including taxes, penalties and interest through the date of the notice. Sanadco was advised that this assessment would become final on July 22, 2009, "unless you request a redetermination hearing by this date." Sanadco was further advised that this assessment was not due to an audit but was an estimation of taxes due based on an estimate conducted as a BART HB 11 Distributor Data Assignment based on third-party information. Sanadco did not request a redetermination hearing and the assessment became final on July 22, 2009.

On July 6, 2010, the Office of the Attorney General filed suit against Sanadco pursuant to Tax Code § 111.010[1] by which he is authorized to recover delinquent taxes on

---

[1] § 111.010 TAX. Suit to Recover Taxes
(a) The attorney general shall bring suit in the name of the state to recover delinquent state taxes, tax penalties, and interest owed to the state.
(b) This section applies to state taxes imposed by this title or by other laws not included in this title but does not apply to the state ad valorem tax on property.

behalf of the state by filing suit in Travis County. It should be noted, however, that each class complainant was currently engaged in contested case proceedings seeking a final decision from the Comptroller, and no final determination had been made regarding the taxes due.

Sanadco filed its suit in avoidance of the state's attempt to collect the delinquent taxes, pursuant to Tax Code § 111.1012[2] on September 23, 2010 and its First Amended Answer, alleging affirmative defenses and class action cross-claims on January 12, 2011. Appellants filed a sworn written denial specifically identifying the taxes, penalties, and interest they asserted were not due and the amounts of tax, penalties, and interest that were not due as required by Tax Code § 111.013 (b)[3].

On March 30, 2011, the Comptroller notified Mahmaud Isba that he was being held personally liable for Sanadco's tax liability for the period May 30, 2007 through June 30, 2009 in the amount of $95,620.96, significantly more than Sanadco's liability, and without subjecting this determination to any contested administrative proceeding or other administrative process.

## Issues Presented

**(1) Did the final judgment in the administrative proceeding preclude Sanadco from raising affirmative defenses or counter-claims in the tax recovery proceedings?**

Defendants have challenged the validity of the audit and the constitutionality of the statutes relevant to the audit as well as the Comptroller's authority to conduct the audit by the chosen methodology as well as other ultra vires conduct. In addition, Defendants have raised a challenge to the validity of rules implicated in the conduct of the audit, alleging that the Comptroller failed to properly adopt them in accordance with the APA.

Sanadco's right to raise these claims and defenses in District Court despite the Comptroller's unappealed final decision is unequivocal. *Texas v. Crockett,* 257 S.W.3d 412, 414 (Tex.App.—Corpus Christi 2008) addresses the State's posture when it sues to recover damages as in this suit to recover delinquent taxes:

---

(c) Venue for and jurisdiction of a suit arising under this section is exclusively conferred upon the district courts of Travis County.
(d) The state is entitled to interest at the rate of 10 percent a year on the amount of a judgment for the state beginning on the day the judgment is signed and ending on the day the judgment is satisfied.

[2] § 111.0102 TAX: Suit Challenging Collection Action
Venue for and jurisdiction of a suit that challenges or is for the purpose of avoiding a comptroller collection action or state tax lien in any manner is exclusively conferred on the district courts of Travis County.

[3] § 111.013 TAX Evidence: Tax Claims
(b) The defendant may not deny a claim for taxes, penalties, or interest unless the defendant timely files a sworn written denial that specifically identifies the taxes, penalties, and interest the defendant asserts are not due and the amounts of tax, penalties, and interest that are not due.

-2- | Page

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

"In *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006), the Texas Supreme Court iterated that when a governmental entity files a lawsuit for damages against a private party, it is not immune from suit for claims against it that are "germane to, connected with, and properly defensive to" claims that the entity asserts, except for the amounts that exceed the amounts necessary to offset the governmental entity's claim. *Id.* at 376-77. In *Reata*, the court explained:

> When the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. . . . In this situation, we believe that it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.
> *Id.* at 375-76."

The Defendants' claims unquestionably meet these criteria, and therefore may not be dismissed on immunity grounds and are properly before the District Court.

Further, in suits filed pursuant to Tex. Tax Code Ann. §111.010, officers and directors are entitled to a full and complete hearing on their tax liability in district court. *See* Tex. Tax Code Ann. § 111.010 (West 2008) (authorizing attorney general to file suit to recover taxes). The case is tried de novo. *Greene v. State*, 324 S.W.3d 276, 288 (Tex.App.-Austin 2010, no pet.) (111.010 allows for a de novo review of the party's tax liability), *Herrera v. State*, No. 03-01-00101-CV, 2002 WL 185476, at *1 n. 4, 2002 Tex.App.-Austin Feb. 7, 2002, no pet.) (not designated for publication) (identifying suit under section 111.010 as "de novo action by the State to collect delinquent tax").

The Administrative Procedure Act (APA) provides that when "the manner of review authorized by law for the decision in a contested case ... is by trial de novo, the reviewing court shall try each issue of fact and law ... as though there had not been an intervening agency action or decision." Tex. Gov't Code Ann. § 2001.173(a) (West 2000). A de novo hearing has been defined as "a new and independent action in which the whole case is gone into as if no trial whatever had been had in the court below." Trial de novo is not an "appeal", but is a new and independent action. *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961).

The sine qua non of a de novo trial is the nullification of the judgment or order of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment or order of the first tribunal is not merely suspended, but is nullified. *Texas Dept. of Public Safety v. Banks Transp. Co.*, 427 S.W.2d 593, (Tex.Sup. 1968); *Southern Canal Co. v. State Bd. of Water Engineers*, 318 S.W.2d 619; 159 Tex. 227 (Tex. 1958). Accordingly, "res judicata" and "final judgment" are inapplicable in de novo proceedings because the original administrative order that is the subject of appeal is nullified in a de novo proceeding. *State Bd. of Ins. v. Republic Nat'l Ins. Co.*, 384 S.W.2d 369, 372 (Tex.Civ.App. — Austin 1964, writ ref'd n.r.e.). Thus, each of the issues raised in the cause before the District Court may be addressed by the court without consideration of the finality of the administrative judgments.

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

**(2)  Did the final judgment in the administrative proceeding preclude the class litigants from raising affirmative defenses or counter-claims not addressed in the administrative proceedings?**

Aside from the Sanadco audit, the remaining class issues are independent of the contested case proceedings in the administrative process. Each claim was filed before the administrative process had been completed, alleging ultra vires conduct and unconstitutionality of statutes under the UDJA, and invalidity of agency rules under the APA—all of which would render the respective audits void. The filing of these complaints prior to completion of the administrative process has no effect on the court's jurisdiction as exhaustion was not required because these claims are not within the Comptroller's exclusive jurisdiction, and independently invoked the District Court's jurisdiction, thereby permitting the court to abate its proceedings pending the exhaustion of administrative remedies. *Lindig v. Johnson City*, 03-08-00574-CV (Tex.App.-Austin 10-21-2009); *Marble Falls Independent School District v. Scott*, 275 S.W.3d 558 (Tex. App.-Austin 2008, pet. denied).

A UDJA claim is sui generis and, all other things being equal, the district court's subject-matter jurisdiction over it exists independently of any administrative remedies. *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945).

If a governmental agency acts beyond its statutory powers, or ultra vires, its actions are void and may be challenged at any time. *Tri-City Fresh Water Supply Dist. No. 2 of Harris Cnty. v. Mann*, 142 S.W.2d 945, 946, 947 (Tex. 1940); see also *Mobil Oil Corp. v. Matagorda County Drainage Dist. No. 3*, 597 S.W.2d 910, 913 (Tex. 1980) (holding that drainage district's attempt to annex lands was beyond its statutory power and therefore null). If a governmental authority's actions are void, the actions can be challenged by affected persons. See *City of Irving v. Callaway*, 363 S.W.2d 832, 834 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.) (quo warranto proceeding necessary where actions are voidable, but quo warranto proceeding not necessary and claim may be brought by private citizens affected by action when annexation ordinance attacked on grounds alleging action void). *Bexar Metro. Water v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex.App. -Austin 2005).

The general rule in Texas is that courts do not interfere with the statutorily conferred duties and functions of an administrative agency. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). However, courts may intervene in administrative proceedings when an agency exercises authority beyond its statutorily conferred powers. Id. See also *City of Houston v. Williams*, 99 S.W.3d 709, 717 (Tex.App.-Houston [14th Dist.] 2003, no pet.). "In such a case, the purposes underlying the exhaustion of remedies rule are not applicable, judicial and administrative efficacies are not served, and agency polices and expertise is irrelevant if the agency's final action will be a nullity." *MAG-T, L.P.*, 161 S.W.3d at 625.

Further, the doctrine has no application where the legal question is one of whether a statute is constitutional, because administrative agencies have no power to determine the constitutionality of statutes. *Id.; see Texas Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist.*,

*830 S.W.2d 88, 90-91 (Tex. 1992).* Accordingly, there is no sound reason for forcing a litigant through the administrative process when in good faith he is advancing a substantial complaint that the statute that he is charged with violating is unconstitutional. *Grounds,* 707 S.W.2d at 892. In other words, "When the only issue raised is constitutionally of the statute, *a court may decide it without waiting for an administrative proceeding.*" 4 K. Davis, *Administrative Law Treatise* 435 (2nd Ed. 1983) (emphasis added); *see Cent. Power & Light Co. v. Sharp,* 960 S.W.2d 617, 618 (Tex. 1997).

With respect to the challenge of the agency rules, the administrative proceedings present no barrier to the District Court's jurisdiction because the Comptroller has determined that she has no jurisdiction over the issue and declined to address it. Comptroller's Decision Nos. 103,683; 103,961 (2011) and 104,277 (2012).

Additionally, "[t]he APA provides two modes of judicial review — one for contested case decisions and the other for rules — that are significantly different. The only time limitation on judicial review of a rule is that a proceeding to contest compliance with certain procedural requirements must be initiated within two years of the rule's effective date. Otherwise, judicial review of a rule may be sought at any time. ... The APA does not restrict the scope of judicial review of rules but says only: The validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff. No standard of review is prescribed. The statute adds that plaintiff need not have challenged the rule before the agency. Judicial review of rules is thus largely unlimited in time and scope." *Railroad Comm'n v. WBD Oil & Gas Co.,* 104 S.W.3d 69, 75 (Tex. 2003).

### (3).  Is the Comptroller authorized to estimate audits under Tax Code §111.0042?

The Appellants have briefed and argued its contention that the Comptroller is not authorized to estimate audits performed pursuant to § 111.0042. At oral argument, Appellants cited two statutes establishing the circumstances under which the Comptroller is authorized to estimate audits which were not included in the briefs. Tex. Tax Code Ann. § 151.501[4] directs the determination of taxes due when the taxpayer has filed a sales tax report. It instructs the Comptroller to issue a determination under §111.008 which authorizes a determination under § 111.0042 which only authorizes detailed and sample and projection audits. The only circumstance under which the Comptroller is authorized to estimate an audit is when the taxpayer fails to file a report. Tex. Tax. Code Ann. § 151.503[5].

---

[4]§ 151.501 TAX. Determination After the Filing of a Report
If a person has filed a tax report, the comptroller may issue a deficiency determination under Section 111.008 of this code.

[5] § 151.503 TAX. Determination if No Report Filed
(a) If a person fails to file a report, the comptroller shall estimate the amount of receipts of the person subject to the sales tax, the amount of total sales prices of taxable items sold, leased, or rented by the person to another for storage, use, or consumption in this state, and the total sales prices of taxable items acquired by the person for storage, use,

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

The statute provides, in pertinent part, "If a person fails to file a report, the comptroller shall estimate the amount of receipts of the person subject to the sales tax . . . ." By specifying failure to file a report under which estimation is permitted, the Legislature in effect expressed its intention to exclude all other circumstances. It is a general rule of statutory construction that the express mention or enumeration of one person or thing or consequence is tantamount to an express exclusion of all others. *Foshee Refining Co. v. State et al.*, 73 S.W.2d 1098, 1100.

The maxim, Expressio unius est exclusio alterius (the naming of one thing excludes another) is applicable here. It has often been applied in determining the powers which have been or have not been delegated by the Legislature to administrative boards, commissions, licensing authorities and others. Commercial Standard Ins. Co. v. Board of Ins. Commissioners, 34 S.W.2d 343 (Tex.Civ.App.); Foshee Refining Co. v. State, 73 S.W.2d 1098, 1100 (Tex.Civ.App.); State v. Mapel, 61 S.W.2d 149, 152 (Tex.Civ.App.); State v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W.2d 238; Ex Parte Halsted, 147 Tex.Crim. R., 182 S.W.2d 479, 484; Harris County v. Crooker, 112 Tex. 450, 248 S.W. 652, 655; Huntress v. State, 88 S.W.2d 636, 643 (Tex.Civ.App.); McCamey v. Hollister Oil Co., Tex.Civ.App., 241 S.W. 689 (aff. by 115 Tex. 49, 274 S.W. 562); Clark v. Briscoe Irr. Co., 200 S.W.2d 674, 682.

Accordingly, the Legislature has expressly excluded cases in which a sales tax report has been from an estimated audit, and this court should so hold.

### Conclusion

It is therefore apparent that the District Court *must* permit Sanadco to pursue its claims and defenses in this proceeding because Reata requires it since the State has brought its action seeking the recovery of damages. Because the standard of review is de novo, the District Court proceeding is a new and independent action, and the original administrative order that is the subject of appeal is nullified. Accordingly, there is no final judgment upon which to base a judgment of res judicata or otherwise conflict with the District Court's jurisdiction.

The independent claims raised by the class claimants are pursued under the UDJA or Gov't Code § 2001.038 by which the District Court obtains jurisdiction outside the purview of the administrative contested case proceeding. Whether or not the administrative order ostensibly resolved the issue, the District Court would proceed de novo as though no judgment had been entered. The ultra vires claims presume that the state agency acted

---

or consumption without the payment of the use tax to a retailer for each period or the total period for which the person failed to report as required by this chapter.

(b) The estimate required by Subsection (a) of this section may be made on any information available to the comptroller.

(c) On the basis of the estimate, the comptroller shall compute and determine the amount required to be paid to the state for each period.

(d) The comptroller shall add to the determination an amount equal to 10 percent of the amount computed under Subsection (c) of this section as a penalty.

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

outside its statutory authority, thereby invalidating the audits, which may be challenged independent of the administrative proceedings under the UDJA.

Likewise, the rules challenges may be pursued independent of the administrative proceedings because the Comptroller presumed that it did not have jurisdiction and therefore refused to rule on the issue. The District Court takes jurisdiction, therefore, without the indicia of an administrative ruling pursuant to 2001.038, uninhibited by restrictions of neither time nor scope.

Respectfully submitted,

*Law Office of Samuel T. Jackson*

P.O. Box 170633
Arlington, TX 76017
Tel: (817) 751-7155
Fax: (866) 374-0164
jacksonlaw@hotmail.com

By:_____
Samuel T. Jackson
State Bar No. 10495700
Attorney for Relators

cc:     Jack Hohengarten, Assistant Attorney General

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

outside its statutory authority, thereby invalidating the audits, which may be challenged independent of the administrative proceedings under the UDJA.

Likewise, the rules challenges may be pursued independent of the administrative proceedings because the Comptroller presumed that it did not have jurisdiction and therefore refused to rule on the issue. The District Court takes jurisdiction, therefore, without the indicia of an administrative ruling pursuant to 2001.038, uninhibited by restrictions of neither time nor scope.

Respectfully submitted,

*Law Office of Samuel T. Jackson*

P.O. Box 170633
Arlington, TX 76017
Tel: (817) 751-7155
Fax: (866) 374-0164
jacksonlaw@hotmail.com

By: _____
Samuel T. Jackson
State Bar No. 10495700
Attorney for Relators


cc:    Jack Hohengarten, Assistant Attorney General

Letter Brief; In re Sanadco Inc., and Mahmaud A. Isba; No. 03-11-00462-CV

# Tab H

State Officials' Response to Appellants' Post-Submission Brief
Sanadco I, No. 03-11-00462-CV
Third Court of Appeals.

# NO. 03-11-00462-CV

## In the Court of Appeals
## for the Third Judicial District
## Austin, Texas

---

SANADCO INC., A TEXAS CORPORATION, AND MAHMOUD A. ISBA, A/K/A MAHMOUD
AHMED ABUISBA, A/K/A MIKE ISBA, INDIVIDUALLY,
*Appellants,*

v.

SUSAN COMBS, INDIVIDUALLY, AND IN HER OFFICIAL CAPACITY AS
COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS; AND
GREG ABBOTT IN HIS OFFICIAL CAPACITY, ET AL.,
*Appellees.*

---

On Appeal from the 98th Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-GV-10-000902;
The Honorable Tim Sulak, Judge Presiding

---

## STATE OFFICIALS' RESPONSE TO APPELLANTS'
## POST-SUBMISSION BRIEF

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JEFF M. GRAHAM
Chief, Financial and Tax Litigation

JACK HOHENGARTEN
Assistant Attorney General
Financial and Tax Litigation Division
State Bar No. 09812200
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-3503
Fax: (512) 477-2348
jack.hohengarten@oag.state.tx.us
*Counsel for Appellees*

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ............................................................. ii

INDEX OF AUTHORITIES ........................................................ iii

I.    SUMMARY OF ARGUMENT ...................................... 2

II.    ARGUMENTS AND AUTHORITIES ............................... 2

    A.    The State's filing suit against Sanadco for tax collection waives sovereign immunity only for defensive counterclaims operating as an offset .................................................... 2

    B.    The waiver of immunity in APA section 2001.171 does not apply, because the legislature has set out a specialized procedure for tax protest suits ................................................. 4

    C.    The ultra vires claim relating to Tax Code section 111.0042 and HB 11 was disposed of by summary judgment and is not before this court; alternatively, the Comptroller did not exceed her statutory authority ............................................. 7

CONCLUSION ................................................................. 10

CERTIFICATE OF SERVICE ................................................... 11

# INDEX OF AUTHORITIES

**STATE CASES**           **PAGE**

*Central Power & Light Co. v. Sharp,*
919 S.W.2d 485 (Tex. App.–Austin 1996, writ denied) . . . . . . . . . . . . . . . . . . . . 5

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Combs v. Chevron,*
319 S.W.3d 836 (Tex. App.–Austin 2010, pet. denied) . . . . . . . . . . . . . . . . . . . 5

*County of Bexar v. Bruton,*
256 S.W.3d 345 (Tex. App.– San Antonio 2008, no pet.) . . . . . . . . . . . . . . . . . . 7

*Dubai Petroleum v. Kazi,*
12 S.W.3d 71 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re: Nestle USA, Inc.,*
359 S.W.3d 207 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*R Communications v. Sharp,*
875 S.W.2d 314 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Reata Constr. Corp. v. City of Dallas,*
197 S.W.3d 371 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Scott v. Presidio Indep. Sch. Dist.,*
266 S.W.3d 531 (Tex. App.– Austin 2008, pet. filed) . . . . . . . . . . . . . . . . . . . . 7

*Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care,*
145 S.W.3d 170 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tex. Dep't of Transp. v. Crockett,*
257 S.W.3d 412 (Tex. App. — Corpus Christi 2008, pet. denied) . . . . . . . . . . . . 3

## STATE STATUTES

Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (West 2008) ........................ 8

Tex. Gov't Code Ann. § 2001.038 (West 2008) ................................... 4

Tex. Gov't Code Ann. § 2001.171 (West 2008) ............................. 4, 5, 7

Tex. Gov't Code Ann. § 311.034 (West 2005) ................................... 6

Tex. Gov't Code Ann. § 2001.144 (West 2008) .................................. 7

Tex. Tax Code Ann. § 111.0042 (West 2008) ............................... 4, 7, 8

Tex. Tax Code Ann § 111.008 (West 2008) ..................................... 8

Tex. Tax Code Ann § 111.022 (West 2008) ..................................... 8

Tex. Tax Code Ann. § 151.461 (West 2008) .................................... 9

Tex. Tax Code Ann. § 154.212 (West 2008) .................................... 9

Tex. Tax Code Ann. § 155.105 (West 2008) .................................... 9

Tex. Tax Code Ann. §§112.051-.060 (West 2008 & Supp. 2011) ................. 5

Tex. Tax. Code Ann. § 111.009 (West 2008) ................................... 3

Tex. Tax. Code Ann. § 111.010 (West 2008) ................................... 4

Tex. Tax. Code Ann. § 111.0013 (West 2008) .................................. 3

Tex. Tax. Code Ann. § 111.0102 (West 2008) ................................ 3, 4

## OTHER AUTHORITIES

Tex. S. Comm. on Business and Commerce, Bill Analysis,
HB 11, 80th Leg., R.S. (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-9

# NO. 03-11-00462-CV

## In the Court of Appeals
## for the Third Judicial District
## Austin, Texas

SANADCO INC., A TEXAS CORPORATION, AND MAHMOUD A. ISBA, A/K/A MAHMOUD
AHMED ABUISBA, A/K/A MIKE ISBA, INDIVIDUALLY,
*Appellants*,

v.

SUSAN COMBS, INDIVIDUALLY, AND IN HER OFFICIAL CAPACITY AS
COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS; AND
GREG ABBOTT IN HIS OFFICIAL CAPACITY, ET AL.,
*Appellees*.

On Appeal from the 98th Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-GV-10-000902;
The Honorable Tim Sulak, Judge Presiding

## STATE OFFICIALS' RESPONSE TO APPELLANTS'
## POST-SUBMISSION BRIEF

TO THE HONORABLE JUSTICES OF SAID COURT:

Appellees, Susan Combs, Individually and in her Official Capacity as Comptroller of

Public Accounts of the State of Texas, and Greg Abbott in his Official Capacity as Attorney

General of Texas (the "State Officials"), file this response to Sanadco's post-submission

brief.

# I.

## SUMMARY OF ARGUMENT

*First*, although its failure to contest the tax at the administrative level does not prevent Sanadco from asserting properly defensive offset claims in the district court, its claims still must fall within the court's subject-matter jurisdiction. And they must be viable as a matter of law. Sanadco's claims are neither. *Second*, APA section 2001.171 does not provide an alternative basis for jurisdiction here, because the agency's organic law specifically sets out the statutory prerequisites for challenging a determination of tax liability in district court. Application of the APA provisions for judicial review would render meaningless the statutory requirements in the Chapter 112 of the Tax Code. Those requirements serve as legislative safeguards to the fiscal operations of the State and ensure the Comptroller is not unduly hindered in her collection of taxes, penalties and interest. *Third*, the State Officials have already shown, in their initial brief, that the Comptroller's guidelines in AP 92 and AP 122, and her use of desk audits, are expressly authorized by sections 111.0042 and 111.008, and by HB 11.

# II.

## ARGUMENTS AND AUTHORITIES

**A.**    **The State's filing suit against Sanadco for tax collection waives sovereign immunity only for defensive counterclaims operating as an offset.**

Because the State of Texas filed suit against it, Sanadco may assert claims that are "germane to, connected with, and properly defensive to" claims asserted by the State of

2

Texas, except for amounts that exceed the amounts necessary to offset the government's claims. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006); *Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 414 (Tex. App. — Corpus Christi 2008, pet. denied); *see also* Tex. Tax. Code Ann. § 111.0102 (West 2008) (jurisdiction of suit to challenge or avoid comptroller collection action exclusively conferred on Travis County district courts); 111.013 (certificate of tax delinquency is prima facie evidence, requiring sworn denial); Tex. R. Civ. P. 97.

In *Reata*, the Supreme Court stressed the limited nature of the waiver of immunity and the policy considerations underlying it. It explained that when:

> The governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted.

*Reata*, 197 S.W.3d at 375.

To the extent Sanadco's counterclaims for "compensatory relief" exceed this limited waiver, the district court lacks jurisdiction.[1] C.R. 74, 104. For claims that are properly germane and defensive to the State's suit, the Tax Code does not require, as a statutory prerequisite, that the taxpayer first challenge the Comptroller's determination at the administrative level. *See* Tex. Tax. Code Ann. § 111.009 (West 2008) (authorizing taxpayer

---

[1] Sanadco is the only appellant against which the State of Texas has brought claims in district court to collect taxes, penalties and interest.

to administratively petition Comptroller for redetermination of tax liability); 111.010 (authorizing Attorney General to bring suit to recover taxes); 111.0102 (authorizing claims to challenge or avoid collection action.); *compare* Tex. Gov't Code Ann. § 2001.171 (West 2008) (person who has exhausted administrative remedies is entitled to judicial review).

Although failure to contest the tax at the administrative level does not preclude offset claims in the district court, Sanadco's claims still must fall within the court's subject-matter jurisdiction, and they must be legally viable. Sanadco's claims are neither. First, APA section 2001.038 cannot confer jurisdiction, because internal agency memos written by division directors to their auditors are not APA "rules." Second, Sanadco has failed to plead a legally viable claim that the Comptroller engaged in ultra vires acts, warranting relief under the UDJA. *See City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009); *R Communications v. Sharp*, 875 S.W.2d 314, 317 (Tex. 1994). Third, Sanadco has no standing to challenge Tax Code section 111.0042, and any such ruling by the court would amount to an advisory opinion that does not resolve a live controversy. Sanadco's remaining constitutional claims were decided on summary judgment and are not before this court.

**B.    The waiver of immunity in APA section 2001.171 does not apply, because the legislature has set out a specialized procedure for tax protest suits.**

The intervening convenience stores theorize in their post-submission brief that APA section 2001.171, which authorizes judicial review of final agency decisions, provides an alternative basis for jurisdiction here. According to these appellants, once the Comptroller's administrative decisions have become final, they can invoke the APA as grounds for

4

challenging the administrative determination of tax liability.

But APA section 2001.171 does not apply to the Tax Code. The APA provides an independent right to judicial review only where the agency's enabling statute *neither specifically authorizes* nor prohibits judicial review of the decision. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170 (Tex. 2004).

Here, in clear contrast to *Mega Child Care*, the Comptroller's organic law specifically sets out the statutory prerequisites for challenging the Comptroller's determination of tax liability in district court.

The legislature has created a limited waiver of sovereign immunity for tax protest suits, but mandated specific prerequisites which must be satisfied prior to filing suit against the State. *See* Tex. Tax Code Ann. §§112.051-.060 (West 2008 & Supp. 2011).[2] The undisputed jurisdictional facts show that none of the intervening convenience stores have met the statutory prerequisites in sections 112.051 and 112.052. C.R. 28, 59-61 (Affidavit of David Rock). Compliance with the procedural requirements of the tax-protest law is a jurisdictional prerequisite to suit. *See Central Power & Light Co. v. Sharp*, 919 S.W.2d 485, 491 (Tex. App.–Austin 1996, writ denied); *Combs v. Chevron*, 319 S.W.3d 836, 844-45 (Tex. App.–Austin 2010, pet. denied). Further, none of the "counter-plaintiffs" have satisfied the statutory prerequisites for filing a class action under section 112.055 of the Tax

---

[2] Like suits challenging, or in avoidance of, the State's tax collection suit, the statutory prerequisites for filing a tax-protest suit do not require the taxpayer to first contest the tax at the administrative level.

Code. As a result, the trial court lacked jurisdiction over the putative class action as well.

These explicit prerequisites serve as legislative safeguards to the fiscal operations of the State by ensuring that the Comptroller is not unduly hindered in her obligation to collect on final tax assessments. *See R Communications v. Sharp*, 875 S.W.2d 314, 317 (Tex. 1994). The counter-plaintiffs cannot circumvent these safeguards simply by characterizing their claims as APA claims for judicial review. Such an outcome would be contrary to the holding in *Mega Child Care*. More importantly, Sanadco's argument, if accepted by this court, would effectively read out of the Tax Code the statutory prerequisites for bringing a tax-protest suit in district court. The APA procedure for judicial review would swallow and render meaningless those prerequisites—an outcome the legislature could not have intended. *See In re: Nestle USA, Inc.*, 359 S.W.3d 207, 211-12 (Tex. 2012) (holding that statutory prerequisites for taxpayer suits are conditions on the legislative waiver of immunity and dismissing original proceeding for want of jurisdiction).

In 2005, the legislature amended the Code Construction Act to reiterate that statutory prerequisites to suit are both mandatory and jurisdictional. Tex. Gov't Code Ann. § 311.034 (West 2005). The amendment was in response to confusion about which, if any, statutory prerequisites to suit were actually jurisdictional after the Supreme Court's decision in *Dubai Petroleum v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000). Since the amendment to the Code Construction Act, the courts of appeal have considered carefully whether a plaintiff has properly complied with statutory mandates and exhausted administrative remedies where

6

required. *Scott v. Presidio Indep. Sch. Dist.*, 266 S.W.3d 531 (Tex. App.– Austin 2008, pet. filed); *see, e.g.*, *County of Bexar v. Bruton*, 256 S.W.3d 345 (Tex. App.– San Antonio 2008, no pet.).

Sanadco itself never challenged the assessment administratively, so it became final. The State of Texas and other taxing authorities then filed suit against it and Mahmoud A. Isba under Chapter 111 to collect the tax, interest, and statutory penalties. Sanadco, to the extent it relies on APA section 2001.171, tries to have it both ways. It argues, in effect, that the APA judicial review provisions apply, but that the Act's exhaustion-of-remedies requirement does not. *See* Tex. Gov't Code Ann. § 2001.144, 2001.171 (West 2008) (party seeking judicial review must exhaust administrative remedies, including the filing of a motion for rehearing).

## C. The ultra vires claim relating to Tax Code section 111.0042 and HB 11 was disposed of by summary judgment and is not before this court; alternatively, the Comptroller did not exceed her statutory authority.

In its last point, Sanadco simply re-urges arguments relating to Tax Code section 111.0042 that have been fully briefed by the parties. As part of its ultra vires argument, Sanadco contends that the Comptroller has acted outside section 111.0042(b)(2) of the Tax Code, which authorizes audit "sampling" under certain circumstances. According to Sanadco, both the guidelines in AP 92 and AP 122 and the use of abbreviated, or "desk,"audits exceed the limitations in that section. This issue, however, was resolved by summary judgment and is therefore not before the court. C.R. 28, 49-50, 128. In their brief

7

in support of plea to the jurisdiction and motion for summary judgment, the State Officials explicitly argued that:

> Because the collection and use of HB 11 data is specifically authorized by the Legislature, collection and use of the data by the Comptroller cannot be an ultra vires act. Ultra vires acts are acts beyond the statutory authority granted to state officials. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-73 (Tex. 2009). *As a matter of law, when the Legislature specifically grants a state official the power to perform an act, that act, by definition, cannot be outside the official's statutory authority.* C.R. 50 (emphasis added).

Section 51.014 of the Civil Practice and Remedies Code authorizes interlocutory appeal of an order granting or denying a plea to the jurisdiction. It does not authorize an interlocutory appeal of the trial court's summary judgment.

Even though the issue is not before the court, the State Officials have also shown in their initial brief that the desk audits, as well as the guidelines in AP 92 and AP 122, are entirely consistent with section 111.0042 and HB 11.

They have also pointed out that the Tax Code expressly authorizes the Comptroller to make an estimated assessment when taxpayers fail to file a return or when the filed return is incorrect. Tex. Tax Code Ann § 111.008, 111.022 (West 2008). Subsection 111.008(a), in particular, expressly provides that:

> If the comptroller is not satisfied with a tax report or the amount of the tax required to be paid to the state by a person, the comptroller may compute and determine the amount of tax to be paid from information contained in the report *or from any other information available to the comptroller.* (emphasis added).

8

Thus, the Comptroller is expressly empowered to calculate the amount of tax due by examining *any* information available to her.

Further, the legislature has expressly authorized the Comptroller to collect and use wholesaler reports of beer, wine, malt liquor, cigar, and tobacco product sales to convenience stores. Tex. Tax Code Ann. § 151.461 (formerly § 151.433) (beer, wine, and malt liquor reports), 154.212 (cigarette reports), and 155.105 (cigars and tobacco product reports). As the legislative history for HB 11 shows, these reports are intended to enable the Comptroller to cross-check a convenience store's reports or returns with wholesaler records of sales to that store. Tex. S. Comm. on Business and Commerce, Bill Analysis, HB 11, 80th Leg., R.S. (2007).[3]

Where the cross-check indicates a discrepancy—usually in the form of substantial under-reporting of taxable sales by the convenience store, as was the case with Sanadco—section 111.008 authorizes the Comptroller to compute the amount actually owed. The convenience store owners, in response, baldly theorize that while HB 11 requires wholesaler reporting to the Comptroller, it does not authorize the agency *to use* that data. This contention, however, is undermined by the statutory language itself.[4]

---

[3] The bill analysis is included in the appendix, at Tab 2, to the State Officials' initial brief.

[4] Sections 151.433(b), 154.212(a) and155.105(a) of the Tax Code are included in the appendix, at Tab 1, to the State Officials' initial brief.

9

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the State Officials request that this court affirm the trial court's order granting their plea to the jurisdiction.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JEFF GRAHAM
Chief, Financial and Tax Litigation Division


/s/ *Jack Hohengarten*
JACK HOHENGARTEN
State Bar No. 09812200
Assistant Attorney General
Financial and Tax Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
TEL: (512) 475-3503
FAX: (512) 477-2348
jack.hohengarten@texasattorneygeneral.gov
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2012, a true and correct copy of the foregoing document, **State Officials' Response to Appellants' Post-Submission Brief,** was sent by electronic filing with the Court and counsel of record to the following:

Samuel T. Jackson
LAW OFFICE OF SAMUEL JACKSON
P.O. Box 170633
Arlington, Texas  76003-0633
TEL: (817) 751-7155
FAX: (866) 374-0164
E-mail: jacksonlaw@hotmail.com
*Attorney for Appellants*

/s/ *Jack Hohengarten*
JACK HOHENGARTEN